**No. 26-3813**
**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| RED WINE & BLUE, ET AL., | : | |
| Plaintiffs-Appellees, | : | On Appeal from the |
| | : | United States District Court |
| v. | : | for the Northern District of Ohio |
| | : | |
| FRANK LAROSE, IN HIS OFFICIAL CA- | : | District Court Case No. |
| PACITY AS OHIO SECRETARY OF | : | 1:25-cv-1760 |
| STATE, ET AL., | : | |
| Defendants-Appellants, | : | |

---

**EMERGENCY MOTION FOR STAY PENDING APPEAL**
**AND ADMINISTRATIVE STAY**

---

D. ANDREW WILSON
Attorney General of Ohio

MATHURA J. SRIDHARAN*
Ohio Solicitor General
**Counsel of Record*
JOHN F. KERKHOFF
Chief Deputy Solicitor General
STEPHEN P. CARNEY
Senior Deputy Solicitor General
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
614.466.8980
Mathura.Sridharan@OhioAGO.gov

*Counsel for Appellants*
*Frank LaRose, et al.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

STATEMENT ........ 3

I. Federal law requires that States offer voter registration along with applications for driver's licenses. ........ 3

II. Driver's-license applications cannot be submitted under Ohio law without the required documentation. ........ 4

A. Ohio requires proof of legal presence, which confirms citizenship status. ........ 4

B. The BMV's computers are programmed to submit driver's-license applications only when the applicant provides all information under Ohio law ........ 5

III. Two Associations sued in August 2025 over their members' BMV visits and sought injunctive relief in April 2026. ........ 6

IV. Months after the PI hearing, the district court ordered Ohio to offer voter registration regardless of whether a license application has been submitted. ........ 9

ARGUMENT ........ 11

I. Ohio will likely succeed on appeal. ........ 12

A. The Associations lack standing, and their claim for preliminary relief is moot. ........ 12

B. Ohio law does not conflict with the NVRA. ........ 15

1. Ohio's Offer-to-Citizens Law does not violate §5(a). ........ 15

2. Ohio's Offer-to-Citizens Law does not violate §5(c). ........ 19

II. This late-in-time injunction violates *Purcell*, and all equitable factors favor a stay. ........ 22

CONCLUSION ........ 24

CERTIFICATE OF COMPLIANCE ........ 26

CERTIFICATE OF SERVICE ........ 27

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Arizona v. Inter Tribal Council of Arizona, Inc.*,
570 U.S. 1 (2013)....................13, 15, 16, 20

*Barnhart v. Thomas*,
540 U.S. 20 (2003).................... 18

*Brown v. Yost*,
122 F.4th 597 (6th Cir. 2024).................... 14

*Carr v. United States*,
560 U.S. 438 (2010).................... 18

*Cyan Inc. v. Beaver Cnty. Emps. Ret. Fund*,
583 U.S. 416 (2018)....................18, 19

*Dakota Girls, LLC v. Philadelphia Indem. Ins. Co.*,
17 F.4th 645 (6th Cir. 2021).................... 19

*ECB USA, Inc. v. Chubb Ins. Co. of N.J.*,
113 F.4th 1312 (11th Cir. 2024).................... 18

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024).................... 12

*Kentucky v. Biden*,
57 F.4th 545 (6th Cir. 2023).................... 11

*Lawrence v. Blackwell*,
430 F.3d 368 (6th Cir. 2005).................... 9, 14

*League of Women Voters of United States v. Newby*,
838 F.3d 1 (D.C. Cir. 2016)....................23

*Memphis A. Philip Randolph Inst. v. Hargett*,
2 F.4th 548 (6th Cir. 2021).................... 15

*Merrill v. Milligan*,
142 S. Ct. 879 (2022) ....................22

*Purcell v. Gonzalez*,
549 U.S. 1 (2006) ..........3, 12, 22

*Red Wine & Blue v. LaRose*,
1:25-cv-1760 (N.D. Ohio Aug. 25, 2026) ..........9

*Tennessee Conf. of the NAACP v. Lee*,
139 F.4th 557 (6th Cir. 2025) ..........12

*Tennessee Conf. of the Nat'l Ass'n for the Advancement of Colored People v. Lee*,
105 F.4th 888 (6th Cir. 2024) ..........12, 22, 23

*Torres v. Precision Indus.*,
995 F.3d 485 (6th Cir. 2021) ..........16

**Statutes and Regulations**

52 U.S.C. §20503 ..........3

52 U.S.C. §20504 ..........*passim*

Ohio Admin. Code §4501:1-1-21 ..........4, 5, 16, 20

Ohio Rev. Code §3501.04 ..........7

Ohio Rev. Code §3503.11 ..........1, 6, 7, 21

Ohio Rev. Code §3503.19 ..........22

Ohio Rev. Code §4501.02 ..........7

Ohio Rev. Code §4501.02 ..........16

Ohio Rev. Code §4507.13 ..........5

**Other Authorities**

Jake Zuckerman, *Ohio Woman Accused of Illegally Voting Found Not Guilty*, Columbus Dispatch (May 20, 2026) ..........23, 24

## INTRODUCTION

Two women walked into a BMV to each get a driver's license. Both were turned away because they did not have the requisite documents to complete the driver's-license application. Specifically, they had insufficient proof of their identities under their married names. Neither was offered the opportunity to vote at that time because neither could submit a completed driver's-license application. Neither was turned away for failing to produce proof of citizenship. So this case is not about Ohio Rev. Code §3503.11(A)(1)—the Offer-to-Citizens Law—which directs BMV clerks to offer voter registration to license applicants who show proof of citizenship. It is about what Ohio requires to obtain a driver's license.

