No. 26-3813

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

RED WINE & BLUE; OHIO ALLIANCE FOR RETIRED AMERICANS,

*Plaintiffs-Appellees*

v.

FRANK LAROSE; CHARLES L. NORMAN, in his official capacity as Ohio's Registrar of Motor Vehicles

*Defendants-Appellants*

---

**PLAINTIFFS-APPELLEES' OPPOSITION TO MOTION TO STAY PENDING APPEAL**

---

Ben Stafford
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
Tel: (202) 948-1135

Joshua Abbuhl
Qizhou Ge
**ELIAS LAW GROUP LLP**
250 Massachusetts Avenue NW, Suite 400
Washington, D.C. 20001
Tel: (202) 948-1135

J. Corey Colombo
Stacey N. Hauff
**MCTIGUE & COLOMBO, LLC**
545 East Town Street
Columbus, OH 43215
Tel: (614) 263-7000

## CORPORATE DISCLOSURE STATEMENT

Pursuant to the Federal Rules of Appellate Procedure and Sixth Circuit Rule 26.1, counsel for Plaintiffs-Appellees certifies that no party to this appeal is a subsidiary or affiliate of a publicly owned corporation and no publicly owned corporation that is not a party to this appeal has a financial interest in its outcome.

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........................................ iii

INTRODUCTION ........................................ 1

BACKGROUND ........................................ 3

I. The National Voter Registration Act ........................................ 3

II. Voter Registration Procedures in Ohio ........................................ 4

III. Procedural History ........................................ 5

LEGAL STANDARD ........................................ 6

ARGUMENT ........................................ 6

I. Ohio is unlikely to succeed on appeal. ........................................ 6

A. The district court correctly held that Ohio fails to offer voter registration when required to do so by the NVRA. ........................................ 7

1. The NVRA requires offering voter registration to eligible driver's license applicants. ........................................ 7

2. Section 5 does not allow states to define the provision's triggering conditions for themselves. ........................................ 10

3. Ohio's constitutional arguments are meritless. ........................................ 13

B. The district court correctly held that the NVRA preempts Ohio's documentary-proof-of-citizenship requirement. ........................................ 14

C. Plaintiffs have standing, and their claim for preliminary relief is not moot. ........................................ 15

II. *Purcell* does not justify a stay. ........................................ 19

III. The equitable factors strongly weigh against a stay. ........................................ 21

CONCLUSION ........................................ 23

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Ass'n of Cmty. Orgs. for Reform Now v. Miller*,
129 F.3d 833 (6th Cir. 1997)....................21

*AtriCure, Inc. v. Jian Meng*,
842 F. App'x 974 (6th Cir. 2021)....................13

*Brown v. Yost*,
133 F.4th 725 (6th Cir. 2025).................... 6, 21

*Common Cause/Georgia v. Billups*,
554 F.3d 1340 (11th Cir. 2009)....................16

*Concerned Pastors for Soc. Action v. Khouri*,
844 F.3d 546 (6th Cir. 2016)....................22

*Dep't of Educ. v. California*,
604 U.S. 650 (2025)....................23

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024)....................16

*Fish v. Kobach*,
840 F.3d 710 (10th Cir. 2016)....................3

*Fish v. Schwab*,
957 F.3d 1105 (10th Cir. 2020)....................16

*In re Sanders*,
551 F.3d 397 (6th Cir. 2008)....................11

*Lawrence v. Blackwell*,
430 F.3d 368 (6th Cir. 2005).................... 18, 19

*Ne. Ohio Coal. for Homeless v. Blackwell*,
467 F.3d 999 (6th Cir. 2006)....................20

*Ne. Ohio Coal. for the Homeless v. Husted*,
837 F.3d 612 (6th Cir. 2016)........16

*Online Merchants Guild v. Cameron*,
995 F.3d 540 (6th Cir. 2021)........15

*Purcell v. Gonzalez*,
549 U.S. 1 (2006)........2

*Rose v. Raffensperger*,
143 S. Ct. 58 (2022)........19

*Sarkisov v. Bondi*,
138 F.4th 976 (6th Cir. 2025)........6

*U.S. Student Ass'n Found. v. Land*,
546 F.3d 373 (6th Cir. 2008)........10, 23

*United States v. Small*,
988 F.3d 241 (6th Cir. 2021)........8

**STATUTES AND REGULATIONS**

52 U.S.C. § 20501........13

52 U.S.C. § 20504........*passim*

Ohio Rev. Code 3503.11........4, 15, 17

Ohio Rev. Code 3599.12........22

Ohio Rev. Code 4501.02........12

Ohio Rev. Code 4507.06........8

Ohio Admin. Code § 4501:1-1-21........12, 13

**OTHER AUTHORITIES**

2025 Am. Sub. H.B. 54 ....................................................................................4

*Application*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/application ....................................................8

