**No. 26-3813**
**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| RED WINE & BLUE, ET AL., | : | |
| Plaintiffs-Appellees, | : | On Appeal from the |
| | : | United States District Court |
| v. | : | for the Northern District of Ohio |
| | : | |
| FRANK LAROSE, IN HIS OFFICIAL CAPACITY AS OHIO SECRETARY OF STATE, ET AL., | : | District Court Case No. 1:25-cv-1760 |
| Defendants-Appellants, | : | |

---

# REPLY IN SUPPORT OF STAY PENDING APPEAL AND ADMINISTRATIVE STAY

---


D. ANDREW WILSON
Attorney General of Ohio

MATHURA J. SRIDHARAN*
Ohio Solicitor General
**Counsel of Record*
JOHN F. KERKHOFF
Chief Deputy Solicitor General
STEPHEN P. CARNEY
Senior Deputy Solicitor General
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
614.466.8980
Mathura.Sridharan@OhioAGO.gov

*Counsel for Appellants*
*Frank LaRose, et al.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

I. This late-in-time injunction triggers *Purcell*, and the other equities support Ohio. .......... 2

II. Ohio will likely succeed on appeal. .......... 8

CONCLUSION .......... 12

CERTIFICATE OF COMPLIANCE .......... 13

CERTIFICATE OF SERVICE .......... 14

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*In re: 2016 Primary Election*,
836 F.3d 584 (6th Cir. 2016) ....................7

*Brown v. Yost*,
122 F.4th 597 (6th Cir. 2024) ....................2

*California v. Texas*,
593 U.S. 659 (2021) ....................10

*Cromwell v. Kobach*,
199 F.Supp.3d 1292 (D. Kan. 2016) ....................9

*Davis v. Colerain Twp.*,
51 F.4th 164 (6th Cir. 2022) ....................10

*Democratic Nat'l Comm. v. Wis. State Legis.*,
592 U.S. 1039 (2020) ....................3

*Fish v. Kobach*,
840 F.3d 710 (10th Cir. 2016) ....................9

*Fish v. Schwab*,
957 F.3d 1105 (10th Cir. 2020) ....................9

*Howard v. Tennessee*,
740 F. App'x 837 (6th Cir. 2018) ....................9

*Lawrence v. Blackwell*,
430 F.3d 368 (6th Cir. 2005) .................... 1, 8, 9

*Memphis A. Philip Randolph Inst. of Ohio v. LaRose*,
831 F. App'x 188 (6th Cir. 2020) ....................7

*Memphis A. Philip Randolph Inst. v. Hargett*,
2 F.4th 548 (6th Cir. 2021) ....................10

*Merrill v. Milligan*,
142 S. Ct. 879 (2022) ....................6

*Nader v. Blackwell*,
230 F.3d 833 (6th Cir. 2000) ............ 7

*Ne. Ohio Coal. for Homeless v. Blackwell*,
467 F.3d 999 (6th Cir. 2006) ............ 7

*OPAWL - Bldg. AAPI Feminist Leadership v. Yost*,
118 F.4th 770 (6th Cir. 2024) ............ 7

*Serv. Emps Int'l Union Loc. 1 v. Husted*,
698 F.3d 341 (6th Cir. 2012) ............ 7

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ............ 10

*Stringer v. Whitley*,
942 F.3d 715 (5th Cir. 2019) ............ 9

*Summit Cnty. Democratic Cent. & Exec. Comm. v. Blackwell*,
388 F.3d 547 (6th Cir. 2004) ............ 7

*Tenn. Conf. of the NAACP v. Lee*,
105 F.4th 888 (6th Cir. 2024) ............ 2, 3, 6

*Thompson v. DeWine*,
959 F.3d 804 (6th Cir. 2020) ............ 7

**Statutes**

52 U.S.C. §20504 ............ 10

**Other Authorities**

Democracy Docket, *Court refuses to reinstate Ohio GOP's voting restriction during appeal* ............ 3

## INTRODUCTION

The Associations try to have their cake and eat it too. The court below changed election procedures—here, voter registration at the BMV—with just weeks left to register. The well-established *Purcell* rule against such last-minute election changes supports a stay.

