**No. 26-3813**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

---

RED WINE & BLUE, *et al.*,

Plaintiffs-Appellees,

v.

FRANK LAROSE, IN HIS OFFICIAL CAPACITY
AS OHIO SECRETARY OF STATE, *et al.*,

Defendants-Appellants.

---

On Appeal from the United States District Court
for the Northern District of Ohio
No. 1:25-cv-1760

---

# BRIEF OF *AMICI CURIAE* THE HONEST ELECTIONS PROJECT AND CENTER FOR ELECTION CONFIDENCE IN SUPPORT OF DEFENDANTS-APPELLANTS' EMERGENCY MOTION FOR STAY PENDING APPEAL AND ADMINISTRATIVE STAY


Jason B. Torchinsky
*Counsel of Record*
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
2300 N Street N.W.
Suite 643
Washington, DC 20037
(202) 737-8808
jtorchinsky@
holtzmanvogel.com

Elizabeth Price Foley
Steven LaRussa
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK
PLLC
2333 Ponce de Leon Blvd.
Suite 600
Coral Gables, FL 33134
(305) 379-1601
efoley@holtzmanvogel.com

*Counsel for Amici Curiae*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 26-3813 Case Name: Red Wine & Blue et al. v. LaRose et al.

Name of counsel: Jason B. Torchinsky

Pursuant to 6th Cir. R. 26.1, Center for Election Confidence, Inc.
*Name of Party*
makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

No.

CERTIFICATE OF SERVICE

I certify that on September 16, 2026 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Jason B. Torchinsky

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 26-3813 Case Name: Red Wine & Blue et al. v. LaRose et al.

Name of counsel: Jason B. Torchinsky

Pursuant to 6th Cir. R. 26.1, The Honest Elections Project
*Name of Party*
makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

No.

CERTIFICATE OF SERVICE

I certify that on September 16, 2026 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Jason B. Torchinsky

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

## TABLE OF CONTENTS


Table of Authorities .......... ii

Interest of *Amici Curiae* .......... 1

Introduction .......... 1

Argument .......... 2

I. The District Court Lacked Jurisdiction to Enter a Preliminary Injunction Due to Mootness .......... 2

A. RWB's Claims are No Longer Live .......... 2

B. The Capable-of-Repetition-Yet-Evading-Review Exception Does Not Apply Here .......... 5

II. Defendants Are Likely to Succeed on the Merits Because H.B. 54 Exercises Ohio's Constitutional Authority to Set and Enforce Voter Qualifications .......... 9

A. The Canon of Constitutional Avoidance Requires Narrow Construction of NVRA Section 5 .......... 11

B. The Federalism Canon Likewise Requires Narrow Construction of NVRA Section 5 .......... 13

Conclusion .......... 14

Certificate of Compliance .......... 15

Certificate of Service .......... 16

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
570 U.S. 1 (2013) .......... 11-13

*Barr v. Galvin*, 626 F.3d 99 (1st Cir. 2010) .......... 8

*Blumstein v. Ellington*, 337 F. Supp. 323 (M.D. Tenn. 1970) .......... 7

*Bond v. United States*, 572 U.S. 844 (2014) .......... 13

*Brown v. Yost*, 122 F.4th 597 (6th Cir. 2024) .......... 5

*Bush v. Gore*, 531 U.S. 98 (2000) .......... 10

*Chiafalo v. Washington*, 591 U.S. 578 (2020) .......... 10

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) .......... 5

*Davis v. FEC*, 554 U.S. 724 (2008) .......... 7

*DeFunis v. Odegaard*, 416 U.S. 312 (1974) .......... 3

*Dunn v. Blumstein*, 405 U.S. 330 (1972) .......... 7

*FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024) .......... 2

*FEC v. Wisconsin Right to Life, Inc.*, 551 U.S. 449 (2007) .......... 7

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000) .......... 3

*Gregory v. Ashcroft*, 501 U.S. 452 (1991) .......... 13

*Hall v. Sec'y, Ala.*, 902 F.3d 1294 (11th Cir. 2018) .......... 8

*Hunt v. Wash. State Apple Advert. Comm'n*,
432 U.S. 333 (1977) .......................................................................... 3

*Lawrence v. Blackwell*, 430 F.3d 368 (6th Cir. 2005) ........................5-6, 8

*Lewis v. Cont'l Bank Corp.*, 494 U.S. 472 (1990) ..................................... 3