Nevertheless, an organization that both women belong to—Red, Wine, and Blue—sued because those members "strongly believe" they should not have to show proof of citizenship to be offered voter registration. The Ohio Alliance for Retired Americans also sued, though no members allege harm. The Associations argue that the Offer-to-Citizens Law violates the National Voter Registration Act's Section 5(a) (which says applications for driver's licenses submitted under State law shall serve as voter-registration applications), 52 U.S.C. §20504(a), and Section 5(c) (which bars States from seeking more than "minimum amount of information necessary" to prove citizenship to offer voter registration), 52 U.S.C. §20504(c)(2)(B).

Just one problem—neither woman was denied a voter-registration opportunity. Both failed to submit driver's-license applications because they lacked proper documents. They would lack standing as individual plaintiffs, so their Association lacks standing on their behalf—and neither Association has identified any other members with standing. Proving the point, both returned to the BMV at different times, obtained their driver's licenses with the proper documentation, and registered to vote there. So their request for preliminary relief is also moot.

But the district court took their bait. Overlooking the jurisdictional problems, the court concluded that even unsuccessful license applicants must be offered voter registration. That violates §5(a)'s requirement that only those "State" applications successfully "submitted" "under State law" shall also serve as voter registration. And it concluded that Ohio's Offer-to-Citizens Law demands more than the minimum amount of information necessary to ascertain citizenship. That overlooks the fact that any completed driver's-license application in Ohio *necessarily* confirms citizenship status as part of its proof-of-legal-presence requirement. So the Offer-to-Citizens Law adds nothing more than common sense: BMV registrars offer voter registration to only those applicants whose proof of legal presence to obtain a driver's license confirms that they are citizens.

So, Ohio again comes to this Court urgently in election season, because again, a district court has rewritten the rules in the home stretch. Not only does *Purcell* warrant a stay here, but the equities also favor one. Voter registration is easy—online, on paper, by mail, through many routes at many places. Even at the BMV, paper forms have always been available and remain so, even if a clerk cannot process a license application through the computerized route or does not nudge the voter. Reprogramming, though, takes months—with weeks left—and costs $1,000,000. And any confusion from this injunction might inadvertently encourage those without documents to try and fail, rather than just register through easier available alternatives. At bottom, indulging late-breaking injunctions for plaintiffs unharmed by the law they challenge will invite a deluge of litigation from anyone with mere ideological opposition and a desire to make headlines.

The Court should grant a stay of this ill-timed and ill-considered injunction, and it should grant an administrative stay while considering this Motion.

## STATEMENT

### I. Federal law requires that States offer voter registration along with applications for driver's licenses.

The National Voter Registration Act (NVRA) requires States to offer voter registration to those obtaining driver's licenses. 52 U.S.C. §20503(a). Section 5(a)

requires submitted driver's-license applications to also serve as voter-registration applications:

> Each *State* motor vehicle driver's license application (including any renewal application) *submitted* to the appropriate State motor vehicle authority *under State law* shall serve as an application for voter registration … .

52 U.S.C. §20504(a)(1) (emphases added). State law defines what is required for a driver's-license application. Federal law defines what is required for the accompanying voter registration portion. Specifically, the NVRA says States "may require only the minimum information necessary to … enable state election officials to assess the eligibility of an applicant." 52 U.S.C. §20504(c)(2)(B)(ii). This portion must include the State's voter "eligibility requirement[s] (including citizenship)," "an attestation that the applicant meets" those requirements, and the applicant's signed attestation, under penalty of perjury. 52 U.S.C. §20504(c)(2)(C).

## II. Driver's-license applications cannot be submitted under Ohio law without the required documentation.

### A. Ohio requires proof of legal presence, which confirms citizenship status.

Ohio requires a license applicant to provide documented proof of five fields of information: legal name, date of birth, social security number, street address of principal Ohio residence, and legal presence in the U.S. Ohio Admin. Code §§4501:1-1-21(A), (C), (Q)(1). Various specified documents can satisfy these five categories.

*See* PI Opp. Exs. A-1 and A-2, R.35-1, PageID#1139–44, (listing credentials); Ohio Admin. Code §4501:1-1-21(E)–(J) (primary documents); *id.* at (Q) (alternate documents). Unless those documents are "submitted," the BMV will not accept an application or issue any license. *See* Ohio Admin. Code §4501:1-1-21(D).