## INTRODUCTION

The National Voter Registration Act ("NVRA") obliges states to affirmatively offer voter registration with drivers' license applications. Based on a plain and commonsense reading of the statutory text, the district court found that Ohio likely violated that obligation and granted a preliminary injunction. Absent that relief, Ohioans risk losing access to a voter-registration method the NVRA guarantees in the handful of weeks that remain before Ohio's October 5 registration deadline. The State has not shown that the district court abused its discretion in granting this much-needed relief.

The State's motion rests on a fundamental legal error: that the NVRA's requirement to offer voter registration to driver's license applicants does not kick in until a State *says* it does. The district court properly rejected this "torture[d]" construction of the NVRA's "unambiguous" text, instead holding that the statute means what it says: Ohio must offer voter registration when an individual "submit[s]" an "application" for a driver's license to the Bureau of Motor Vehicles ("BMV")—regardless of whether the State deems that application *complete*. Ordinary grammar rules and accepted canons of construction refute the State's reading otherwise. Cleared of that error, the State's remaining arguments fall apart.

Plaintiffs plainly have standing. Two identified members of Red Wine & Blue both went to the BMV for the twin purposes of obtaining a driver's license and

registering to vote; both were turned away for failing to produce a document necessary to obtain a license. But although the NVRA's obligation to offer voter registration had already been triggered, a new state law, HB 54, prohibited the BMV from offering voter registration to these members unless they first provided documentary proof of citizenship ("DPOC"). Being forced to produce a document to register to vote is a well-recognized Article III injury.

Nor is the case moot. This case falls into the well-recognized capable-of-repetition-yet-evading-review exception to mootness. Under Ohio's theory, a potential voter who challenges an unlawful registration law would have to forgo registration, giving up their right to vote, in every election preceding final judgment and exhaustion of all appeals. The district court properly recognized that Article III does not require voting rights plaintiffs to suffer that irreparable harm to prosecute a lawsuit.

As for the merits, the State again relies only on its statutory misinterpretation regarding when the NVRA's obligations are triggered, and it does not attempt to refute the district court's conclusion that DPOC exceeds the "minimum ... information necessary" to demonstrate an applicant's citizenship, in plain conflict with the NVRA. 52 U.S.C. §20504(c)(2)(B). Finally, Ohio belatedly invokes *Purcell v. Gonzalez*, 549 U.S. 1 (2006), which it neither raised in its preliminary-injunction briefing nor argued at the hours-long hearing. Ohio was right initially: *Purcell* is

inapplicable. The district court's injunction requiring Ohio to affirmatively offer voter registration to driver's license applicants, which it can comply with using forms the BMV *already* stocks, presents no material change to election rules.

## BACKGROUND

### I. The National Voter Registration Act

The NVRA arose "against a backdrop of lackluster voter registration and political participation." *Fish v. Kobach*, 840 F.3d 710, 720 (10th Cir. 2016). Congress enacted the NVRA to address this problem and "ensure that ... simple means are available to register for federal elections and those means are actively presented to voters by the states." *Id.* at 721.

To that end, the NVRA requires states to offer voter registration when citizens apply for a driver's license. 52 U.S.C. §20504. Section 5 of the Act provides that whenever a "driver's license application" is "submitted" "to the appropriate State motor vehicle authority under State law," the driver's license application "shall serve as an application for voter registration." *Id.* §20504(a)(1).

The NVRA specifies that these motor-voter registration applications "may require only the *minimum* amount of information necessary to ... enable state election officials to assess the eligibility of the applicant," including citizenship. *Id.* §20504(c)(2)(B) (emphasis added). The NVRA ensures that states can verify an

applicant's citizenship by requiring that motor-voter forms direct applicants to attest that they are a citizen, under penalty of perjury. *Id.* §20504(c)(2)(C).