In resisting this point, the Associations prove it. They say that this is not *really* an election case for *Purcell* purposes because it "does not affect how Ohio's elections will be run." Opp.20. If it is no big deal, then why do they implore the Court to keep this injunction in place "in the handful of weeks that remain before Ohio's October 5 registration deadline"? Opp.1. Why do they claim that it would be "far more disruptive to change course and stay the injunction" with three weeks of voter registration left for this election? Opp.21. And why do they invoke the impending election for a mootness exception that applies only to cases mooted *by an election?* Opp.18–19 (citing *Lawrence v. Blackwell,* 430 F.3d 368, 371 (6th Cir. 2005)).

If *Purcell* matters, it matters most to Ohio—to remind lower courts *again* to stop changing the rules so late. So in a case where plaintiffs lack standing, their claim for preliminary relief is moot, Ohio is likely to win on the remaining merits, *and Purcell* is in play, Ohio should benefit from the principle. The Court should grant the stay.

# ARGUMENT

The Associations' response shows they take umbrage at the Offer-to-Citizens Law, but do not offer a single member who is injured by it or who has not yet registered to vote. So they may have a request another day (if they find a member with standing), but now, this case can be decided on mootness of the preliminary injunction. *Brown v. Yost*, 122 F.4th 597, 601 (6th Cir. 2024) (*en banc*) (*per curiam*).

Although the Court balances stay factors, Ohio independently wins on *Purcell* and the other equities.

## I. This late-in-time injunction triggers *Purcell*, and the other equities support Ohio.

Just twenty days remain for voter registration this election. So the late-in-time injunction violates *Purcell*. The Associations' contrary arguments are mistaken.

*First*, and perhaps most disingenuous, the Associations try to claim *Purcell* for themselves, saying that "with the voter registration deadline also about three weeks away, it would now be far more disruptive to change course and stay the injunction." Opp.21. This Court has rejected that jiu-jitsu maneuver, explaining that "this argument would 'turn *Purcell* on its head,'" because allowing trial courts to enter near-election injunctions that cannot be undone would strip appeals courts of the "power to enforce the *Purcell* principle." *Tenn. Conf. of the NAACP v. Lee*, 105 F.4th 888,

900 (6th Cir. 2024) (quoting *Democratic Nat'l Comm. v. Wis. State Legis.*, 592 U.S. 1039, 1044 (2020) (Kavanaugh, J. concurring)).

*Second*, the Associations try, but fail, to distinguish this case from *Purcell* on substance, saying that this case concerns only registration, and "does not affect how Ohio's elections will be run." Opp.20. But this Court has applied *Purcell* to a voter-registration law, explaining that it "appl[ies] just as much to last-minute registration changes as to other types of belated voting changes." *Lee,* 105 F.4th at 897. The Associations do not acknowledge *Lee* at all, let alone for that.

Moreover, while the Associations deny the case's election-related nature for *Purcell*, they repeatedly invoke election status—and even the looming deadline—whenever convenient. *See* Opp.1, 18. They seek to put daylight between this case and "election procedures" by distinguishing "BMV officials," as the ones bearing the burden here, from "election officials." Opp.20. But they sued Ohio's chief election official, the Secretary of State, not just the BMV. And while they tell this Court that this is about BMV bureaucracy, not election officials, their counsel's public-interest firm trumpets this injunction as not "let[ting] Ohio election officials enforce the state's" law and includes a picture of Ohio's chief election officer. *See* Democracy Docket, *Court refuses to reinstate Ohio GOP's voting restriction during appeal* (available

at https://perma.cc/7JS9-RTY5). They want this case to be about elections—*this* election—in every way, except for *Purcell*. But *Purcell* applies.