*Libertarian Party of Ohio v. Blackwell*,
462 F.3d 579 (6th Cir. 2006) ........................................................... 6

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ........................................ 5

*Majors v. Abell*, 317 F.3d 719 (7th Cir. 2003) ........................................... 8

*Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803) ................................ 13

*McPherson v. Blacker*, 146 U.S. 1 (1892) ................................................ 10

*Memphis A. Philip Randolph Inst. v. Hargett*,
2 F.4th 548 (6th Cir. 2021) ............................................................... 6

*Murphy v. Hunt*, 455 U.S. 478 (1982) ....................................................... 3

*Norman v. Reed*, 502 U.S. 279 (1992) ....................................................... 7

*Stop Reckless Econ. Instability Caused by Democrats v. FEC*,
814 F.3d 221 (4th Cir. 2016) ........................................................... 8

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ................................ 2

*Tashjian v. Republican Party of Conn.*, 479 U.S. 208 (1986) ............ 10-11

*Tenn. State Conf. of NAACP v. Lee*,
139 F.4th 557 (6th Cir. 2025) ........................................................... 2

*Thompson v. DeWine*, 7 F.4th 521 (6th Cir. 2021) ................................6-7

*United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544 (1996) .......... 3

*Weinstein v. Bradford*, 423 U.S. 147 (1975) .......... 5-6

*Zadvydas v. Davis*, 533 U.S. 678 (2001) .......... 11

**Statutes**

National Voter Registration Act, Section 5 .......... 1, 9, 11-13

52 U.S.C. § 20504 .......... 9

H.B. 54 .......... 1, 3-5, 7-11

Ohio Rev. Code Ann. § 3503.11 .......... 4, 8

**Constitutional Provisions**

U.S. Const. art. I, § 2, cl. 1 .......... 10

U.S. Const. art. II, § 1, cls. 2, 4 .......... 9

U.S. Const. amend. XVII .......... 10

**Rules**

Fed. R. App. P. 27 .......... 15

Fed. R. App. P. 29 .......... 15

Fed. R. App. P. 32 .......... 15

**Other Authorities**

THE FEDERALIST NO. 59 (Alexander Hamilton) .......... 11

## INTEREST OF *AMICI CURIAE*

The Honest Elections Project ("HEP") and the Center for Election Confidence ("CEC"), Inc. support election integrity and the rule of law. HEP participated as *amicus curiae* before the district court. Amicus Brief, RE 38, PageID # 1431. Both organizations have an interest in ensuring that federal courts respect the Constitution's limits on federal jurisdiction and States' power to determine and enforce voter qualifications. *Amici* file with leave of Court to address the jurisdictional defect and federalism concerns bearing on the requested emergency relief.

## INTRODUCTION

The preliminary injunction rests on a jurisdictional foundation that disappeared, rendering the case moot. The two members through whom Red Wine & Blue ("RWB") had associational standing later obtained Ohio driver's licenses and registered to vote. The district court declined to dismiss the claims as moot, however, reasoning that "some future Ohio resident" could be subject to H.B. 54. Order, RE 57, PageID # 1828. It further held that the National Voter Registration Act ("NVRA") Section 5 preempts H.B. 54, but Supreme Court precedent construing the

Elections, Electors, and Qualifications Clauses and the canons of constitutional avoidance and federalism suggest otherwise. Because Defendants are likely to succeed on their jurisdictional and preemption claims, the Court should grant the emergency motion to stay.

## ARGUMENT

### I. The District Court Lacked Jurisdiction to Enter a Preliminary Injunction Due to Mootness

#### A. RWB's Claims are No Longer Live

To establish associational standing, an organization must "make specific allegations establishing that at least one identified member had suffered or would suffer harm."[1] *Summers v. Earth Island Inst.*, 555 U.S. 488, 498–99 (2009). RWB[2] identified Dutcher and Fazio as members allegedly suffering that harm. Compl., RE 1, PageID # 9. When the complaint was filed in August 2025, Dutcher intended to register while obtaining an Ohio driver's license, and Fazio intended to update her

[1] Organizations may have direct standing if they otherwise meet Article III's requirements. But mission-frustration expenses do not establish injury in fact; organizations "cannot spend their way into standing." *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 393–96 (2024); *Tenn. State Conf. of NAACP v. Lee*, 139 F.4th 557, 562–66 (6th Cir. 2025).