Relevant here, the legal-presence requirement, established in 2009, bars licenses for those not legally present in the U.S. *See* 2009 OH Reg. 9280206 (Sept. 28, 2009). Licensure does not require citizenship. But citizenship status necessarily appears on Ohio driver's licenses. Ohio Rev. Code §4507.13(A)(2)(j).

### B. The BMV's computers are programmed to submit driver's-license applications only when the applicant provides all information under Ohio law.

Ohio's BMV uses an electronic system called "BASS" to process driver's-license applications. Sydney King Decl., R.35-1, PageID#1133, ¶3. If the applicant provides complete information with documentation, a deputy registrar enters the information, *id.* at PageID#1135, ¶¶12–14, 18, and an interim driver's credential is issued, *id.* ¶¶16, 18. But if an applicant does not provide complete information or documents, the transaction is canceled. *Id.* ¶¶15, 18. No license application is submitted, and no partial file is saved.

If the application is submitted, the system continues to the voter registration portion of the application. *Id.* at PageID#1135–36, ¶¶15, 21; Tr. R.55, PageID#1644–45.

The system's voter-registration step does not ask for any proof of citizenship. King Decl., R.35-1, PageID#1136, ¶22. But if the proof-of-legal-residence documentation for the driver's-license application showed non-citizen status, the system does not offer voter registration. *Id.* ¶24.

If the driver's-license application is not submitted because it is incomplete, the system does not reach the voter-registration step. Tr., R.55, PageID#1649. However, all BMV offices have paper voter-registration forms available for all customers, whether for failed applicants or for those doing other business, such as car registration. King Decl., R.35-1, PageID#1136, ¶25.

In March 2025, Ohio enacted an "Offer-to-Citizens Law," providing that when "any person applies for a driver's license … and the person presents proof of United States citizenship," the BMV "shall offer the applicant the opportunity to register to vote." Ohio Rev. Code §3503.11(A)(1); 2025 Am.Sub.H.B. 54.

## III. Two Associations sued in August 2025 over their members' BMV visits and sought injunctive relief in April 2026.

The plaintiffs, two activist groups, sued Ohio officials in August 2025. The Red, Wine, and Blue group describes itself as a "membership organization whose mission is to empower women to engage in political discourse," including through "encouraging its members to vote." Compl., R.1, PageID#6, ¶¶20, 22. The Ohio Alliance for Retired Americans' "mission is to protect the civil rights of retirees," including

through "ensuring that its members are able to register and turn out to vote." *Id.* at PageID#10, ¶34. The Defendants are Frank LaRose, Ohio's Secretary of State and chief election officer, Ohio Rev. Code §3501.04, and Charles Norman, Ohio's Registrar of Motor Vehicles, *id.* §4501.02(A).

The Plaintiff Associations say that §5(c) of the NVRA preempts Ohio Rev. Code §3503.11(A)(1), which requires the BMV to offer to citizens the opportunity to register to vote, because that statute violates §5(c)'s minimum-information provision. Compl., R.1, PageID#6, ¶¶11, 107. They requested declaratory and injunctive relief against Ohio's Offer-to-Citizens Law, *see* Compl., R.1, Prayer for Relief at PageID#30, but sought no preliminary relief then.

Six months later, in April 2026, the Associations moved to preliminarily enjoin enforcement of the Offer-to-Citizens Law, citing the BMV experiences of Peggy Dutcher and Gianina Fazio, both members of Red, Wine, and Blue. Pls. Mot., R.29-1, PageID#360; PI Reply, R.49; Dutcher Decl., R.49-1, PageID#1535–36, ¶¶1–3, 6–10; Fazio Decl., R.49-2, PageID#1540–41, ¶¶1–3, 6. The Complaint identified them as members who intended to obtain licenses and register to vote. Compl., R.1, PageID#9, ¶¶29–30. Both "strongly believe[]" that they should not have to provide documentation of citizenship. *Id.*

Dutcher first visited the BMV without a social security card with her married name, as required for a driver's license. Dutcher Decl., R.49-1, PageID#1536–37, ¶¶10–11, 14–15. She did have a passport, which documented legal presence and showed citizenship. *Id.* Without documentation necessary to submit a driver's-license application, she was also unable to use that application for voter registration (although separate voter-registration forms are at all BMV locations, she says she thought she had no options). *Id.* ¶¶14–15. Dutcher later returned with proper documents for a driver's-license application, and on that trip, she registered to vote. *Id.* ¶18.

Fazio likewise first visited the BMV with insufficient documents for a license application; she did not have her birth certificate or a social security card with her current last name on it. Fazio Decl., R.49-2, PageID#1541, ¶¶6–7. Thus, she did not register to vote on that trip. *Id.* ¶7. She returned with proper documentation for a license application and also registered to vote. *Id.* ¶¶9–10.