## II. Voter Registration Procedures in Ohio

For almost all forms of voter registration—by mail, online, in-person at public offices, buildings, or designated agencies—Ohio does not require voters to produce DPOC, and they simply need to attest to their citizenship. Order, R.57, PageID#1790-91. However, last year, the legislature enacted HB 54, which provides: "When any person applies for a driver's license … and the person presents proof of United States citizenship," then the BMV "shall offer the applicant the opportunity to register to vote[.]" Ohio Rev. Code 3503.11(A)(1); 2025 Am.Sub.H.B. 54. HB 54 thus created a single exception to the rule that voters need not produce DPOC to register: when they register during a driver's license transaction.

To obtain a driver's license in Ohio, a person first submits a driver's license application form ("Form 5745" or the "Form"). A BMV employee then evaluates the Form and the applicant's supporting identification documents and determines whether to issue a license. Order, R.57, PageID#1811-14. Ohio programmed its BMV software to *preclude* offering voter registration unless the applicant submits every supporting document required to successfully obtain a driver's license (including DPOC) and the BMV has determined that it will issue a driver's license. *Id.*; Mot.5.

The BMV also stockpiles paper voter registration forms and will provide a form to anyone who *requests* one and then transmit the completed form to election officials. King Decl., R.35-1, PageID#1136. The BMV does not require its employees to offer these paper voter registration forms to applicants who submit a Form 5745 but fail to provide all necessary documentation to obtain a driver's license. Tr., R.55, PageID#1649-50.

## III. Procedural History

On April 28, 2026, Plaintiffs Red Wine & Blue and Ohio Alliance for Retired Americans moved to preliminarily enjoin HB 54's DPOC requirement before the October 5 voter registration deadline. R.29. The district court held a hearing on the motion on June 25.

The district court granted the motion on August 25, enjoining Ohio from requiring driver's license applicants—including those who are ultimately unsuccessful in obtaining a driver's license—to produce DPOC before offering the opportunity to register to vote. Order, R.57, PageID#1842. The injunction is clear that it does not require Ohio to offer voter registration to noncitizens. *Id.*

Ohio moved to stay the injunction pending appeal on August 26. R.59. The district court denied a stay and confirmed that, to comply with its order, Ohio need only "proactively offer[] the paper voter registration applications already at the BMV to eligible citizens" to unsuccessful driver's license applicants, "rather than only

upon request." R.63 at PageID#1900. Ohio appealed, R.62, and then moved for a stay pending appeal in this Court. Doc. 5 ("Mot.").

## LEGAL STANDARD

A stay pending appeal is an "extraordinary form of equitable relief" that lies within the court's discretion. *Sarkisov v. Bondi*, 138 F.4th 976, 979 (6th Cir. 2025). To obtain a stay, the applicant "bears the burden" of showing: (1) likelihood of success on the merits, (2) whether the applicant would be irreparably injured absent a stay, (3) whether a stay would injure the other parties, and (4) whether the public interest favors a stay. *Brown v. Yost*, 133 F.4th 725, 731 (6th Cir. 2025).

## ARGUMENT

### I. Ohio is unlikely to succeed on appeal.

Ohio falls far short of meeting its burden of showing entitlement to the "extraordinary" relief it seeks. *Sarkisov*, 138 F.4th at 979. All of its arguments flow from the same flawed premise: its claim that the NVRA does not require it to offer voter registration to driver's license applicants until *Ohio* deems that an application has been properly "submitted," which effectively means that the BMV *approves* a complete driver's license application. The district court properly rejected this contorted reading of the NVRA. Under its plain text, the NVRA straightforwardly preempts HB 54's DPOC requirement. Plaintiffs' standing likewise flows logically from this proper understanding of the NVRA, and their claims are not moot.

### A. The district court correctly held that Ohio fails to offer voter registration when required to do so by the NVRA.

As the district court held, Ohio's fundamental error is its misapprehension of *when* the NVRA's obligation to offer voter registration during a driver's license transaction is triggered. Ohio argues that it need only offer voter registration to those who submit a *complete* driver's license application that the BMV *approves*. The district court correctly concluded that the NVRA requires registration be offered earlier—when an "application" is "submitted"—even if the applicant lacks all the supporting documents needed to successfully obtain a driver's license. Any contrary reading would allow states to circumvent the NVRA's protections by using the driver's license application process to impose requirements that the NVRA prohibits with regard to voter registration applications.