The Associations try to blame Ohio for the timeline, but those efforts fail. The timeline: complaint in August 2025, motion for preliminary injunction in April 2026, hearing in June, initial decision on August 25, district court's stay denial on September 9—for an October 5 registration deadline. The Associations fault Ohio for accepting a June hearing—but at that point, over three months remained, and the district court consumed more than half of the remaining time before deciding. A prompt decision might have been different.

The Associations also argue that fewer weeks are left because "the injunction has now *already* been in place for three weeks," but faulting Ohio is wrong. Opp.19–20. Ohio could not avoid the extra two weeks of stay-pending-appeal litigation. Ohio requested a Rule 62 stay from the district court before asking this court, as the rules require. And Ohio did so promptly, filing its motion the next day. *See* Stay Mot., R.59. When the district court denied it two weeks later, Ohio came to this Court after three hours and thirty-six minutes. *See* Stay Order, R.63 (sent Sept. 9, 12:22 pm); Mot. (in this Court) (filed Sept. 9, 3:58 pm). Rule 8 of the Federal Rules of Appellate Procedure also discourages litigants from skipping this step. Ohio should not be penalized for respecting the courts' rules.

The real timing problem arose from the Associations' delay in seeking preliminary-injunctive relief, which is especially stark in light of their pivot away from the two named members and toward a general theory of helping all Ohio non-registered potential voters. If the Associations can base an injunctive claim on unknown members or others (they cannot), they could have sought injunctive relief with their Complaint in August 2025, rather than April 2026. Indeed, even then, they did not cite the named members' visits until their June 2026 *reply*, which first added the declarations about visits in September 2025 and in "late 2025." *See* Dutcher Decl. ¶8, R.49-1, PageID#1536; Fazio Decl. ¶6, R.49-2, PageID#1541. Their April start was the problem.

Stepping back further still, the Associations' real complaint lies in how the BMV packages its voter-registration step into the driver's-license application submission, such that Ohio's 2025 statutory clarification did not change anything. Mot.13. Ohio has no "new" "requirement" to show "documentary proof of citizenship." Since 2009, driver's-license applicants must establish legal presence, so the 2025 law did not change the BMV's prior practice of offering only to those applicants whose proof-of-legal-presence showed citizenship. Mot.13. The Associations nowhere challenge that prior practice, or grapple with the fact that both named members first experienced failed transactions because they lacked *other documentation* needed for

licenses and did not bump into any "citizenship" issue or the 2025 amendment. True, they conclusorily insist that "a new state law, HB 54, prohibited the BMV" from offering them voter registration. Opp.2. But it was *not* a citizenship issue that tripped them up, and they vaguely state that Dutcher and Fazio "were turned away for failing to produce a document necessary to obtain a license." Opp.2. That "document necessary" had nothing to do with citizenship or the 2025 law—they would have been turned away in 2020.

That matters for *Purcell* purposes because the "principle is probably best understood as a sensible refinement of ordinary stay principles for the election context." *Merrill v. Milligan*, 142 S. Ct. 879, 881 (2022) (mem.) (Kavanaugh, J., concurring). Those "ordinary stay principles" include the competing harms to both sides and plaintiffs' diligence in pursuing a claim. When plaintiffs wait to file an election-law claim, and the challenge was long available, that is on them. This Court has held that a district court's timing alone can require a stay, even when plaintiffs have diligently filed motions earlier. *Lee*, 105 F.4th at 894, 896. Here, regardless of how one apportions the timeline between the Associations and the district court, pinning this on Ohio is wrong—Ohio's quick filings show that it rushed, while others dawdled.

Ohio is all-too-familiar with this pattern—as is this Court in refereeing so many Ohio election-eve injunctions—and that is another reason to grant the stay. This

Court pioneered the *Purcell* principle pre-*Purcell*, vacating last-minute stays in 2000 and 2004. *See Nader v. Blackwell*, 230 F.3d 833, 834–35 (6th Cir. 2000) ("[a]t this late stage" injunctions were "unreasonable in light of the looming election deadline"); *Summit Cnty. Democratic Cent. & Exec. Comm. v. Blackwell*, 388 F.3d 547, 551 (6th Cir. 2004) ("It is particularly harmful to [voters'] interests to have the rules changed at the last minute.").