[2] The other organizational plaintiff, the Ohio Alliance for Retired Americans, has never identified a member with a concrete injury, so the district court relied only on RWB's associational standing through Dutcher and Fazio. Order, RE 57, PageID # 1818-1827.

registration after a name change. *Id.* Both alleged that H.B. 54 would require citizenship proof at the BMV that they did not want to provide. *Id.*

Even assuming those allegations established standing when filed, later events mooted the claim. Mootness, like standing, derives from Article III and must be resolved before exercising jurisdiction. *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974). A dispute that is alive when filed is insufficient; the parties' stake throughout litigation must remain. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477–78 (1990). When the issues are no longer live or the parties lack a legally cognizable interest in the outcome, the case is moot. *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam).

An association has standing only if at *least one* member would have standing in her own right. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 555 (1996). That standing must continue throughout litigation. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). When the identified member's harm ends, the association's claim becomes moot.

After filing, both Dutcher and Fazio obtained Ohio driver's licenses and registered to vote. Dutcher initially went to the BMV with a passport, California license, and Social Security card in her former name. Dutcher Decl., RE 49-1, IDPage # 1536. These were insufficient because her Social Security card did not match her current name and her proof of residence was inadequate. *Id.* at PageID # 1536-1538. She returned with a Social Security card in her current name and additional proof of residence, obtained an Ohio license, and registered to vote. *Id.* at PageID # 1538. Fazio had registered under her former name before the complaint. After filing, she went to the BMV to update her license and registration but lacked a birth certificate and updated Social Security card. Fazio Decl., RE 49-2, PageID # 1540-1541. She later obtained both, returned, received her license, and, to the best of her recollection, updated her registration. *Id.* at PageID # 1541.

Both women now have BMV records reflecting citizenship; they can now vote or update their registrations without ever again being subject to H.B. 54, as the district court acknowledged. Order, RE 57, PageID # 1828; *see also* Ohio Rev. Code Ann. § 3503.11(A)(1). The injunction thus provides neither them nor RWB any relief. Their past exposure to H.B. 54

does not establish a present controversy for injunctive relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992). The court therefore lacked jurisdiction to grant a preliminary injunction. *Brown v. Yost*, 122 F.4th 597, 602 (6th Cir. 2024) (en banc) (per curiam).

### B. The Capable-of-Repetition-Yet-Evading-Review Exception Does Not Apply Here

The "capable of repetition yet evading review" ("CRYER") exception applies only if (1) the challenged action could not be fully litigated before expiring; and (2) the *same complaining party* reasonably can be expected to face it again. *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (per curiam); *Lawrence v. Blackwell*, 430 F.3d 368, 371 (6th Cir. 2005).

The district court found prong one satisfied because election disputes are often resolved within months. Order, RE 57, PageID # 1827-1828. It acknowledged that prong two was "somewhat trickier" because Dutcher and Fazio had obtained licenses and presented citizenship proof, but held that the controversy would recur as to "some *future Ohio resident*." *Id*. at PageID # 1828 (emphasis added).

That reasoning turns *Lawrence*'s observation that the repetition inquiry is "somewhat relaxed in election cases" into an exception to the

same-party requirement. *Lawrence*, 430 F.3d at 372. *Lawrence*'s holding is not broad; it found the controversy capable of repetition as to the *same candidate and voter* because the law still applied to both. *Id*. at 371–72. *Lawrence* required a reasonable expectation that the same political actor(s) will face the restriction, not an unidentified future voter. *See id*. Its reference to "some future potential candidate or voter in Ohio," *id*. at 372, was dicta and did not displace *Weinstein*'s "same complaining party" rule.

*Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 584–85 (6th Cir. 2006), likewise involved the same plaintiff, a political party that was reasonably expected to place candidates on the next ballot. That party, not some unidentified future member, would face the requirements again, satisfying the same-party requirement. *Id. Memphis A. Philip Randolph Institute v. Hargett*, 2 F.4th 548, 553–55, 558–61 (6th Cir. 2021), confirms the point. There, the identified member lost eligibility to vote absentee, and the organizational plaintiffs no longer had a legally cognizable interest. *Id.* The court rejected CRYER because the alleged injury and injunction were tied to the COVID-19 pandemic, a unique, unlikely-to-recur circumstance. *Id.* at 560–61; *see also Thompson v.*

*DeWine*, 7 F.4th 521, 525–26 (6th Cir. 2021). Here, Dutcher and Fazio will not face H.B. 54 again and RWB has not identified any other member who will.