Consistent with their Complaint, the Associations' preliminary-injunction motion initially targeted the Offer-to-Citizens Law as violating the NVRA's minimum-information provision in §5(c) by allegedly requiring proof of citizenship to register to vote at the BMV. Pls. Mot., R.29-1, PageID#360–61. Their reply pivoted to a new theory—that Ohio violated the NVRA's §5(a), which requires State driver's-license

applications to "serve as" voter-registration applications. PI Reply, R.49, PageID#1523–26. They said that Ohio violates that double-duty requirement by requiring a driver's-license application to be complete before it is submitted, as failed would-be license applicants are not automatically offered voter registration through the computerized system.

## IV. Months after the PI hearing, the district court ordered Ohio to offer voter registration regardless of whether a license application has been submitted.

The district court held a preliminary-injunction hearing on June 25, 2026 and granted the injunction seven weeks later. *Red Wine & Blue v. LaRose*, 1:25-cv-1760 (N.D. Ohio Aug. 25, 2026), R.57, PageID#1789 ("Dist.Op."). The court determined the Associations had standing because members were harmed. *Id.* at PageID#1816–27. It avoided mootness because it said the harms were capable of repetition yet evading review. *Id.* at PageID#1827–29 (citing *Lawrence v. Blackwell,* 430 F.3d 368, 370 (6th Cir. 2005)). The court concluded that the Associations would suffer irreparable harm without an injunction and that equitable factors weighed in favor of an injunction. Dist.Op. at PageID#1834–39.

On the merits, the court said the Offer-to-Citizens Law imposes a "documentary proof of citizenship requirement for registering to vote" at the BMV. *Id.* at PageID#1829–34. It reasoned that this violated §5(c) by requiring more than the

"minimum amount of information necessary" to prove citizenship. *Id.* The court also said that the Offer-to-Citizens Law violates §5(a) by failing to affirmatively offer voter registration to those whose incomplete driver's-license applications are not submitted under Ohio law. *Id.* at PageID#1805–11, 1814–15.

The preliminary injunction says Ohio may not "rely[] on" the Offer-to-Citizens Law "to require any driver's license applicant … to produce documentary proof of citizenship before offering the opportunity to register to vote." *Id.* at PageID#1842. It specifies that the BMV must offer voter registration to "driver's-license applicants" who lack "sufficient documents under Ohio's licensing requirements." *Id.* But it allows Ohio to forgo offering voter-registration for non-citizen driver's-license applicants. *Id.*

The State sought a Rule 62 stay from the district court on August 26, Stay Motion, R.59, which the court denied. Stay Order., R.63. Meanwhile, Ohio moved swiftly to comply with the injunction. The BMV instructed all deputy registrars to place paper voter-registration and information forms in public locations and to "remind customers that U.S. citizens are eligible to vote and direct the customer to" the registration forms, even if a driver's-license application was incomplete. Ex 1. The BMV also required deputy registrars to post signage informing customers they could register to vote even without completing driver's-license applications. Ex

2. The now-displayed signs include QR codes linked to online voter-registration forms.

But even those efforts would not satisfy the district court's injunction. Two weeks after Ohio sought a stay, the district court denied it. The court disagreed with Ohio's jurisdiction and merits arguments, redoubling its errors from its original order. Stay Order., R.63, PageID#1893–99. Although plaintiffs conceded that a paper-form-only remedy would suffice, Stay Opp., R.60, PageID#1867, 1876, the court said that such an "interim remedy" still required Ohio to do more, by "proactively offer[ing]" voting registration to unsuccessful license applicants. Stay Order, R.63, PageID#1899–1902.

## ARGUMENT

This Court considers four factors on a stay pending appeal: (1) "the 'likelihood' that [Ohio] will win on the merits at the end of the appeal," (2) whether "the injunction likely cause[s] [Ohio] an irreparable injury," (3) whether the stay "will harm other parties" and (4) whether "the public interest favor[s] the stay." *Tennessee Conf. of the Nat'l Ass'n for the Advancement of Colored People v. Lee*, 105 F.4th 888, 895 (6th Cir. 2024). When the State is a party, the last two factors merge. *Kentucky v. Biden*, 57 F.4th 545, 556 (6th Cir. 2023). Ohio can succeed on all these factors.

And enjoining an election-related law close to an election counsels strongly against the lower court's injunction, reinforcing that a stay is warranted. *See Lee*, 105 F.4th at 895–96 (citing *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (*per curiam*)).

## I. Ohio will likely succeed on appeal.

Ohio will likely succeed on appeal thrice over: the challengers lack standing, their request for preliminary relief is moot, and they are wrong on the merits.

### A. The Associations lack standing, and their claim for preliminary relief is moot.

***Standing.*** The Associations lack standing because the Offer-to-Citizens Law did not cause their members any injury, and enjoining it will redress nothing.