#### 1. The NVRA requires offering voter registration to eligible driver's license applicants.

All parties agree that the point at which a state is obligated to offer voter registration at the BMV is determined by Section 5(a)(1) of the NVRA, which states:

> Each State motor vehicle driver's license *application* (including any renewal application) *submitted* to the appropriate State motor vehicle authority under State law shall serve as an application for voter registration with respect to elections for Federal office unless the applicant fails to sign the voter registration application.

52 U.S.C. §20504(a)(1) (emphasis added). The NVRA thus requires voter registration to be offered when a driver's license "application" is "submitted."

"Application" is not defined by the NVRA, so it is given its "ordinary meaning." *United States v. Small*, 988 F.3d 241, 254 (6th Cir. 2021). An "application" is a "request" or a "form used in making a request." *Application*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/application. BMV Form 5745, Ohio's standardized driver's license application form, fits that bill precisely. King Decl. Ex. A-4, R.35-1, PageID#1217; *see* Ohio Rev. Code 4507.06(A)(1). Ohio does not dispute that Form 5745 qualifies as an "application" within the meaning of the NVRA.

Because Form 5745 is a driver's license "application," the next question is when that application is "submitted." The district court explained the common-sense interplay between Section 5(a)(1)'s verb and its object: because "an 'application' is a request for something … it follows that someone must consider it and decide whether to grant or deny the request." Order, R.57, PageID#1809-10. Thus, for an application to be "submitted," it must be "presented, sent, or handed in for the consideration, decision, or approval of others, as an application, proposal, report, etc." *Id.* at PageID#1810 (quoting *Submitted*, Dictionary.com, https://dictionary.com/browse/submitted).

Reading these terms together, the district court correctly concluded that "the everyday understanding of 'application submitted' includes those driver's license applications submitted to the deputy registrar for consideration," *id.*, even if the

application is later *denied* for lacking supporting documentation. Thus, as the district court held, whether a "submitted" "application" is *complete* and sufficient to *obtain* a license has no bearing on whether the NVRA's requirement to offer voter registration has attached: "[A] driver's license application is submitted under Section 5 of the NVRA when the applicant presents a BMV Form with Column A filled out to the deputy registrar," and it "is at that moment that Section 5 requires Ohio to affirmatively offer the driver's license applicant the opportunity to register to vote, unless, of course, the applicant has indicated on the BMV Form that he or she is a noncitizen." *Id.* at PageID#1815.

Ohio's BMV voter-registration procedures violate that requirement. The State explains that the BMV offers voter registration only *after* the driver's license transaction has concluded and all required steps have been *completed* to obtain a driver's license—including providing DPOC—*and the BMV has decided to issue the applicant a driver's license*. *See* Mot.5; King Decl., R.35-1, PageID#1136. In other words, the BMV offers voter registration not when a driver's license application is *submitted* but only after the driver's license application has been *adjudicated* and *approved*. But an application's "submission" necessarily precedes its *adjudication*. As the district court explained, waiting to offer voter registration until an application is "complete" (*i.e.*, *approved*) violates Section 5's

straightforward requirement to offer voter registration upon "submission." Order, R.57, PageID#1805-11.

### 2. Section 5 does not allow states to define the provision's triggering conditions for themselves.

Tellingly, Ohio does not respond to the district court's careful textual analysis. Instead, it argues that whether an application is "submitted" is defined only by reference to state law, ignoring the NVRA's plain meaning. It pins this argument on a contorted reading, claiming that the NVRA textually commits the question of when an application is "submitted" to states' discretion. This Court has already rejected another state's attempt to unilaterally re-define the NVRA's terms under state law, *U.S. Student Ass'n Found. v. Land*, 546 F.3d 373, 383 (6th Cir. 2008) ("[T]he labels that state law places on individuals are not binding for purposes of the NVRA."), and Ohio's argument here fares no better, for several reasons.

Ohio's argument for defining "submitted" according to state law contorts the NVRA's text. The NVRA requires that "[e]ach State motor vehicle driver's license application (including any renewal application) *submitted to the appropriate State motor vehicle authority under State law* shall serve as an application for voter registration." 52 U.S.C. §20504(a)(1) (emphasis added). The State contends that the phrase "under State law" modifies "submitted," thereby tethering the meaning of "submit" to any state's definition of the same. Mot.19. Not so. The natural reading of that sentence and appropriate canons of construction make clear that the phrase

"under State law" modifies only "appropriate State motor vehicle authority," not the meaning of "submitted." The district court properly rejected the State's alternative construction, which "tortures the ordinary meaning of a rather unambiguous phrase." Order, R.57, PageID#1809.