Just after *Purcell*, this Court cited it to stay a late injunction, and it has repeated that pattern for decades. *Ne. Ohio Coal. for Homeless v. Blackwell*, 467 F.3d 999, 1012 (6th Cir. 2006); *Serv. Emps. Int'l Union Loc. 1 v. Husted*, 698 F.3d 341, 345 (6th Cir. 2012) (*per curiam*); *In re: 2016 Primary Election*, 836 F.3d 584, 585 (6th Cir. 2016); *Memphis A. Philip Randolph Inst. of Ohio v. LaRose*, 831 F. App'x 188, 192 (6th Cir. 2020); *Thompson v. DeWine*, 959 F.3d 804, 813 (6th Cir. 2020) (*per curiam*); *OPAWL - Bldg. AAPI Feminist Leadership v. Yost*, 118 F.4th 770, 774–75 (6th Cir. 2024). The list is not complete.

Yet, the Court's repeated admonitions have *still* not taken hold, so another reminder is needed. Indeed, the Court ought to remind district courts that *Purcell* applies for the coming weeks. Some of Ohio's hits came in cases not even *filed* until the last minute—so even now, some might be considering complaints, even over

long-extant laws that could have been challenged years ago. The Court needs to patrol the *Purcell* no-fly zone again.

All those *Purcell* specifics combine with an overall equitable reality that voter registration is easy, and no one is blocked from registering—even at the BMV, let alone elsewhere—simply because the BMV arguably does not spoon-feed unaware, unregistered individuals aggressively enough.

## II. Ohio will likely succeed on appeal.

In order of the easiest path to a stay—the Associations' request for preliminary relief is moot, they lack standing to challenge the Offer-to-Citizens Law, and that law does not violate the NVRA.

***Mootness.*** Mootness here hinges on two points. *First*, the named members' complaints were mooted by their *registrations,* not any election. This does *not* trigger the capable-of-repetition-yet-evading review mootness exception. *Lawrence v. Blackwell,* 430 F.3d 368, 370 (6th Cir. 2005). In *Lawrence*, the court resolved a candidate's ballot-access case long after the relevant election had passed, stressing that the issue would otherwise evade review, because final resolution was not possible on an election timeline. *Id.* Not so here, because the mooting event was not an election—that still has not happened—but the named members' registration. *If*, for argument's sake, a live controversy remains regarding some unregistered members, the case can

still be resolved down the road. No "need" exists to relax the mootness rules to achieve resolution.

The Associations merely cite *Lawrence* again, without grappling with the distinction or the fact that the case can still be resolved without a preliminary injunction. Indeed, they say the issue *will continue*, as "Ohio will continue to enforce" its laws and policies post-election. Opp.19.

The NVRA also has no policy-based mootness exception. *Compare* Opp.19, *with Howard v. Tennessee*, 740 F. App'x 837, 840 (6th Cir. 2018) (NVRA challenge moot when voter registered), *Stringer v. Whitley*, 942 F.3d 715, 724–25 (5th Cir. 2019) (no NVRA injury after plaintiffs registered), *Cromwell v. Kobach*, 199 F.Supp.3d 1292, 1305 (D. Kan. 2016), *aff'd*, *Fish v. Kobach*, 840 F.3d 710 (10th Cir. 2016), *and Fish v. Schwab*, 957 F.3d 1105, 1112–13 (10th Cir. 2020) (plaintiff refused to register in "attempt[] to challenge" state law).

*Second*, the Associations ignore the difference between the mootness of the *case* and the mootness of *this preliminary injunction.* Their argument, even if true, creates a mootness exception to allow the case to continue. It does not salvage any need for immediate relief.

The combination is conclusive: if the need for immediate relief was justified by Dutcher and Fazio, that need disappeared. And the Court can save for another day

the question whether the *case* is moot. If some need for an answer exists for others, the Associations need to identify them. *See Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 558–59 (6th Cir. 2021).