Supreme Court election cases likewise apply prong two to the same identified political actor. In *FEC v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 463–64 (2007), the plaintiff-organization credibly intended to run similar ads and could expect enforcement again. *Davis v. FEC*, 554 U.S. 724, 736 (2008), involved the same candidate, and *Norman v. Reed*, 502 U.S. 279, 287–88 (1992), applied CRYER because the same parties could generate a similar controversy. In *Dunn v. Blumstein*, 405 U.S. 330 (1972), the Court noted in dicta that the district court "properly rejected" mootness in a class action because the named plaintiff was a "*member of the class of people affected by"* the laws and class members remained subject to them. *Id.* at 333 n.2 (emphasis added)*; see also Blumstein v. Ellington*, 337 F. Supp. 323, 327 (M.D. Tenn. 1970) (confirming class action). In all of these cases, both CRYER prongs were satisfied; none permits a claim to continue based only on unidentified third parties.

Here, the same-party requirement is not met. H.B. 54 neither regulates RWB nor requires it to act or transact with the BMV. Order,

RE 57, PageID # 1823-1824. Dutcher and Fazio have registered and have BMV records reflecting citizenship; under the plain language of H.B. 54, they will *never be subject to H.B. 54 again*, even if they change their name or residence. Ohio Rev. Code Ann. § 3503.11(A)(1) (exempting those who "previously presented proof of United States citizenship" at the BMV). The district court's rationale—that an *unidentified individual* (not even an RWB member) may be subject to H.B. 54—is not permissible under Article III; such speculation cannot provide a live controversy.

The Fourth and First Circuits have been clear that the same-complaining-party prong applies equally in election cases. *Stop Reckless Econ. Instability Caused by Democrats v. FEC*, 814 F.3d 221, 230–31 (4th Cir. 2016); *Barr v. Galvin*, 626 F.3d 99, 105–06 (1st Cir. 2010). And although other Circuits, including this Court, acknowledge some flexibility in election cases, they do so only where the *same political actor* reasonably faces the restriction again. *Lawrence*, 430 F.3d at 371; *Majors v. Abell*, 317 F.3d 719, 722–23 (7th Cir. 2003); *Hall v. Sec'y, Ala.*, 902 F.3d 1294, 1305 (11th Cir. 2018).

RWB cannot establish that Dutcher or Fazio reasonably expect to face H.B. 54 again. Their injury cannot reasonably recur, and RWB's

claim is moot. Accordingly, Defendants are likely to succeed on their jurisdictional challenge.

## II. Defendants Are Likely to Succeed on the Merits Because H.B. 54 Exercises Ohio's Constitutional Authority to Set and Enforce Voter Qualifications

The Constitution gives States exclusive authority to set and enforce voter qualifications. H.B. 54 is such a law, and Congress lacks power to preempt it.

The district court nevertheless concluded that H.B. 54 was preempted by NVRA Section 5, which provides that a State's driver's license application "shall serve as an application for voter registration *with respect to elections for federal office*" and that the "voter registration application portion" of that form "may require only the minimum amount of information necessary" to assess eligibility. 52 U.S.C. § 20504(a)(1), (c)(2)(B). The issue is therefore whether Congress may preempt States' authority to set and enforce voter qualifications using their own State driver's license forms.

For presidential elections, the Electors Clause gives each State authority to appoint electors "in such Manner as the Legislature thereof may direct…" U.S. Const. art. II, § 1, cl. 2. Congress may set only the

time of choosing electors and the day they vote. *Id.* cl. 4. Thus, States' power over the manner of appointing electors is otherwise *exclusive*, subject to constitutional limits not relevant here.[3] *McPherson v. Blacker*, 146 U.S. 1, 35 (1892); *accord Bush*, 531 U.S. at 104; *Chiafalo v. Washington*, 591 U.S. 578, 589–90 (2020). States' power includes determining who may vote for electors *if* the State chooses popular election. *Bush*, 531 U.S. at 104. A State legislature may select electors itself if it wants, or it may allow selection by popular vote and restrict who is qualified to cast such votes, within certain constitutional limits. As applied to presidential elections, H.B. 54 fits comfortably within Ohio's plenary authority to determine voter qualifications.

For congressional elections, the Qualifications Clause requires electors to possess the "Qualifications requisite for Electors of the most numerous Branch of the State Legislature," and the Seventeenth Amendment applies that rule to Senate elections. U.S. Const. art. I, § 2, cl. 1; *id.* amend. XVII; *Tashjian v. Republican Party of Conn.*, 479 U.S.