The critical mismatch is that the Offer-to-Citizens Law does not prevent any member from registering to vote at the BMV. Dutcher's and Fazio's experiences prove the point. Both were initially sent away without submitting driver's-license applications because they lacked documents necessary to complete and submit the driver's-license application. *Above* 7–8. Those failures, not any proof-of-citizenship problem, meant that no license application was, or could be, submitted. Tellingly, both raise only ideological concerns against providing the necessary document, and at a step of the process they did not even get to. Compl., R.1, PageID#9, ¶¶29–30. That is not enough. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024); *Tennessee Conf. of the NAACP v. Lee*, 139 F.4th 557, 562 (6th Cir. 2025).

Not only did the Offer-to-Citizens Law not create their problems, but also, as further detailed below, its enactment did not change BMV practice. Tr., R.55, PageID#1651–52. That is because Ohio's proof-of-legal-residency requirement, since 2009, had confirmed to the BMV the applicant's *citizenship status.* With that knowledge and some common sense, line clerks did not offer voter registration to those applicants whose proof-of-legal-residency documents showed that they were not citizens, just as they do not offer it to new drivers whose identification documents show they are aged 16 or 17. *See Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 15 (2013). In other words, Dutcher and Fazio would have been turned away in the same manner in 2010 or 2024, before the Offer-to-Citizens Law clarified that citizens should be offered the opportunity to register to vote.

The real stumbling block for Dutcher and Fazio was Ohio's systematic linking of voter registration to a *complete* license application, not the new law. But to the extent that the Associations and the district court target that longstanding practice, standing is still lacking. That linkage does not prevent registering to vote, even at the BMV, but simply blocks the automatic inclusion in the computerized system. True, the BMV is unable to process a non-submitted attempt at licensure, so it cannot "include" voter registration that way. But it has always made available regular paper voter-registration forms at all locations, available for failed applicants or even those

doing other business at the BMV, such as registering vehicles. King Decl., R.35-1, PageID#1136, ¶25. So the "injury" was not being offered computerized voter registration, though the paper forms were sitting right there. That is no injury at all.

The Associations offer no evidence that any other members faced issues (indeed, Ohio Alliance for Retired Americans has not identified a single member, let alone one with standing). Nor can they win on organizational standing (and their Complaint lacks sufficient pleadings establishing such standing). Even generously assuming that some members will have similar licensing issues, they will not be barred from registering to vote, and certainly not by the new 2025 law.

***Mootness.*** Any request for preliminary relief became moot when the named members successfully registered. This case does not involve the mootness exception that arises when an intervening election would otherwise cause an issue to evade review. *Lawrence,* 430 F.3d at 370; Dist.Op. at PageID#1827–29. And because voter registration is ongoing, if some other member of the Associations still faces some alleged injury, it can be reviewed in the ordinary course after this election.

As it stands, the request for preliminary relief is certainly moot, and the case may be as well. This Court has recognized a difference "between mootness as to a preliminary-injunction appeal and mootness as to the case as a whole." *Brown v. Yost*, 122 F.4th 597, 601 (6th Cir. 2024) (*en banc*) (*per curiam*) (quotation omitted). Both

named members have successfully registered to vote, mooting the Associations' request for preliminary relief. And, unless they substitute a member who has yet to register to vote, the entire case is moot. *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 559 (6th Cir. 2021).

### B. Ohio law does not conflict with the NVRA.

#### 1. Ohio's Offer-to-Citizens Law does not violate §5(a).

Neither the longstanding BMV requirement that only a *complete* driver's-license application can be submitted nor the more recently enacted Offer-to-Citizens Law conflicts with the NVRA. For one, Ohio law does not support a category of incomplete-but-"submitted" license applications. These unsubmitted license applications simply do not implicate the NVRA. For another, it is well-established that a complete driver's-license application under Ohio law always confirms citizenship status. That means, the new "proof of citizenship" law does nothing more than reflect the common-sense notion that States can and should "deny registration based on information in their possession establishing the applicant's ineligibility." *Inter Tribal Council*, 570 U.S. at 15. Because §5(a) applies only to driver's-license applications "submitted" "under State law," rejecting incomplete license applications without offering voter registration does not trigger (or conflict with) the NVRA.

**a.** Section 5(a) says that "[e]ach *State* motor vehicle driver's license application (including any renewal application) *submitted* to the appropriate State motor vehicle authority *under State law* shall serve as an application for voter registration." 52 U.S.C. §20504(a)(1) (emphases added). That means a State must package voter registration with a driver's-license application *when* that "State" application is "submitted … under State law." The text twice specifies that the States control applications and their submission.

So the threshold question of what constitutes "submitting" a "State" driver's-license application falls "under State law." The NVRA does not displace Ohio's motor-vehicle laws, let alone provide a clear statement to preempt traditional State authority to license motorists. *Cf. Torres v. Precision Indus.*, 995 F.3d 485, 491 (6th Cir. 2021) (*per curiam*). Indeed it would be shocking if Congress, which lacks authority to define voter eligibility under its Elections-Clause power, *see Inter Tribal Council*, 570 U.S. at 16–17, could nevertheless define *driving* eligibility under that power.