For starters, "courts ordinarily assume that 'a limiting clause or phrase ... modif[ies] only the noun or phrase that it immediately follows.'" *In re Sanders*, 551 F.3d 397, 399 (6th Cir. 2008) (quotation omitted). That principle applies here, providing a presumption that "under State law" refers to its nearest possible referent, "appropriate State motor vehicle authority," and does *not* reach back to "submitted." Nor is there anything "in the statute to rebut the last-antecedent presumption." *Id.* at 400. To the contrary, additional textual indicators confirm that "under State law" modifies only "appropriate State motor vehicle authority" and not "submitted." For example, consider the object of the phrase "submitted to." Elementary grammar indicates that "submitted to" modifies the complete clause that immediately follows it: "the appropriate State motor vehicle authority under State law." Under Ohio's reading, "submitted to" refers *only* to the awkwardly truncated clause "appropriate State motor vehicle authority," and would then have "under State law" reach back to modify the noun-verb pairing "application … submitted." Plaintiffs' simpler parsing of the sentence is the better one.

Additionally, if Congress *had* intended "under State law" to modify "submitted," it knew how to do so. In fact, Congress employed that construction in Section 5*(d)*: "Any change of address form *submitted in accordance with State law* for purposes of a State motor vehicle driver's license shall serve as notification of change of address for voter registration[.]" 52 U.S.C. §20504(d) (emphasis added). There, "in accordance with State law" plainly modifies "submitted" because, unlike in Section 5*(a)*, "submitted" *is the nearest reasonable referent*.

In any event, whether state law applies here is ultimately irrelevant because Ohio law does not define "submitted" in a way that departs from its ordinary meaning under the NVRA. Ohio insists its law is "straightforward," and that "a driver's-license application simply cannot be *submitted* without all supporting documents." Mot.16 (emphasis added). But the State's authorities for that proposition—Ohio Rev. Code 4501.02(A)(1) and Ohio Admin. Code 4501:1-1-21—define the substantive requirements for a *complete* application that will be *approved*. Neither source purports to define what constitutes the act of "submitting" an application, the key inquiry for Section 5. Ohio's argument that state law controls the NVRA's substantive reach is thus little more than a straw man.

If anything, Ohio law favors *Plaintiffs*' reading of "submit." By setting forth documentation requirements "to be *submitted along with* an *application* for a ... driver's license," Ohio Admin. Code §4501:1-1-21(A) confirms that Ohio's

documentation requirements—including DPOC—are not part of the driver's license "application" itself. The same regulation authorizes BMV officials to forward applications lacking every required document to the registrar, who will make "the final decision" whether "to issue a credential." Ohio Admin. Code 4501:1-1-21(Q). An applicant who invokes that process has "submitted" an "application" under any reasonable understanding of those terms.

Finally, consider the purpose of the NVRA, which is to make it easier to register to vote by affording registration opportunities to those engaged in the common transaction of seeking a driver's license. *See* 52 U.S.C. §20501(b); *AtriCure, Inc. v. Jian Meng*, 842 F. App'x 974, 984 (6th Cir. 2021) ("[I]ntent of the statute is the lodestar of statutory interpretation in Ohio."). The NVRA seeks to increase voter registration, not limit registration to those who *successfully* obtain driver's licenses. Imagine an Ohioan who wishes to register to vote (and is eligible to do so) but fails the vision screening. Ohio can rightly deny that person a driver's license, but the results of their vision test have no bearing on their eligibility to vote. Under Ohio's interpretation, however, the State can deem such person's driver's application "unsubmitted" and deny them the opportunity to register to vote.

### 3. Ohio's constitutional arguments are meritless.

Ohio's sparsely stated constitutional arguments do not move the needle. Requiring the BMV to affirmatively offer voter registration forms to all applicants

does not "preempt traditional State authority to license motorists" or define "*driving* eligibility." Mot.16. Again, that is because the NVRA's obligation to offer voter registration is triggered upon the *submission* of an application—it does not depend on whether that driver's license application is successful. The State remains free to approve or deny any driver's license application without reference to the NVRA.