***Standing.*** Neither named member was turned away based on the challenged law, Mot.12–13, so any alleged injury is not "fairly traceable to the defendants' conduct in enforcing the specific statutory provision they attack." *California v. Texas*, 593 U.S. 659, 680 (2021). Enjoining enforcement of the Offer-to-Citizens Law does not redress being denied driver's licenses for lack of *other* documents. *See Davis v. Colerain Twp.*, 51 F.4th 164, 171 (6th Cir. 2022). The Associations hardly contest the point other than to confuse Article-III injury (or lack thereof) with irreparable harm (paper-form availability). They cannot "bootstrap" their way "into federal court" by claiming injury unrelated to Ohio's law. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998).

***Merits.*** Ohio will also succeed in showing that the Offer-to-Citizens Law does not violate the NVRA. The response (Opp.7–9) chiefly focuses on what it means for a "driver's license application (including any renewal application)" to be "*submitted* to the appropriate State motor vehicle authority *under State law*." 52 U.S.C. §20504(a)(1) (emphases added). (Though the Associations did not raise a §5(a) claim in their complaint, they have since backed into one.) Common sense and

ordinary speech dictate that "under State law" applies to the word "submitted," but the Associations insist that the phrase "under State law" refers to the "appropriate State motor vehicle authority." Ohio has the better of it.

English speakers routinely follow a verb, such as "submit," with twin prepositional phrases that both modify the verb, one after the other. For example, in Robert Frost's "Stopping by Woods on a Snowy Evening," both prepositional phrases refer to "stopping"—stopping happens "on a snowy evening," and that "on" phrase does not describe "woods" as the last preceding word. This Court's oral argument notices inform parties that, for example, "Your case is scheduled for oral argument at 8:30 a.m. (Eastern Time) on Thursday, October 22, 2026 before a three-judge panel of the Sixth Circuit Court of Appeals in Cincinnati." Both phrases—the time/date phrase and the "before a … panel"—refer to "scheduled for argument." That is how speakers set a lunch date: "Let's meet at noon at Skyline Chili"—both refer to "meet." The NVRA likewise uses a verb—"submitted"—with twin prepositional phrases requiring submission "to the appropriate State motor vehicle authority" and also "under State law."

The Associations' contrary reading defies common speech and renders other statutory language superfluous. They say that "under State law" refers only to the noun "appropriate State motor vehicle authority," as a nested prepositional phrase

within the "to the appropriate ..." phrase. But that leaves the phrase doing no work. After all, *of course* state law defines who the appropriate State authority is—what else would?

Ohio's remaining merits arguments will also succeed, *see* Mot.15–22, but the submission point stops the show, so Ohio stops there as well. Again, notably, the 2025 amendment does no work, because the idea that it is a "requirement" flows entirely from how Ohio folds the voter-registration step into the driver's-license-application submission.

## CONCLUSION

This Court should grant the stay.

Respectfully submitted,

D. ANDREW WILSON
Attorney General of Ohio

*/s/ Mathura J. Sridharan*
MATHURA J. SRIDHARAN
Ohio Solicitor General
**Counsel of Record*
JOHN F. KERKHOFF
Chief Deputy Solicitor General
STEPHEN P. CARNEY
Senior Deputy Solicitor General
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
614.466.8980
Mathura.Sridharan@OhioAGO.gov

*Counsel for Appellants*
*Frank LaRose, et al.*

## CERTIFICATE OF COMPLIANCE

I hereby certify, in accordance with Rule 32(g) of the Federal Rules of Appellate Procedure, this reply complies with the type-volume requirements for a reply in support of a motion and contains 2,591 words. *See* Fed. R. App. P. 27(d)(2)(C).

I further certify that this brief complies with the typeface requirements of Federal Rule 32(a)(5) and the type-style requirements of Federal Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Equity font.

*/s/ Mathura J. Sridharan*
MATHURA J. SRIDHARAN

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2026, this motion was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Mathura J. Sridharan*
MATHURA J. SRIDHARAN