[3] For example, if a State allows voting for presidential elections, the Fifteenth, Nineteenth, Twenty-Fourth, and Twenty-Sixth Amendments and the Equal Protection Clause constrain whom it may exclude. *See, e.g.*, *Bush v. Gore*, 531 U.S. 98, 104–05 (2000) (per curiam).

208, 227 (1986). The Elections Clause then authorizes Congress to regulate the "Times, Places and Manner of holding" congressional elections, "but not *who* may vote in them." *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 16–17 (2013) (emphasis in original); *see also* THE FEDERALIST NO. 59. (Alexander Hamilton). As the Court put it, "Prescribing voting qualifications…*forms no part of the power to be conferred upon the national government* by the Elections Clause…" *Inter Tribal*, 570 U.S. at 17 (emphasis added) (cleaned up).

Because the Qualifications, Electors, and Elections Clauses give States exclusive authority to set and enforce voter qualifications in federal elections, Congress lacks authority to preempt H.B. 54.

### A. The Canon of Constitutional Avoidance Requires Narrow Construction of NVRA Section 5

Even assuming *arguendo* that Section 5 conflicts with and preempts H.B. 54, that reading raises serious constitutional doubts. The constitutional-avoidance canon requires a construction that avoids the question. *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001).

In *Inter Tribal*, the Court held that the NVRA preempted Arizona's proof-of-citizenship law *only as applied to the Federal Form*. 570 U.S. at 15, 20. The Court did not hold that the NVRA preempts state laws

establishing or enforcing voter qualifications. To the contrary, *Inter Tribal* held that the NVRA does not "preclude States from denying registration based on information in their possession establishing the applicant's *ineligibility*." *Id.* at 15 (emphasis added) (cleaned up). It warned that a broader reading would raise serious constitutional doubts because States must obtain information necessary to enforce voter qualifications. *Id.* at 17.

*Inter Tribal* avoided that question because the NVRA provided an alternative: A State could ask the federal Election Assistance Commission to add to the Federal Form necessary information about its voter qualifications. *Id.* at 18–20. That safety valve does not apply here because Ohio's *State driver's-license form* is beyond EAC's authority. Reading NVRA Section 5 to bar Ohio from obtaining voter qualification information, as the district court did, would erase the constitutional distinction between regulating elections and determining voter qualifications. The Court should therefore construe Section 5 narrowly to avoid that result. Otherwise, Section 5 will prevent all States from obtaining information needed to enforce their voter qualification laws using their own State driver's-license forms, and thus, render the

Constitution's allocation of election authority ineffectual. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 174 (1803).

### B. The Federalism Canon Likewise Requires Narrow Construction of NVRA Section 5

Even assuming *arguendo* that Congress may preempt some state voter-qualification rules, the federalism canon requires an "unmistakably clear" statement to displace this historic state authority. *Gregory v. Ashcroft*, 501 U.S. 452, 460–61 (1991); *Bond v. United States*, 572 U.S. 844, 858 (2014).

*Inter Tribal* declined to apply that canon, but only to the extent that the NVRA mandates that States accept and use the *Federal Form*. 570 U.S. at 14–15. That declination is inapposite for State forms, like driver's license forms, which effectuate States' power to enforce voter qualifications under the Qualifications and Electors Clauses. No unmistakably clear statement shows Congress intended Section 5 to preempt States' qualifications authority. The Court should apply the federalism canon and stay the injunction.

## CONCLUSION

For the foregoing reasons, *amici* ask the Court to stay the preliminary injunction.

September 16, 2026 Respectfully submitted,


Jason B. Torchinsky
*Counsel of Record*
HOLTZMAN VOGEL
BARAN TORCHINSKY &
JOSEFIAK PLLC
2300 N Street N.W.
Suite 643
Washington, DC
20037
(202) 737-8808
jtorchinsky@
holtzmanvogel.com

Elizabeth Price Foley
Steven LaRussa
HOLTZMAN VOGEL
BARAN TORCHINSKY &
JOSEFIAK PLLC
2333 Ponce de Leon
Blvd.
Suite 600
Coral Gables, FL
33134
(305)-379-1601
efoley@holtzmanvogel.
com

*Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 27(d)(2)(A) and 29(a)(5) because it contains 2,594 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface and typestyle Requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 14-point font.

September 16, 2026.

*<u>/s/ Jason B. Torchinsky</u>*
Jason B. Torchinsky

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the CMF/ECF system on September 16, 2026. All participants in this case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

*/s/ Jason B. Torchinsky*
Jason B. Torchinsky