Ohio law is straightforward: a driver's-license application simply cannot be submitted without all supporting documents. *See* Ohio Rev. Code §4501.02(A)(1); Ohio Admin. Code §4501:1-1-21. The would-be applicant must return to the BMV with the proper package of information and documentation. So an attempt to apply for a license without the requisite documents is not a "failed

submission"—because Ohio law will not allow it to be submitted—but no submission. In other words, Ohio is not putting a wedge between driver's-license submissions and voter registration, allowing some license applicants to also register, while other license applicants are not offered voter registration. It just does not recognize incomplete applications as "submitted." That makes sense. It is not as if someone who walks up with no paperwork at all—including no ID of any sort—fills out a portion of the application without providing the necessary documentation has still "submitted" an application, but merely one that fails upon review. Such a person would be told to come back with the required documentation and *then* "submit" his application. This process thus governs driving, not voting.

Some comparisons drive the point home. If the applicant does not pay a filing fee, the application is not submitted. That failure may have the incidental effect of not triggering a linked voter-registration application, but that does not mean Ohio is charging a voter-registration fee as a poll tax. Alternatively, assume Ohio made its driving age 25, above the voting age. If a 22-year-old walked into a BMV, she would be sent away. Ohio need not create and accept "submissions" of a doomed, dummy "driver's-license application" for her, just to serve as a gateway to voter registration. It need only allow driver's-license application submission for people seeking driver's licenses, not those seeking only voter registration.

**b.** The district court's reading of "submitted" "under State law" was mistaken not just as common sense, but on the NVRA's text and grammar. Ohio argued that §5(a)'s text means that state law determines when an application is "submitted." The court disagreed. It said that an "application submitted" under §5(a) includes "even those driver's license applications rejected for failing to meet the state's licensing requirements." Dist.Op. at PageID#1810. To reach this conclusion, the court applied the last-antecedent canon and read "under State law" to modify only "appropriate State motor vehicle authority" rather than the entire noun phrase "application submitted to the appropriate State motor vehicle authority." *Id.* at PageID#1808.

The lower court's grammatical "contortions" miss the mark. *Carr v. United States*, 560 U.S. 438, 447 (2010). The last-antecedent rule (and its conceptual cousin, the nearest-reasonable-referent canon, *see ECB USA, Inc. v. Chubb Ins. Co. of N.J.*, 113 F.4th 1312, 1321, 1323 (11th Cir. 2024)) is hardly absolute. It is context dependent and readily yields to "other indicia of meaning." *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003). And when "the modifier directly follows a concise and integrated clause" the rule has no force. *Cyan Inc. v. Beaver Cnty. Emps. Ret. Fund*, 583 U.S. 416, 440 (2018) (quotation omitted).

Here, "under State law" follows "a unified" and "integrated" clause, so the modifying language tracks "back to the beginning of the preceding clause." *Id.* Section 5(a)'s noun clause—"application submitted to the appropriate State motor vehicle authority," 52 U.S.C. §20504(a)—"hangs together" with no conjunction or punctuation setting off different parts. *Cyan*, 583 U.S. at 440. It refers to a "single thing"—a driver's-license application. *Id.* And because the clause acts as one, the last-antecedent rule "falls away," and the modifying language applies to the entire prior phrase—not a siloed portion. *Dakota Girls, LLC v. Philadelphia Indem. Ins. Co.*, 17 F.4th 645, 650 (6th Cir. 2021). Thus, "under State law" refers to "submitted," and the last-antecedent rule does not suggest otherwise. And under state law, an application is "submitted" only if a person also presents all required documents. *See above* 16–17. That conclusion fits comfortably with the substantive backdrop that States, not Congress, govern licensing drivers.

### 2. Ohio's Offer-to-Citizens Law does not violate §5(c).

Jumping tracks from §5(a) to §5(c) of the NVRA, the court below also concluded that a specific Ohio law, the Offer-to-Citizens Law, violates a different NVRA provision—namely, §5(c)'s bar against States requiring more than the "minimum amount of information necessary" to assess voter eligibility. That is wrong for two related reasons.

*First*, driver's-license applicants must establish legal presence to obtain a license, not to vote. All allowed forms of legal-presence documents show citizenship status, and no one is left in a limbo category of "unknown citizenship status," or "known but not proven." *See* Ohio Admin. Code §4501:1-1-21(G), (Q)(1). That twilight status exists in the district court's opinion only because it created a category of submitted-but-failing applications that may have not established legal presence. A driver's-license application properly submitted under State law always confirms citizenship status. It has to do so to be accurate. Ohio Rev. Code §4507.13(A)(2)(j).