### B. The district court correctly held that the NVRA preempts Ohio's documentary-proof-of-citizenship requirement.

The NVRA prohibits states from requiring more than the "minimum ... information necessary" during a driver's license transaction to determine the applicant's eligibility to vote, including whether they are a citizen. 52 U.S.C. §20504(c)(2)(B). Ohio does not contest that requiring DPOC *does* exceed the "minimum ... information necessary" to determine citizenship. Indeed, its counsel conceded the point at oral argument. Order, R.57, PageID#1833; Tr., R.55, PageID#1659. For good reason: DPOC can hardly be deemed "necessary" to determine citizenship when it is not required for Ohioans to register to vote by any means other than a motor-voter application. The district court thus had no trouble concluding that HB 54's DPOC requirement exceeded the "minimum" amount of information needed to determine citizenship and is preempted by the NVRA. Order, R.57, PageID#1833.

Instead, Ohio argues that, because driver's license applicants necessarily demonstrate their citizenship status when they submit a (complete) application, HB

54 simply confirms Ohio will not offer voter registration to confirmed noncitizens. Mot.19-22. This misdirection depends entirely on Ohio's faulty argument that the BMV is not required to offer voter registration upon submission of an *incomplete* application. As discussed, that is incorrect. Yet in such instances, HB 54 facially prohibits the BMV from offering voter registration unless the applicant has produced DPOC. Ohio Rev. Code 3503.11(A)(1). As the district court explained, and as Ohio does not here dispute, requiring DPOC in *that* circumstance violates the NVRA by exceeding the "minimum ... information necessary" to determine citizenship. Rather, withholding registration is appropriate *only* if the driver's license applicant confirms their ineligibility. *See* Order, R.57, PageID#1842. Otherwise, there is no justification for requiring proof beyond a sworn attestation of citizenship to prove eligibility, consistent with *every other voter-registration method in Ohio*.

### C. Plaintiffs have standing, and their claim for preliminary relief is not moot.

***Standing***. An organization has standing if (1) its members would have standing to sue individually, (2) the interests at stake are germane to the organization's purpose, and (3) individual members' participation is unnecessary. *Online Merchants Guild v. Cameron*, 995 F.3d 540, 549 (6th Cir. 2021). Ohio

disputes only the first element, claiming that Red Wine & Blue's identified members (Ms. Dutcher and Ms. Fazio) lack standing to challenge HB 54. Mot.12.[1]

Ohio's standing argument rests on two errors. First, Ohio mischaracterizes the nature of the members' injuries. Rather than suffering merely "ideological" injury, Mot.12, these individuals are harmed because HB 54 requires them to *take an action*: to locate and produce citizenship documents to register to vote. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024) ("[S]tanding is usually easy to establish" when "[g]overnment regulations ... require ... some action by the plaintiff."). Numerous courts have found an Article III injury where a voter must produce a document to vote or register to vote—even where the voter *could* comply. *See, e.g.*, *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1351-52 (11th Cir. 2009) ("[T]he lack of an acceptable photo identification *is not necessary* to challenge a statute that requires photo identification to vote in person"; rather, "[b]ecause [the individual plaintiffs], who are registered voters, would be required to *present* photo identification to vote in person, they have suffered a sufficient injury.") (emphasis added); *Fish v. Schwab*, 957 F.3d 1105, 1119-20 (10th Cir. 2020) (similar for DPOC requirement for voter registration).

[1] Because Red Wine & Blue has identified members with standing—and therefore has associational standing—the court did not need to separately consider the standing of the Alliance. *Ne. Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 623-24 (6th Cir. 2016).

Ohio's second error is, again, its insistence that the BMV need only offer voter registration when an application submits a "complete" (*i.e.*, "approved") driver's license application. Mot.12-13. From this mistaken premise, Ohio argues that the BMV was not required to offer voter registration to Ms. Dutcher and Ms. Fazio because they failed to bring every supporting document for a driver's license. *Id.* But as discussed, the NVRA requires the BMV to offer Ms. Dutcher and Ms. Fazio voter registration as soon as they submitted driver's license applications, *before* they were turned away for lacking necessary documentation. At that point, Ms. Dutcher and Ms. Fazio did everything necessary to apply for *voter registration*. But under HB 54, the BMV would not offer it to them unless they first presented DPOC. Ohio Rev. Code 3503.11(A)(1). It was thus HB 54—and only HB 54—that would have required them to produce DPOC to register to vote. The district court's preliminary injunction fully remedies that Article III injury.