*Second*, because all properly submitted applications under Ohio law establish citizenship or non-citizenship, common sense and *Inter Tribal Council* kick in. "[W]hile the NVRA forbids States to demand that an applicant submit additional information beyond that required by the Federal Form, it does not preclude States from deny[ing] registration based on information in their possession establishing the applicant's ineligibility." *Inter Tribal Council*, 570 U.S. at 15. So the Offer-to-Citizens Law merely applies the unremarkable point that those facially ineligible to vote need not be offered an opportunity to register to vote.

Before the 2025 enactment of the Offer-to-Citizens Law, BMV's clerks did not routinely offer voter registration when processing a non-citizen driver, nor did they have to. Tr., R.55, PageID#1651–52. But formally, previous Ohio law said that

"[w]hen any person applies for a driver's license ... the registrar of motor vehicles ... shall offer the applicant the opportunity to register to vote." Ohio Rev. Code §3503.11(A)(1) (May 2025). But offering to non-citizens made no sense, just as the BMV does not offer voter registration to 16-year-old new drivers.

With that understanding, the 2025 amendment brought the law in line with what other laws already require and BMV practice already did—not registering non-citizens to vote. The Offer-to-Citizens Law says "the registrar or deputy registrar *shall offer* the applicant" voter registration when the applicant "presents proof of United States citizenship" or has "previously" done so. Ohio Rev. Code §3503.11(A)(1). Formally, that law merely imposes the duty *when* the applicant shows citizenship, and does not bar offering to others, as the district court acknowledged. Dist.Op. at PageID#1824. Even if the new law did have such an implicit prohibition, that would merely implement *Inter Tribal*'s caveat in light of Ohio's completeness requirement and proof-of-legal-presence requirement.

Putting that together, §5(c) does not conflict with the Offer-to-Citizens Law. It says that the "*voter registration application portion* of an application for a State motor vehicle driver's license ... may require only the minimum amount of information necessary to ... enable State election officials to assess" voting eligibility. §20504(c)(2)(B)(ii) (emphasis added). Ohio does not require the legal-presence

documentation in the "voter registration application portion of an application"—Ohio requires it in the driver's-license-application portion. Then, because that information is apparent from *that* portion, the voter-registration offer flows or not. But no extra information is required at all for the voter-registration portion, let alone information beyond the minimum.

All this means that Ohio is more than likely to succeed on the merits—and *Lee* requires only a "lesser showing" on the merits when the equities are strong. 105 F.4th at 895. Here, they are overwhelming.

## II. This late-in-time injunction violates *Purcell*, and all equitable factors favor a stay.

Finally, a stay is warranted under *Purcell* and the remaining equities.

*Purcell* warns against "[l]ate judicial tinkering with election laws." *Merrill v. Milligan*, 142 S. Ct. 879, 880–81 (2022) (Kavanaugh, J., concurring). It applies to all election-related laws, including NVRA and voter-registration issues. *Lee*, 105 F.4th at 890, 895–97. Timing alone can warrant a stay, including a late court decision, even when motions were filed long earlier. *Id.* at 894, 897. Here, the relevant looming deadline is the October 5 registration deadline. *See id.* at 898 (applying *Purcell* to voter-registration requirements); Ohio Rev. Code §3503.19(A). The complaint was filed in August 2025; the motion was filed April 2026; the hearing was held in June 2026; but the decision was not issued until August 25. We are now pressed up to the

election wall, though the real issue troubling the plaintiffs has been around for decades and did not stem from the 2025 law.

The injunction further threatens to confuse voters as well as the BMV's frontline workers. Encouraging people to go to the BMV with insufficient paperwork helps no one when they can easily register to vote by several easy means. *Cf. League of Women Voters of United States v. Newby*, 838 F.3d 1, 13 (D.C. Cir. 2016). After all, the district court's order would allow an individual to show up at the BMV with *no* documents—or desire—to obtain a driver's license and register to vote. Pressuring BMV staff to offer voter registration to those without any documents threatens a repeat of the scenario when a BMV employee inadvertently encouraged a noncitizen to register, and she illegally voted. Jake Zuckerman, *Ohio Woman Accused of Illegally Voting Found Not Guilty*, Columbus Dispatch (May 20, 2026), https://perma.cc/T2H9-3N6N. And having more potentially ineligible voters in the BMV pool burdens elections officials to catch more on the back end. *Lee*, 105 F.4th at 900.

That is not all. The injunction requires BMV clerks to affirmatively facilitate voter registration, which will consume BMV resources in quickly retraining clerks. The BMV must promote and streamline voter registration for *anyone* entering the BMV—even with no documents. The "onus," the district court said, must be "on

the BMV to proactively offer" registration—not simply provide paper applications. Stay Order, R.63, PageID#1900, 1904. That requires wholesale retraining and restructuring of the BMV application process—a massive training burden only weeks before the registration deadline. Worse, hastily-trained clerks may inadvertently encourage non-citizens to vote illegally.

And ultimately the injunction may require the BMV to bundle an incomplete driver's-license application and a paper form. *Id.* at PageID#1900–01 n.2. That would mean revamping BMV computer software, imposing "immense" financial burdens on the BMV through reprogramming its computers and training staff. Stay Motion Ex.A, R.59-1, PageID#1862, ¶10. A BMV official estimated that doing it right would take eight to eighteen months and $1,000,000. *Id.* at PageID#1863–64, ¶¶18–19.