It is also wrong to argue that Ms. Dutcher and Ms. Fazio were not injured because the BMV stockpiles paper voter registration forms that they could have used to register to vote. Mot.14. The mere availability of paper voter registration forms does not fulfill the NVRA's directive that a "driver's license application ... shall serve as an application for voter registration." 52 U.S.C. §20504(a)(1). That inadequate alternative frustrates the NVRA's motor-voter mechanism, which is designed to ensure that voter registration is *automatically* extended to *all* driver's license

applicants *during a driver's license transaction*. *Id.* Placing the onus on individuals who "submitted" an "application" to *request* a paper voter registration form they may not even know is available does not satisfy that obligation. Order, R.57, PageID#1814-15. The record evidence further undermines Ohio's theory: not only did BMV officials fail to inform Ms. Dutcher that paper voter registration forms were available, but they also left her with the impression that she could not register to vote in *any* manner before she obtained an Ohio driver's license. Dutcher Decl., R.49-1, PageID#1537-38.

Further, if Ohio were right, then no voter would *ever* have standing to challenge a plainly unlawful voter registration procedure at the BMV (such as a $500 requirement to process voter registration through the BMV system) because the same voter could register by requesting a paper form, submitting the Federal Form, or some other mechanism. That cannot be correct.

***Mootness.*** Plaintiffs' claims are not moot, notwithstanding that Ms. Fazio and Ms. Dutcher eventually registered to vote (after Ohio frustrated their attempts to do so in accordance with the NVRA). Order, R.57, PageID#1827-29. A case is not moot "if the challenged activity is capable of repetition, yet evading review," and cases involving election laws are a "quintessential" category of such cases. *Lawrence v. Blackwell*, 430 F.3d 368, 371 (6th Cir. 2005). And this Court has clarified that mootness does not apply when the alleged harm to Plaintiffs "was the direct result

of an extant Ohio statute," and "almost invariably will recur with respect to *some future ... voter in Ohio*." *Id*. at 372 (emphasis added). That is precisely the situation here, because absent an injunction, Ohio will continue to enforce HB 54 and decline to offer voter registration to individuals who do not bring every required document to the BMV, which Ohio concedes "happen[s] every[ ]day." Tr., R.55, PageID#1716.

Furthermore, accepting Ohio's rule would mean that a voter could not challenge an unlawful voter registration statute unless they forgo registering to vote through final judgment and all appeals, giving up their fundamental right to vote during that period. The mootness doctrine does not demand such needless, irreparable harm.

## II. *Purcell* does not justify a stay.

Ohio now claims that the Court must apply *Purcell* and stay the preliminary injunction; a new argument it only advanced *after* losing the preliminary injunction motion. Indeed, rather than arguing that a decision was needed early to avoid too-close proximity to the election, Ohio proposed a leisurely briefing schedule for the preliminary injunction motion that would have ended on June 12, noting that a schedule on that timeframe "leaves plenty of time for a decision before the registration deadline in October." Correspondence, R.33-1, PageID#1110 (emphasis added). As the district court did, this Court should reject Ohio's about-face. *See Rose v. Raffensperger*, 143 S. Ct. 58 (2022) (order vacating stay that had been entered

pursuant to the *Purcell* principle when the party seeking the stay had made "representations ... that the schedule on which the district court proceeded was sufficient to enable effectual relief as to the November elections").

*Purcell* simply does not fit the facts and posture of this case. *Purcell* cautions against court orders affecting election procedures too close to the election so as not to cause "voter confusion" or create "disorder in electoral processes." *Ne. Ohio Coal. for Homeless v. Blackwell*, 467 F.3d 999, 1012 (6th Cir. 2006). But the injunction does not affect how Ohio's elections will be run, nor does it change Ohio's voter eligibility requirements. In fact, it does not even change who is able to register to vote at the BMV. Ohio admits that anyone—even individuals without DPOC—can fill out a voter registration form at the BMV. Mot.13-14. Moreover, it does not affect "election procedures" at all, since BMV officials never adjudicate any voter's eligibility. Rather, BMV officials merely offer and transmit applications, which are then reviewed under preexisting standards by election officials. The practical effect of the preliminary injunction is important but limited—BMV officials simply must affirmatively apprise driver's license applicants of their right to register to vote at the BMV regardless of whether they have DPOC. The principles animating *Purcell* are thus inapplicable here.

Finally, even if *Purcell* were implicated, the injunction has now *already* been in place for nearly three weeks. Ohio does not represent that it has been *violating* the

injunction during that time period. With the voter registration deadline also about three weeks away, it would now be far more disruptive to change course and stay the injunction.