While those burdens harm the State and the public together, whose interests merge, no countervailing harms arise to anyone from staying the injunction. The named members are already registered. For anyone else, voter registration is simple. Anyone can register online, on a phone, or on paper.

## CONCLUSION

This Court should stay the district court's order pending appeal and grant an administrative stay while it considers Ohio's stay request.

Respectfully submitted,

D. ANDREW WILSON
Attorney General of Ohio

*/s/ Mathura J. Sridharan*
MATHURA J. SRIDHARAN
Ohio Solicitor General
**Counsel of Record*
JOHN F. KERKHOFF
Chief Deputy Solicitor General
STEPHEN P. CARNEY
Senior Deputy Solicitor General
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
614.466.8980
Mathura.Sridharan@OhioAGO.gov

*Counsel for Appellants*
*Frank LaRose, et al.*

## CERTIFICATE OF COMPLIANCE

I hereby certify, in accordance with Rule 32(g) of the Federal Rules of Appellate Procedure, this motion complies with the type-volume requirements for a motion and contains 5,200 words. *See* Fed. R. App. P. 27(d)(2)(A).

I further certify that this brief complies with the typeface requirements of Federal Rule 32(a)(5) and the type-style requirements of Federal Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Equity font.

*/s/ Mathura J. Sridharan*
MATHURA J. SRIDHARAN

## CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2026, this motion was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Mathura J. Sridharan*
MATHURA J. SRIDHARAN

# Exhibit 1

TO: ALL DEPUTY REGISTRARS

FROM: FIELD OPERATIONS, OHIO BUREAU OF MOTOR VEHICLES

DATE: 09/02/2026

SEQUENCE:

**1) VOTER REGISTRATION PROCESS UPDATE**

On August 25, 2026 the United States District Court for the Northern District of Ohio issued a Preliminary Injunction which requires the Ohio BMV to offer the opportunity to complete a voter registration application to all individuals who attempt to obtain a BMV Driver License or State Identification card, regardless of whether the applicant provides sufficient documentation to establish their legal eligibility for that credential or completes the application process.

In order to comply with that Court order, Deputy Registrars must immediately take the following actions:

1) Post the attached informational signage that accompanies this broadcast inside the Deputy Registrar License Agency. Please post the sign in a conspicuous location that is clearly visible to members of the public.
2) Pre-print 25 blank copies of BMV SEC40, the Voter Registration and Information Form, and place them in your documents rack or another location accessible to the general public. The agency is required to maintain an adequate supply of pre-printed forms until further notice from the BMV.
3) In the event a DL-ID transaction is terminated prior to successful completion for any reason (lack of proper documentation, unsuccessful SAVE/SSOLV verification, etc.), please remind customers that U.S. citizens are eligible to register to vote and direct the customer to the signage and the availability of a blank voter registration form.
4) If a customer identifies as a permanent resident (non-US citizen), or temporary resident (non-U.S. citizen), then the Deputy Registers shall not offer the ineligible applicant the opportunity to register to vote.
5) If a customer fills out a Voter Registration form (BMV SEC40) as a result of an “incomplete DL-ID transaction”, Deputy Registrars must mark the Voter Registration Transmittal form at the top with the term “incomplete DL-ID

transaction" and make a copy of the form to keep with required daily paperwork.

This guidance does not extend to or alter the identity standards required for a complete DL-ID transaction. Please reference all manual requirements and BASS protocols and prompts when completing the DL-ID transaction. Furthermore, all deputy registrars are required to continue following the manual requirements for handling, offering, and processing voter registration forms as outlined in the "Agency Information" manual as well as established processes for submission of physical forms to the local Board of Elections.

Eligible customers that complete their DL-ID transaction and want to register to vote or update their voter registration information will have their information transmitted to the Ohio Secretary of State's Office electronically as usual.

# Exhibit 2

# ATTENTION

On August 25, 2026, the United States District Court for the Northern District of Ohio issued a Preliminary Injunction. It requires the Ohio BMV to offer the opportunity to complete a voter registration application to all individuals who attempt to obtain a BMV Driver License or State Identification card, regardless of whether the applicant provides sufficient documentation to establish their legal eligibility for that credential or completes the application process.

Any individual seeking the opportunity to register to vote can request a voter registration form from any Deputy Registrar License Agency employee, regardless of whether they have attempted to or have successfully completed a BMV application. The BMV will forward the completed voter registration form to the County Board of Elections on the applicant's behalf.

Individuals can also register to vote online through the Ohio Secretary of State's website at https://olvr.ohiosos.gov/ or through the QR code below:

As a reminder, only U.S. citizens are eligible to register to vote and illegally registering to vote is a felony of the fifth degree and is subject to prosecution under Ohio Revised Code 3599.11.