**III. The equitable factors strongly weigh against a stay.**

The remaining stay factors—harm to Plaintiffs or the State, and where the public interest lies—all counsel against a stay. *See Brown*, 133 F.4th at 731.

Ohio ignores the district court's finding that an injunction was necessary to prevent irreparable harm. Order, R.57, PageID#1834-36. If this stay issues, BMV officials will refuse to offer voter registration to unsuccessful driver's license applicants, and as the October 5 voter registration deadline nears, that could render them unable to exercise their fundamental right to vote in the November 3, 2026 general election—a textbook example of irreparable harm. Order, R.57, PageID#1835.

Ohio's fearmongering that offering voter registration at the BMV might inadvertently encourage noncitizens to register is wildly overblown: the district court has made abundantly clear that the BMV need not offer voter registration to those who indicate within the application or "otherwise present information showing they are noncitizens." Order, R.57, PageID#1842. The NVRA affords the right to register only to citizens, *Ass'n of Cmty. Orgs. for Reform Now v. Miller*, 129 F.3d 833, 835 (6th Cir. 1997), and Ohio can prosecute any (rare) instances of noncitizens who

violate the law and attempt to vote. Ohio Rev. Code 3599.12(A)(1). Similarly, Ohio's concern about the increased burden on election officials to remove ineligible voters makes no sense: enjoining HB 54's DPOC requirement merely aligns voter registration at the BMV with other forms of voter registration, for which a sworn attestation of citizenship is sufficient. Order, R.57, PageID#1837. Ohio has given no reason to believe that voter registration at the BMV deserves different treatment.

Ohio complains about the anticipated administrative costs of compliance, but (contrary to Ohio's suggestion) nothing in the injunction requires it to reprogram BMV software or undertake any other meaningful burdens, Mot.24. Its concern that training BMV officials to offer paper voter registration forms—which it represents *already occurs*—will somehow be a massive undertaking, Mot.24, is likewise overblown. According to the State, BMV offices have always had paper forms available, even for failed applicants, Mot.13, and the only change the injunction requires is that instead of offering these forms *upon request*, the BMV must now (as required by the NVRA) offer voter registration *proactively* during a driver's license transaction. In any event, Ohio cannot gesture to the perceived high costs of *how* it might comply with the order as a reason to not comply at all, nor can it point to the self-inflicted injury of designing a driver's license system that defies federal law as a basis for staying the injunction. *See, e.g.*, *Concerned Pastors for Soc. Action v. Khouri*, 844 F.3d 546, 549-50 (6th Cir. 2016) (rejecting compliance cost concerns as

outweighed by need to comply with federal law and protect public interest); *Land*, 546 F.3d at 387 (6th Cir. 2008) (rejecting administrative burdens associated with adapting computer program in denying motion to stay preliminary injunction based on an NVRA violation); *Dep't of Educ. v. California*, 604 U.S. 650, 652 (2025) ("self-imposed costs" did not justify stay).

Finally, any conceivable burden is far outweighed by the "strong public interest in … ensuring as many eligible U.S. citizens as possible become registered to vote," which was directly threatened by Ohio's DPOC requirement. Order, R.57, PageID#1837 (quotation omitted). As the Court correctly concluded, allowing the DPOC requirement to stand "would be contrary to the NVRA's purpose, and a strain on the fundamental right to vote," to the detriment of the public interest. *Id.*

## CONCLUSION

The Court should deny Defendants-Appellants' motion to stay the preliminary injunction.

September 14, 2026

Respectfully submitted,

*s/ Ben Stafford*

Ben Stafford
ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
Tel: (202) 948-1135
bstafford@elias.law

Joshua Abbuhl
Qizhou Ge
ELIAS LAW GROUP LLP
250 Massachusetts Avenue NW,
Suite 400
Washington, D.C. 20001
Tel: (202) 948-1135
jabbuhl@elias.law
age@elias.law

J. Corey Colombo
Stacey N. Hauff
MCTIGUE & COLOMBO, LLC
545 East Town Street
Columbus, OH 43215
Tel: (614) 263-7000
ccolombo@electionlawgroup.com
shauff@electionlawgroup.com

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5,196 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 27(d)(1)(E) because it was prepared in Times New Roman 14-point font using Microsoft Word version 2608.

*s/ Ben Stafford*
Ben Stafford

**CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2026, I electronically filed the above document with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF System, which will provide electronic copies to counsel of record. Participants in the case are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

*s/ Ben Stafford*
Ben Stafford