**No. 26-3813**
**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| RED WINE & BLUE, ET AL., | : | |
| Plaintiffs-Appellees, | : | On Appeal from the |
| | : | United States District Court |
| v. | : | for the Northern District of Ohio |
| | : | |
| FRANK LAROSE, IN HIS OFFICIAL CAPACITY AS OHIO SECRETARY OF | : | District Court Case No. |
| STATE, ET AL., | : | 1:25-cv-1760 |
| Defendants-Appellants, | : | |

# BRIEF OF STATE APPELLANTS

D. ANDREW WILSON
Attorney General of Ohio

MATHURA J. SRIDHARAN*
Ohio Solicitor General
**Counsel of Record*
JOHN F. KERKHOFF
Chief Deputy Solicitor General
STEPHEN P. CARNEY
Senior Deputy Solicitor General
AARON A. KRUK
Deputy Solicitor General
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
614.466.8980
Mathura.Sridharan@OhioAGO.gov

*Counsel for Appellants*
*Frank LaRose, et al.*

## TABLE OF CONTENTS


Page

TABLE OF AUTHORITIES ....... iii

STATEMENT REGARDING ORAL ARGUMENT ....... vi

JURISDICTIONAL STATEMENT ....... 1

STATEMENT OF THE ISSUES ....... 2

INTRODUCTION ....... 3

STATEMENT ....... 6

I. Federal law requires that States offer voter registration along with driver's-license applications....... 6

II. Driver's-license applications may be submitted under Ohio law only with the required documentation. ....... 7

A. Ohio requires proof of legal presence, which confirms citizenship status. ....... 7

B. The BMV's computers are programmed to submit driver's-license applications only when the applicant provides all information under Ohio law....... 8

III. Two Associations sued in August 2025 over their members' BMV visits and sought injunctive relief in April 2026....... 9

IV. Months after the preliminary-injunction hearing, the district court ordered Ohio to offer voter registration regardless of whether a license application has been submitted. ....... 12

V. This Court granted a stay pending appeal, noting the likely lack of standing and the mootness of the preliminary-injunction request....... 14

SUMMARY OF THE ARGUMENT ....... 17

STANDARD OF REVIEW ....... 20

ARGUMENT .......... 21

I. The Associations raised one theory at one target, and the Court should reject their shift to litigating this case on another theory aimed at another target .......... 21

II. The Associations are unlikely to succeed on the merits .......... 23

A. The Associations lack standing, and their claim for preliminary relief is moot .......... 23

1. The Associations lack standing because the Offer-to-Citizens Law did not cause their members any injury, and enjoining it will redress nothing .......... 24

2. The Associations' request for preliminary relief is moot because the named members have registered to vote, and no mootness exception applies .......... 27

B. Neither Ohio's Offer-to-Citizens Law nor any other Ohio law or process conflicts with the NVRA .......... 29

1. The Offer-to-Citizens Law does not conflict with §5(c)'s minimum-information provision .......... 30

2. The NVRA's "serve as" provision, §5(a), does not displace States' authority to decide when and how someone can submit a driver's license application .......... 33

3. Ohio's BMV needs to offer voter registration only when an applicant has all the required documents to apply for a driver's license, and the district court erred in concluding otherwise .......... 37

III. The equities weigh against a preliminary injunction .......... 42

CONCLUSION .......... 44

CERTIFICATE OF COMPLIANCE .......... 45

CERTIFICATE OF SERVICE .......... 46

DESIGNATION OF DISTRICT COURT RECORD .......... 47

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*ACORN v. Edgar*,
56 F.3d 791 (7th Cir. 1995) .......... 35

*Arizona v. Inter Tribal Council of Arizona, Inc.*,
570 U.S. 1 (2013) .......... *passim*

*Barnhart v. Thomas*,
540 U.S. 20 (2003) .......... 39

*Brown v. Yost*,
122 F.4th 597 (6th Cir. 2024) .......... 16, 27

*California v. Texas*,
593 U.S. 659 (2021) .......... 24

*Colvin v. Caruso*,
605 F.3d 282 (6th Cir. 2010) .......... 22, 23

*Cyan Inc. v. Beaver Cnty. Emps. Ret. Fund*,
583 U.S. 416 (2018) .......... 39, 40

*Dakota Girls, LLC v. Philadelphia Indem. Ins. Co.*,
17 F.4th 645 (6th Cir. 2021) .......... 40

*Davis v. FEC*,
554 U.S. 724 (2008) .......... 24

*ECB USA, Inc. v. Chubb Ins. Co. of N.J.*,
113 F.4th 1312 (11th Cir. 2024) .......... 39

*EOG Res., Inc. v. Lucky Land Mgmt., LLC*,
134 F.4th 868 (6th Cir. 2025) .......... 20, 21

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) .......... 25

*Grand v. City of Univ. Heights*,
159 F.4th 507 (6th Cir. 2025) .......... 22

*Gregory v. Ashcroft*,
501 U.S. 452 (1991) .......... 36

*Hendrick v. Maryland*,
235 U.S. 610 (1915) .......... 33, 37, 38

*Lawrence v. Blackwell*,
430 F.3d 368 (6th Cir. 2005) .......... 12, 16, 17, 28

*League of United Latin Am. Citizens v. Bredesen*,
500 F.3d 523 (6th Cir. 2007) .......... 33, 37, 38

*League of Women Voters of U.S. v. Newby*,
838 F.3d 1 (D.C. Cir. 2016) .......... 42

*Memphis A. Philip Randolph Inst. v. Hargett*,
2 F.4th 548 (6th Cir. 2021) .......... 23, 27

*Memphis A. Phillip Randolph Inst. v. Hargett*,
478 F. Supp. 3d 699 (M.D. Tenn. 2020) .......... 22

*Purcell v. Gonzalez*,
549 U.S. 1 (2007) .......... 16

*Steel Co. v. Citizens for a Better Evn't*,
523 U.S. 83 (1998) .......... 25

*Tennessee Conf. of the NAACP v. Lee*,
139 F.4th 557 (6th Cir. 2025) .......... 25, 42

*Torres v. Precision Indus.*,
995 F.3d 485 (6th Cir. 2021) .......... 36

*Waskul v. Washtenaw Cnty. Cmty. Mental Health*,
900 F.3d 250 (6th Cir. 2018) .......... 24, 28

**Statutes and Regulations**

28 U.S.C. §1292 .......... 1

28 U.S.C. §1331 .......... 1

28 U.S.C. §1367 .......... 1

52 U.S.C. §20504 .......... *passim*

2009 OH Reg. 9280206 (Sep. 28, 2009) .......... 7

Ohio Admin. Code §4501:1-1-21 .......... 7, 31, 37

Ohio Rev. Code §3501.04 .......... 9

Ohio Rev. Code §3503.11 .......... 3, 9

Ohio Rev. Code §4501.02 .......... 9, 38

Ohio Rev. Code §4503.038 .......... 34

Ohio Rev. Code §4507.13 .......... 8

Ohio Rev. Code §4507.24 .......... 34

**Other Authorities**

2025 Am.Sub.H.B. No. 54 .......... 9

Jake Zuckerman, *Ohio Woman Accused of Illegally Voting as a Noncitizen Found Not Guilty*, Columbus Dispatch (May 20, 2026) .......... 42, 43

## STATEMENT REGARDING ORAL ARGUMENT

The State of Ohio Defendants-Appellants request oral argument. The district court held that a federal voter-registration law preempts both a State statute and the State's process for submitting driver's-license applications. This case thus raises important issues of State sovereignty and federalism. This case additionally presents important jurisdictional issues of standing and mootness. All these issues warrant oral argument.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over the plaintiffs' claims under 28 U.S.C. §§1331 & 1367. This Court has jurisdiction to review the district court's preliminary injunction under 28 U.S.C. §1292(a)(1).

## STATEMENT OF THE ISSUES

1. Did the plaintiff Associations show a likelihood of establishing standing to challenge Ohio's compliance with the federal motor-voter law, when the only named members faced issues with driver's-license renewal, not with voter registration?

2. Is the preliminary-injunction request moot when the plaintiff Associations' only named members have since registered to vote, and the Associations have not identified any other affected members?

3. Are the Associations likely to succeed on the merits of their claim that Ohio violates the federal motor-voter law by offering voter registration at the BMV only to those who properly submit driver's-license applications?

4. Do the equities support a preliminary injunction?

## INTRODUCTION

This case is about who can obtain a driver's license. State law governs that process: it decides who gets a driver's license, what identification is required to get one, and how to process license applications. And in 2009, Ohio law required license applicants to establish legal presence in the United States. Citizenship is not required. But, solely for licensing purposes, license applicants must establish, through appropriate documentation, either citizenship or other lawful presence to obtain a driver's license.

Federal law governs certain aspects of voter registration. Specifically, the National Voter Registration Act makes voter registration easy by allowing driver's license applicants who are eligible to vote to simultaneously register to vote when they submit their driver's-license applications. It says an "application … submitted to the appropriate State motor vehicle authority under State law shall serve as an application for voter registration." 52 U.S.C. §20504(a)(1). And States "may require only the minimum amount of information necessary to … enable state election officials to assess the eligibility of an applicant." *Id.* §20504(c)(2)(B)(ii). In 2025, Ohio enacted the Offer-to-Citizens Law, which clarified that *when* a driver's license applicant shows proof of citizenship, a clerk shall offer voter registration. Ohio Rev. Code §3503.11(A)(1).

Plaintiffs—two Associations—confuse these distinct spheres of law, conflating a driver's-license application issue with a voter-registration one. They started by arguing one claim but have since morphed it into another. First they said that Ohio's Offer-to-Citizens Law violates the NVRA by requiring more than the minimum information required to establish voter eligibility. They have since shifted to arguing (for the first time in their reply brief in their motion for preliminary injunction) that Ohio's license-application software, operated by BMV clerks, violates the NVRA because failed driver's-license applications do not move on to the voter-registration screen in the computer system. This, they say, prohibits failed applications from "serving as" voter registration.

But even before their claims fail on the merits, they fail on jurisdictional grounds. The Associations base their claims on two members of one of the Associations, both of whom initially failed to submit driver's-license applications because they did not bring the required documents, and both of whom have since successfully registered to vote. Critically, neither was turned away for failure to bring documentation providing proof of citizenship. So, as a motions panel of this court already observed, these members do not suffice to establish standing for the Associations. Neither named plaintiff was injured, or even affected, by the Offer-to-Citizens Law—because they could not complete the paperwork to get *licenses*. Neither reached the voter-

registration step, so neither had to show proof of citizenship to obtain an offer to register to vote. And even if they were injured by that law, the Associations' request for preliminary relief is moot because the named members have registered to vote, and the Associations have not offered substitute members to anchor their claims.

If, somehow, the Court reaches the merits, the Associations are unlikely to succeed. When an applicant successfully submits a driver's license, she has already established the basis for her legal presence in the State with documentary proof. That means that offering voter registration to a successful applicant in line with the Offer-to-Citizens Law does nothing more than tell a clerk to offer registration to known citizens, and not to known non-citizens. And if the Associations disagree with the documentary proof of legal presence to obtain a *driver's license*, well, that is a different State law governing license applications and not voter registration.

And if they can get this Court to review their shifted claim (they should not)—that Ohio's computers do not allow a failed application to proceed to the voter-registration page in violation of the NVRA—that is neither the law they attacked nor the preemption theory they pursued in the Complaint. And again, it is a challenge to Ohio's driver's-license-application system, not federal voter-registration law. They confuse the point twice over. At any rate, Ohio lets anyone register to vote anyway without proof of citizenship—even failed license applicants and even at the

Bureau of Motor Vehicles. They just have to submit their application by paper form, available at the BMV and in other places such as online, by mail, and in person.

Finally, the equities tip in Ohio's favor. Ohio lets anyone register to vote anyway without proof of citizenship, through many avenues, and the Associations are not harmed by the law. And the State always suffers irreparable injury when its duly enacted law is enjoined. Thus, forcing Ohio to revamp, at great expense, its *driver's-licensing* process, is not warranted.

The Court should reverse.

## STATEMENT

### I. Federal law requires that States offer voter registration along with driver's-license applications.

The National Voter Registration Act (NVRA) requires States to offer voter registration to driver's-license applicants. 52 U.S.C. §20504(a). Section 5(a) requires submitted driver's-license applications to serve as voter-registration applications:

> Each *State* motor vehicle driver's license application (including any renewal application) *submitted* to the appropriate State motor vehicle authority *under State law* shall serve as an application for voter registration … .

*Id.* §20504(a)(1) (emphases added). State law defines driver's-license application requirements. Federal law defines requirements for the accompanying voter-registration portion. Specifically, the NVRA's §5(c) says States "may require only the

minimum amount of information necessary to … enable State election officials to assess the eligibility of an applicant." *Id.* §20504(c)(2)(B)(ii). This portion must include the State's voter "eligibility requirement[s] (including citizenship)," "an attestation that the applicant meets" those requirements, and the applicant's signed attestation, under penalty of perjury. *Id.* §20504(c)(2)(C).

## II. Driver's-license applications may be submitted under Ohio law only with the required documentation.

### A. Ohio requires proof of legal presence, which confirms citizenship status.

Ohio requires a license applicant to provide documentary proof of the applicant's legal name, date of birth, social security number, street address of principal Ohio residence, and legal presence in the U.S. Ohio Admin. Code §§4501:1-1-21(A), (C). Various documents can satisfy these categories. *See* PI Opp'n, Exs. A-1 & A-2, R.35-1, PageID#1139–44 (listing credentials); Ohio Admin. Code §§4501:1-1-21(E)–(J) (primary documents); *id.* §4501:1-1-21(Q) (alternative documents). Without those documents, an application is not "submitted," and the BMV will not issue any license. *See* Ohio Admin. Code §4501:1-1-21(D).

The legal-presence requirement, established in 2009, bars licenses for those not legally present in the U.S. *See* 2009 OH Reg. 9280206 (Sep. 28, 2009). Licensure

does not require citizenship. But citizenship status appears on Ohio driver's licenses. Ohio Rev. Code §4507.13(A)(2)(j).

### B. The BMV's computers are programmed to submit driver's-license applications only when the applicant provides all information under Ohio law.

Ohio's BMV uses an electronic system called "BASS" to process driver's-license applications. King Decl., R.35-1, PageID#1133, ¶3. If the applicant provides complete information with documentation, a deputy registrar enters the information, *id.* at PageID#1135, ¶¶12–14, 18, and an interim driver's credential is issued, *id.* ¶¶16, 18. But if an applicant does not provide complete information or documents, the transaction is canceled. *Id.* ¶¶15, 18. No license application is submitted, and no partial file is saved.

If the application is submitted, the system continues to the voter registration portion of the application. *Id.* at PageID#1135–36, ¶¶15, 21; Tr., R.55, PageID#1644–45. The system's voter-registration step does not ask for any proof of citizenship. King Decl., R.35-1, PageID#1136, ¶22. But if the proof-of-legal-residence documentation for the driver's-license application showed non-citizen status, the system does not offer voter registration. *Id.* ¶24.

If the driver's-license application is not submitted because it is incomplete, the system does not reach the voter-registration step. Tr., R.55, PageID#1649.

However, all BMV offices have paper voter-registration forms available for all customers, whether for failed applicants or for those doing other business, such as car registration. King Decl., R.35-1, PageID#1136, ¶25.

In March 2025, Ohio enacted an "Offer-to-Citizens Law," providing that when "any person applies for a driver's license … and the person presents proof of United States citizenship," the BMV "shall offer the applicant the opportunity to register to vote." Ohio Rev. Code §3503.11(A)(1); 2025 Am.Sub.H.B. No. 54.

## III. Two Associations sued in August 2025 over their members' BMV visits and sought injunctive relief in April 2026.

The Associations, two activist groups, sued Ohio officials in August 2025. Red Wine & Blue describes itself as a "membership organization whose mission is to empower women to engage in political discourse," including through "encouraging its members to vote." Compl., R.1, PageID#6, ¶¶20, 22. The Ohio Alliance for Retired Americans' "mission is to protect the civil rights of retirees," including through "ensuring that its members are able to register and turn out to vote." *Id.* at PageID#10, ¶34. The Defendants are Frank LaRose, Ohio's Secretary of State and chief election officer, Ohio Rev. Code §3501.04, and Charles Norman, Ohio's Registrar of Motor Vehicles, *id.* §4501.02(A).

The Associations say that the NVRA's §5(c) preempts the Offer-to-Citizens Law, because that statute violates §5(c)'s minimum-information provision. Compl.,

R.1, PageID#4, ¶¶11. They requested declaratory and injunctive relief against the Law, *see id.* at PageID#30, but sought no preliminary relief when they filed their Complaint.

Six months later, in April 2026, the Associations moved to preliminarily enjoin enforcement of the Offer-to-Citizens Law, citing the BMV experiences of Peggy Dutcher and Gianina Fazio, both members of Red Wine & Blue. PI Mot., R.29-1; Dutcher Decl., R.49-1, PageID#1535–36, ¶¶1–3, 6–10; Fazio Decl., R.49-2, PageID#1540–41, ¶¶1–3, 6–7. The Complaint identified them as members who intended to obtain licenses and register to vote. Compl., R.1, PageID#9, ¶¶29–30. Both "strongly believe[]" that they should not have to provide documentation of citizenship. *Id.*

Dutcher first visited the BMV without a social security number with her married name, as required for a driver's license. Dutcher Decl., R.49-1, PageID#1536–38, ¶¶10–11, 14–15. She did have a passport, which documented legal presence and showed citizenship. *Id.* at PageID#1536, ¶10. Without all the documentation necessary to submit a driver's-license application, she was also unable to use that application for voter registration (although separate voter-registration forms are at all BMV locations, she says she thought she had no options). *Id.* at PageID#1537–38, ¶¶14–

15. Dutcher later returned with all proper documents for a driver's-license application, and on that trip, she registered to vote. *Id.* at PageID#1538, ¶18.

Fazio likewise first visited the BMV with insufficient documents for a license application; she did not have her birth certificate or a social security card with her current last name on it. Fazio Decl., R.49-2, PageID#1541, ¶¶6–7. Thus, she did not register to vote on that trip. *Id.* ¶7. She returned with proper documentation for a license application and also registered to vote. *Id.* ¶¶9–10.

Consistent with their Complaint, the Associations' preliminary-injunction motion initially claimed that the Offer-to-Citizens Law violated the NVRA's minimum-information provision in §5(c) by allegedly requiring proof of citizenship to register to vote at the BMV. PI Mot., R.29-1, PageID#360–61. They pivoted to a different theory in their reply. They newly argued that the BMV's system, which will not offer voter registration until a completed driver's-license application has been submitted, violates the NVRA's §5(a), which requires State driver's-license applications to "serve as" voter-registration applications. PI Reply, R.49, PageID#1523–26. According to the plaintiffs, failed driver's-license applications should still be offered voter registration through the computerized system, or else the application does not "serve as" a voter-registration application as the NVRA requires. They

have not sought to amend their Complaint, which targets only the Offer-to-Citizens Law in its prayer for relief. Compl., R.1, PageID#30.

## IV. Months after the preliminary-injunction hearing, the district court ordered Ohio to offer voter registration regardless of whether a license application has been submitted.

The district court held a preliminary-injunction hearing on June 25, 2026, and granted the injunction seven weeks later. PI Op., R.57, PageID#1789 ("Dist.Op."). The court determined the Associations had standing because members were harmed. *Id.* at PageID#1816–27. The claims avoided mootness, the court said, because the harms were capable of repetition yet evading review. *Id.* at PageID#1827–29 (citing *Lawrence v. Blackwell,* 430 F.3d 368, 370 (6th Cir. 2005)). The court concluded that the Associations would suffer irreparable harm without an injunction and that equitable factors favored an injunction. *Id.* at PageID#1834–39.

On the merits, the court said the Offer-to-Citizens Law imposes a "documentary proof of citizenship requirement for registering to vote" at the BMV. *Id.* at PageID#1829–34. It reasoned that this violated §5(c) by requiring more than the "minimum amount of information necessary" to prove citizenship. *Id.* The court also said that the Offer-to-Citizens Law violates §5(a) by failing to affirmatively offer voter registration to those whose incomplete driver's-license applications are not submitted under Ohio law. *Id.* at PageID#1805–11, 1814–15.

The preliminary injunction says Ohio may not "rely[] on" the Offer-to-Citizens Law "to require any driver's license applicant … to produce documentary proof of citizenship before offering the opportunity to register to vote." *Id.* at PageID#1842. It specifies that the BMV must offer voter registration to "driver's-license applicants" who lack "sufficient documents under Ohio's licensing requirements." *Id.* But it allows Ohio to forgo offering voter registration to known non-citizen driver's-license applicants. *Id.*

The State sought a stay of the district court's order on August 26, Stay Mot., R.59, which the court denied. Stay Op., R.63. Meanwhile, Ohio moved swiftly to comply with the injunction. The BMV instructed all deputy registrars to place paper voter-registration and information forms in public locations and to "remind customers that U.S. citizens are eligible to register to vote and direct the customer to" the registration forms, even if a driver's-license application was incomplete. Ex.1, at 1. The BMV also required deputy registrars to post signage informing customers they could register to vote even without completing driver's-license applications. Ex. 2. The signs included QR codes linked to online voter-registration forms.

But even those efforts would not satisfy the district court's injunction. Two weeks after Ohio sought a stay, the district court denied it. The court disagreed with Ohio's jurisdiction and merits arguments, redoubling its errors from its original

order. Stay Op., R.63, PageID#1893–99. Although plaintiffs conceded that a paper-form-only remedy would suffice, Stay Opp'n, R.60, PageID#1867, the court said that such an "interim remedy" still required Ohio to "proactively offer" voting registration to unsuccessful license applicants. Stay Op., R.63, PageID#1899–1902.

## V. This Court granted a stay pending appeal, noting the likely lack of standing and the mootness of the preliminary-injunction request.

Ohio then sought and received an emergency stay from this Court. *See* Stay Op., Doc.23. The panel majority noted, before reaching the four-factor test, how the Associations' claim changed during preliminary-injunction briefing. The preliminary-injunction motion targeted Ohio's 2025 Offer-to-Citizens Law (enacted in Ohio's H.B. 54 that year), relied on the Association's "reading" of the Law as "imposing a proof-of-citizenship requirement" for voter registration, and alleged that the Law conflicted with the NVRA's minimum-information provision. *Id.* at 4. But the "reply shifted focus away from the 'minimum information' argument," *id.* at 5, as the Associations changed both their Ohio-law target and their federal basis of attack. They now "asserted that Ohio's electronic motor-voter registration process"—which does not reach the voter-registration step until the license application is complete and eligible for submission—"violated the NVRA provision stating that a driver's-license application should 'serve as' a voter-registration application." *Id.* (quoting 52 U.S.C. §20504(a)(1)).

The panel "conclude[d] that all four factors support[ed] Ohio's request for a stay." *Id.* at 7. The panel opened with two jurisdictional flaws: standing and mootness.

First, the panel explained the "Associations' apparent lack of standing to press the preemption theory they" pursued. *Id.* The panel noted that associational standing required concrete injury to named members, and that the injury would be redressed by the requested relief. *Id.* at 7–8. The Associations here offered only the experiences of two members of Red Wine & Blue, who had gone to the BMV without sufficient documentation to obtain licenses. *Id.* at 8. The panel explained that neither "ever encountered anything having to do with" voter registration, and both stumbled because "the BMV rejected their *driver's-license* applications based on independent paperwork defects." *Id.* (emphasis in original). So even assuming they were injured at all by not being affirmatively offered voter registration, they were not injured by the challenged law. Nor would enjoining that law redress their alleged injury.

Second, the panel concluded that the Associations' request was moot, because both named members had returned to the BMV and "obtained driver's licenses and registered to vote." *Id.* at 9. Thus, they no longer needed relief. The panel rejected that the capable-of-repetition-yet-evading-review exception applied because it

requires a showing "as to the complaining party—not another member of the public." *Id.* (quotation omitted). The Associations presented no other members facing problems. The panel rejected the district court's reliance on cases applying that exception when an intervening election mooted a case. The panel explained that the mootness here arose from registration, not an election. *Id.* at 10 (citing *Lawrence,* 430 F.3d at 370). Finally, the panel noted that even if the *case* were not moot, *preliminary* relief certainly was. *Id.* (citing *Brown v. Yost*, 122 F.4th 597, 601 (6th Cir. 2024) (*en banc*) (*per curiam*)).

The panel concluded that the twin jurisdictional flaws made the likelihood of success factor so tilted that it "need not address the merits of the district court's NVRA's analysis." *Id.* at 7. As to the equities, the panel intertwined those with the then-relevant timing issue of the *Purcell* principle, which cautions against changing state election laws close to an election. *Id.* at 10 (citing *Purcell v. Gonzalez,* 549 U.S. 1 (2007) (*per curiam*)). The panel noted that Ohio faced significant compliance costs. *Id.* at 12. Apart from the *Purcell* timing aspect, the panel explained that nothing prevented Ohioans from registering to vote, so neither the Associations nor the public interest would be harmed. *Id.* at 13.

The dissent disagreed on all counts, essentially agreeing with the district court. *Id.* at 14–21 (Ritz, J., dissenting). The dissent found standing because, it said, the

named members "should have been offered the opportunity to register to vote" even if their license applications were defective. *Id.* at 15. It further found a mootness exception based on *Lawrence*, describing this as an election-related case. *Id.* at 16. It concluded that the Associations would likely succeed on the merits because, in its view, a failed license application is still "submitted," and thus triggers a duty to offer voter registration, which Ohio violated. *Id.* at 17–18. It found that the equities favored the Associations, too. *Id.* at 18–21.

## SUMMARY OF THE ARGUMENT

The district court erred in granting a preliminary injunction. Standing and mootness bar relief, as the stay panel rightly found. The Associations fail on the merits, too. And the equities favor Ohio.

I. The Associations are unlikely to succeed on the merits because they cannot establish jurisdiction and because the NVRA does not preempt Ohio law.

A. The Associations lack standing and their claims for preliminary relief are moot.

1. The Associations lack standing, because they have identified no members injured by Ohio's Offer-to-Citizens Law. The two named members failed to have *license* documentation, and they would have been turned away just the same

without that Law. With no other identified members with identified injuries, associational standing fails.

2. The Associations' requested relief became moot when the only two named members registered to vote. Both named members, Dutcher and Fazio, registered to vote on their second visits to the Ohio BMV, so they no longer have any need for preliminary relief. The Associations have no need for relief, and speculation about their membership or the general public cannot maintain a live issue.

No mootness exception applies. Voter-registration issues do not evade review. And the mootness exception for an intervening election does not apply, because the mootness here was caused by the choice to register, not by the occurrence of an election.

B. The NVRA does not preempt Ohio's Offer-to-Citizens Law. And Ohio may continue its longstanding practice requiring a driver's-license applicant to complete her application before it can be "submitted" and thus trigger an offer to register to vote. The Associations did not challenge the latter in their motion or Complaint, so the Court should not consider it, but even if it does, the claim is unlikely to succeed.

First, the Associations' original claim fails because the Offer-to-Citizens Law does not violate the NVRA's minimum-information provision. The Ohio Law says

that *if* the license applicant's information shows citizenship, the BMV shall offer voter registration. And the federal minimum-information provision tells States not to seek more information than necessary for voter registration. The Associations assert a conflict—claiming that the Ohio law imposes a "documentary proof of citizenship" requirement that violates the minimum-information provision. They miss, however, that Ohio law has independently required, for years, that all *driver's-license* applicants show proof of legal presence. That means all successful license applicants will establish whether they are citizens or not, just to obtain a driver's license. At that point common sense and *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 15 (2013), dictate that BMV clerks need not (and should not) turn a blind eye to information they already know by offering voter registration to a known non-citizen. The district court and the Associations are mistaken to imagine a third category—those whose citizenship status remains unknown after the license application—but that mistake arises from their insistence that an application may be submitted even though it fails to meet Ohio's driver's-license application standards.

Because the Associations belatedly realized that their real problem is with Ohio's linkage of a voter-registration offer to a submitted driver's-license application, they shifted to that new attack. But even if the Court reaches that claim, it fails, too. The NVRA's §5(a) "serve as" provision requires an offer to register to vote

only when a driver's-license application is "submitted … under State law." That expressly leaves state law to define what constitutes a submission, and Ohio has done just that. A failed application does not trigger the voter-registration obligation.

II. The equities also weigh against a preliminary injunction here. Neither the Associations nor anyone else is harmed by Ohio's law and BMV process, because voter registration is available through many routes, including through paper forms that are also available to everyone at the BMV, including failed driver's-license applicants. Conversely, forcing Ohio to change its licensing process consumes time and money, and is an intrusion on State sovereignty.

## STANDARD OF REVIEW

"To secure a preliminary injunction, a plaintiff must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *EOG Res., Inc. v. Lucky Land Mgmt., LLC*, 134 F.4th 868, 874 (6th Cir. 2025) (quotation omitted). A plaintiff "must make a clear showing that these factors favor him." *Id.* (quotation omitted).

This Court reviews a district court's grant of preliminary injunction for an abuse of discretion. *Id.* But the Court reviews the underlying legal analysis, including a plaintiff's likelihood of success, *de novo*. *Id.* A district court can thus abuse its

discretion "by identifying the wrong legal standard" or "improperly applying the right one." *Id.*

## ARGUMENT

The Associations lose on every preliminary-injunction factor. But one throughline connects all the issues: the plaintiffs have shifted their legal theory and their target—from claiming that the Offer-to-Citizens Law violates the NVRA's minimum-information provision to claiming that Ohio's voter-registration *process* at the BMV violates the NVRA's "shall serve" requirement. That shift affects every aspect of this case. Ohio starts there.

### I. The Associations raised one theory at one target, and the Court should reject their shift to litigating this case on another theory aimed at another target.

The Complaint targeted solely Ohio's 2025 Offer-to-Citizens Law—and not Ohio's longstanding practice of canceling a driver's-license application for lack of documentation (or any other reason). *See* Compl., R.1, PageID#30. When a driver's-license application falls short, the BMV clerk cannot submit it, and the software does not automatically proceed to the next step—offering voter registration electronically. The Associations likewise targeted only the Offer-to-Citizens Law in their preliminary-injunction motion, and further, attacked it as a violation of only the NVRA's minimum-information provision. See PI Mot., R.29-1, PageID#360–76.

That motion does not even *cite* the NVRA's serve-as provision, let alone argue that Ohio's law or any BMV process violates it.

The stay panel picked up on the shift. It noted that "the Associations' reply shifted focus away from the 'minimum information' argument" and from the 2025 Offer-to-Citizens Law. Stay Op. at 5, Doc.23. It further recognized that the Associations, in their reply, "principally asserted that Ohio's electronic motor-voter registration process violated" the serve-as provision. *Id.* And it noted that the new theory read the provision to require Ohio to accept and treat even incomplete driver's-license applications as voter-registration applications. *Id.* Thus, the Associations shifted *both* the Ohio law that they targeted and the NVRA provision that supposedly preempted it.

The Court should review only the claims that the Associations raised in the Complaint and the motion: "arguments made for the first time in a reply brief are forfeited." *Grand v. City of Univ. Heights*, 159 F.4th 507, 516 (6th Cir. 2025). But even if the Court forgives the forfeiture here, it "cannot grant a preliminary injunction against the enforcement of a statute not challenged in the [] Complaint." *Memphis A. Phillip Randolph Inst. v. Hargett*, 478 F. Supp. 3d 699, 709 (M.D. Tenn. 2020). It is the *Associations'* burden to "establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint" to obtain a

preliminary injunction. *Colvin v. Caruso*, 605 F.3d 282, 300 (6th Cir. 2010) (quotation omitted). They have not done so. So they have "no grounds to seek an injunction pertaining to allegedly impermissible conduct not mentioned in [their] complaint." *Id.* at 300.

This case boils down to one question, then: whether the NVRA's §5(c) minimum-information provision preempts the Offer-to-Citizens Law. Nevertheless, out of an abundance of caution, Ohio also addresses the question raised by the Association's shifted claim: whether fully processing a driver's-license application before turning to voting registration, as the BMV's licensing software requires, violates the NVRA's §5(a) serve-as provision.

## II. The Associations are unlikely to succeed on the merits.

The Associations are not just "unlikely" to succeed on the merits—they are definite losers. The Associations lack standing, and their request for preliminary relief is moot. And if they could get past all that, they would still be wrong on their preemption claims.

### A. The Associations lack standing, and their claim for preliminary relief is moot.

The Associations' claim suffers related, but distinct, jurisdictional flaws. They lack standing, and the relief request is moot. Both mean the Associations lose: "[i]f a plaintiff cannot show a likelihood of jurisdiction, then the court will deny the

preliminary injunction." *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 554 (6th Cir. 2021); *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 900 F.3d 250, 256 n.4 (6th Cir. 2018) (same).

### 1. The Associations lack standing because the Offer-to-Citizens Law did not cause their members any injury, and enjoining it will redress nothing.

Article III requires a "concrete, particularized injury fairly traceable to the defendants' conduct in enforcing the *specific statutory provision* [plaintiffs'] attack." *California v. Texas*, 593 U.S. 659, 680 (2021) (emphasis added). Because courts cannot dispense standing in gross, the Associations must tie their injury to the challenged law. *See Davis v. FEC*, 554 U.S. 724, 734 (2008). They cannot do so.

Start with the most basic reason why. The Offer-to-Citizens Law has not stopped any Association member from registering to vote at the BMV. The two named members' experiences prove the point. Both were initially sent away *before* submitting their driver's-license applications because they lacked necessary documents. *Above* at 10–11. But neither Dutcher nor Fazio lacked a document proving citizenship status. *Id.* So they were not harmed by Ohio's law.

Nor do they claim as much. The Complaint raised only ideological concerns against providing necessary documents—both "strongly believe[] that [they] and other U.S. citizens should not be required to produce" documentary proof of

citizenship "to register to vote"—and at a step of the process they did not even get to. Compl., R.1, PageID#9, ¶¶29–30. That is not enough for standing. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024); *Tennessee Conf. of the NAACP v. Lee*, 139 F.4th 557, 562 (6th Cir. 2025). At bottom, the Associations' late-in-time stories (added to the Associations' preliminary-injunction reply for the first time) of Dutcher's and Fazio's experiences only confirm that they were not injured by the Offer-to-Citizens Law. *See* Stay Op. at 8, Doc.23. Without an injury caused by the challenged law, the plaintiffs lack standing.

They also lack standing because the Offer-to-Citizens Law changes no BMV practices: enjoining the law would remedy nothing. And when an injunction would not address a plaintiff's alleged harm, standing is absent. *See Steel Co. v. Citizens for a Better Evn't*, 523 U.S. 83, 107 (1998). That is because Ohio's proof-of-legal-residency requirement, since 2009, had confirmed the applicant's *citizenship status.* With that knowledge and some common sense, BMV clerks have not been offering voter registration to applicants whose proof-of-legal-residency documents showed that they were not citizens, Tr., R.55, PageID#1651–52, just as they do not (and need not) offer registration to new drivers whose identification documents show they are aged 16 or 17, *see Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 15 (2013). In other words, Dutcher and Fazio would have been turned away for the same reason

in 2010 or 2024, before the 2025 Offer-to-Citizens Law clarified that known citizens should be offered voter registration.

As their late-breaking, shifting claim (which this Court should not review at all) shows, the real stumbling block for Dutcher and Fazio was that the BMV's system opens up voter registration only when a complete license application is submitted. Even then, the Associations cannot establish standing. True, the BMV cannot process a non-submitted attempt at licensure. So failed applicants do not get the benefit of automatic inclusion in the computerized system; they cannot register to vote in that way. But the BMV always has regular paper voter-registration forms at all locations, available for failed applicants or even those doing other business at the BMV, such as registering vehicles. King Decl., R.35-1, PageID#1136, ¶25. The failed applicants' "injury" is only that they cannot be offered computerized voter registration, but they still have the option of registering to vote at a BMV—through the available paper forms. That is no injury at all.

Without Dutcher and Fazio, the Associations have no basis for standing. They have offered no evidence that any other members faced issues (indeed, Ohio Alliance for Retired Americans has not identified a single member, let alone one with standing). That is fatal. As the stay panel rightly noted, "the Associations need[] to identify at least one member with standing to sue in her own right.'" Stay Op. at 7,

Doc.23 (alterations accepted and quotation omitted). Those members' injuries must be caused by the complained-of conduct, which the "requested relief will redress." *Id.* (quotation omitted). The Associations have not established standing. Even assuming that some members will have similar license-application issues, they will not be barred from registering to vote—at the BMV or anywhere else—and certainly not by the Offer-to-Citizens Law.

**2. The Associations' request for preliminary relief is moot because the named members have registered to vote, and no mootness exception applies.**

Even if the Associations could somehow clear the standing hurdle, they cannot leap over the mootness of their preliminary-injunction request.

First, the request for preliminary relief is *certainly* moot. This Court has recognized a difference "between mootness as to a preliminary-injunction appeal and mootness as to the case as a whole." *Brown*, 122 F.4th at 601 (quotation omitted); *see* Stay Op. at 10, Doc.23. Both named members have successfully registered to vote—at the BMV—so those members do not need relief, let alone preliminary relief. And because their members need no relief, the Associations do not either.

So unless they substitute a member who has yet to register to vote, the entire case is moot. *Memphis A. Philip Randolph Inst.*, 2 F.4th at 559. When an association's named member "no longer has an actual, ongoing stake in th[e] litigation" and the

association had "relied entirely on [that named member] to establish their legal interest in th[e] case," the preliminary-injunction request is moot. *Id.* at 558–59; *see also Waskul*, 900 F.3d at 257–58. It should follow suit here.

No mootness exception applies. This case does not involve an *intervening election* that would otherwise cause an issue to evade review. *Lawrence,* 430 F.3d at 370; Dist.Op. at PageID#1827–29. In *Lawrence,* this Court allowed an election-related claim to be heard after an election occurred because the timing of elections made the issue otherwise impossible (or nearly so) to reach. That is not so here because mootness arose not from the election but from the named members' *registration* to vote. Both voter registration and license renewal, unlike any specific election, never end. Both are ongoing, even if voter registration increases before elections. The issue thus does not evade review, for, if some other Association member faces harm, it can be reviewed in the ordinary course. The district court's reliance on *Lawrence* was thus misplaced.

Mootness, and the lack of exception, equally applies here even if the Associations change the target of their Complaint and their federal basis of preemption. The named members' registration to vote. That takes away the need for relief against *any* Ohio law or process, and on *any* preemption theory. That is, the named members' registration would moot the case even if the Associations were now allowed to

challenge Ohio's electronic process of offering voter registration only after a *successful* license application (as opposed to challenging the Offer-to-Citizens Law). It is still moot if that new challenge is now based on the NVRA's serve-as provision (as opposed to the minimum-information provision). The Court can do nothing more for them, and by extension, for the Associations. Their request for preliminary relief is thus moot.

The Court can stop there and reverse the injunction. But even if the Court somehow proceeds to the merits, the Associations still lose. Ohio turns to that next.

### B. Neither Ohio's Offer-to-Citizens Law nor any other Ohio law or process conflicts with the NVRA.

Even if the Associations could somehow clear both jurisdictional hurdles, they fail on the merits. The NVRA did not displace the States' longstanding authority to create administrable driver's licensing systems. In Ohio, applicants can proceed to voter registration only after submitting a license application with all its essential parts. This licensing requirement does not trigger the NVRA.

So both the original and the shifting claims fail. First, the original claim—that Ohio's Offer-to-Citizens Law violates the NVRA's §5(c) minimum-information requirement fails. It does not impose a "documentary proof of citizenship" requirement at all. Since 2009, Ohio has required proof of legal presence to obtain a driver's license. That process necessarily reveals citizenship status. And if an applicant is

not a citizen, a BMV clerk may (and should) deny "registration based on information in their possession establishing the applicant's ineligibility." *Inter Tribal Council*, 570 U.S. at 15 (quotation omitted).

Second, Plaintiffs' shifted claim—that the process violates the NVRA's serve-as provision—also fails. An Ohio license application cannot be submitted until all essential parts are completed. Until then, the clerk need not offer a voter-registration application. An incomplete driver's application is not submitted, and a non-submitted application can never serve as a voter-registration application.

### 1. The Offer-to-Citizens Law does not conflict with §5(c)'s minimum-information provision.

The Associations' original claim is based on irrelevant laws, both as to the Ohio law they targeted and the NVRA provision they relied on for preemption. The NVRA's §5(c) has nothing to do with this case. It bars the voter-registration portion of an application from requiring more than "minimum amount of information necessary" to assess voter eligibility. 52 U.S.C. §20504(c)(2)(B)(ii). But States never reach that step if no driver's license application is submitted.

And here, the BMV never reached the voter-application stage. Dutcher and Fazio lacked materials necessary to submit a driver's-license application, so they did not submit an application. In other words, they were not turned away for lack of

citizenship documents for voter registration: the law never required them to present citizenship documents during the voter-registration process.

So the district court simply made a factual error to the extent that it considered the Offer-to-Citizens Law or §5(c) to play any role here. But it was also wrong for two other related reasons.

*First*, a driver's license application can be submitted only after one shows proof of legal status in the U.S. Ohio Admin. Code §4501:1-1-21(C), (G). So by the time a driver's-license application is completed, the BMV will already know whether the applicant is a citizen.

The NVRA does not require States to turn a blind eye to already-known citizenship status. States may deny "registration based on information in their possession establishing the applicant's ineligibility." *Inter Tribal Council*, 570 U.S. at 15. Under Ohio's system, the legal-presence requirement establishes citizenship status. So even if Ohio had never enacted the 2025 Offer-to-Citizens Law, the BMV would not offer voter registration to non-citizens. The statute, *Inter Tribal*, and common sense allow the Ohio BMV to offer voter registration only to citizens—just as the BMV need not offer voter registration to a 16-year-old new driver.

Against that backdrop, the Offer-to-Citizens Law does not change BMV's years-long practice. No evidence suggests that the BMV had been offering voter

registration to those it knew were ineligible to vote—even though "the law, as it previously stood, could be read to require BMV workers to offer the opportunity for voter registration even when a person's driver's-license application demonstrated that he was a noncitizen ineligible to vote." Stay Op. at 3, Doc.23 (alteration accepted and quotation omitted). The same issue arises with underage drivers: taken too literally, one could argue that Ohio law or the NVRA requires the BMV to offer voter registration to a newly minted 16-year-old driver—yet surely that is not the case, and *Inter Tribal* supports the common-sense conclusion that States need not offer voter registration to those it *knows*, from information provided for licensing purposes, are ineligible to vote. Nothing about that reasonable rule conflicts with §5(c)'s minimum-information provision: the State does not require extra information at the voter-registration step at all. It simply does not offer registration to individuals who it knows may not lawfully vote. That sensible response to information already acquired at the license-application step satisfies the NVRA.

Dutcher's and Fazio's experiences illustrate this point. When they returned to the BMV with all the necessary documents to apply for a driver's license, the BMV offered them voter registration. *Above* at 10–11. And the process complied with the NVRA, including §5(c). Neither Dutcher nor Fazio was asked for any additional documentation to prove voter eligibility. Both were offered voter registration, and

both registered. *Above* at 10–11. Had their driver's-license applications shown that they were non-citizens, though, the Offer-to-Citizens Law would not have directed the BMV to offer them voter registration. But the NVRA permits that choice. *Inter Tribal Council*, 570 U.S. at 15.

**2. The NVRA's "serve as" provision, §5(a), does not displace States' authority to decide when and how someone can submit a driver's license application.**

The Court need not proceed further, because the Associations' Complaint targeted only the Offer-to-Citizens Law. But if it does reach their new claim from their reply brief in the district court—the one that the court below relied upon—it should find that one unlikely to succeed, too. Ohio's driver's license-application process does not violate §5(a). That section says that "[e]ach State motor vehicle driver's license application (including any renewal application) submitted to the appropriate State motor vehicle authority under State law shall serve as an application for voter registration." 52 U.S.C. §20504(a)(1). Thus, a State must package voter registration with a driver's-license application when that application is "submitted."

States may set reasonable conditions for submitting license applications. This is part of the States' "traditional police power" to regulate and license "driving." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 532 (6th Cir. 2007);

*Hendrick v. Maryland*, 235 U.S. 610, 622 (1915). That includes creating a licensing system and setting rules to administer those systems.

A few examples illustrate. States can decide *when* someone can apply for a license. Ohio's BMV, for instance, is not open 24/7. To submit a license application, an applicant must do so during business hours. And Ohio is free to bar someone from submitting an application outside of those hours—if someone tapes his application to the locked BMV door on a Sunday, the BMV can recycle that application on Monday. It need not carry the paper in and process it.

States can decide *how* drivers apply for a license. Ohio drivers take a number and wait in line until their number is called. And a BMV deputy registrar can refuse an application from impatient applicants who jump the line.

Finally, States can decide *what* applications require. For instance, many States, including Ohio, require a fee to process an application. Ohio Rev. Code §§4507.24(A), 4503.038(A). If an applicant refuses to pay, the BMV may reject the application. States control driver's-license applications from soup to nuts.

Section 5(a) does not change that fact. It merely mandates that a State's driver's-license application double as voter registration when properly submitted. The NVRA does not displace the States' authority to control applications. States decide when and how someone can apply for a license, and what an application needs.

The NVRA's text and context—coupled with well-worn clear-statement rules—show why States alone retain authority over license applications. Section 5(a)'s text twice specifies that the States control application submissions, which proceed "under State law." 52 U.S.C. §20504(a)(1). And §5(a) provides that it covers "*State* motor vehicle driver's license application[s]." *Id.* (emphasis added). There is no special, federal "NVRA" driver's-license application. Nor does the NVRA allow applicants, such as the Associations' members, to deviate from what State law says such an application requires.

Together, these two textual hooks confirm that States set conditions for submitting driver's license applications. While §5(a) mandates that States treat an application as voter registration *when* an applicant meets those conditions, it does not set those conditions.

The statutory context and purpose confirm that the NVRA does not disrupt state law regulating applications. The NVRA was "designed to make it easier to register to vote in federal elections." *ACORN v. Edgar*, 56 F.3d 791, 792 (7th Cir. 1995). Before the NVRA, registration was a separate step, and Congress concluded that more eligible people would register if it were combined with other State services. So Congress packaged registration with things that most eligible voters already do,

including getting a driver's license. Applying for a driver's license would now be all it took to register to vote, too.

Congress sought only to consolidate voter registration with existing State driver's-license processes. Congress did not seek to alter state licensing laws. And States take many different approaches—some more challenging than others. Applicants might need to show up during less-than-convenient weekday business hours, wait in long lines, and bring all essential application materials. Some applicants might not have the right paperwork. Some potential new drivers fail the driving test. And some States may impose more-onerous license criteria. The NVRA leaves these choices to States. It merely promises that *if* the applicant satisfies State law and submits a license application, that license-application submission may double as a voter registration.

In sum, the statutory text and context show that §5(a)'s serve-as provision does not displace the States' authority to set conditions for submitting license applications, and the duty to offer voter registration arises only when an application is ripe for submission under State law.

The federalism canon further drives this point home. That statutory-interpretation tool teaches that Congress must speak clearly before invading into areas of traditional state authority. *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991). Courts often

use this clear-statement rule when plaintiffs claim that a federal statute preempts state law. *Torres v. Precision Indus.*, 995 F.3d 485, 491 (6th Cir. 2021) (*per curiam*). As discussed above, regulating and licensing driving is one such traditional power. *League of United Latin Am. Citizens*, 500 F.3d at 532; *Hendrick*, 235 U.S. at 622. So §5(a) can override state law only if it speaks in clear terms.

But it does not. Section 5(a) does not impose a federal standard for when a State must treat an application as "submitted." To the contrary, by referring to the "State" application that is submitted "under State law," §5(a) expressly reaffirms that States retain the power to decide that question. So the statute comes nowhere near the clear statement required for preemption.

The NVRA leaves States free to decide when and how driver's-license submission occurs—and what applications require. Applications that fall short are not submitted. And without submission, §5(a) is beside the point. There is no voter registration step at all. Only once an applicant follows all those rules to submit an application does §5(a) kick in.

### 3. Ohio's BMV needs to offer voter registration only when an applicant has all the required documents to apply for a driver's license, and the district court erred in concluding otherwise.

All this shows that Ohio's BMV process does not conflict with §5(a).

Start with Ohio's driver's-license application rules. Prospective applicants must have documentary proof of five things: legal name, date of birth, Social Security number, street address of principal Ohio residence, and legal presence in the U.S. Ohio Admin. Code §4501:1-1-21(C). Ohio law gives the BMV wide regulatory authority to set these conditions and make sure they are met. Ohio Rev. Code §4501.02(A)(1). Using that authority, the BMV has built a computer system that requires all documents before applications can be submitted. *Above* at 8–9. So the would-be applicant must present all necessary information and documentation to the BMV. Put simply: only a complete application can be "submitted."

This approach falls within Ohio's traditional police power to regulate driving, which includes licensing drivers and thus designing driver's-license applications. *League of United Latin Am. Citizens*, 500 F.3d at 532; *Hendrick*, 235 U.S. at 622. And as shown above, §5(a) does not displace that power. So when an applicant lacks necessary documents—including proof of legal presence—Ohio need not offer that person voter registration.

Dutcher's and Fazio's first trips to the BMV serve as cases in point. Neither had the required documents to apply for a driver's license, so the BMV turned them away. *Above* at 10–11; Stay Op. at 8–9, Doc.23. In doing so, the State exercised its traditional power over driver's-license applications. And because Dutcher and Fazio

did not meet Ohio law, their applications were not submitted. Section 5(a) has nothing to say about unsubmitted applications. The BMV thus need not offer voter registration, and no federal law conflicted with Ohio's practice.

The district court erred when it reached the opposite conclusion. It read §5(a) to require the BMV to offer voter registration for any driver's-license submission attempt, even those that fail because the applicant fails to follow BMV's rules. In its view, an "application submitted" under §5(a) includes "even those driver's license applications rejected for failing to meet the state's licensing requirements." Dist.Op. at PageID#1810.

But §5(a)'s text, grammar, and context show the court was wrong. Starting with text and grammar, the court incorrectly applied the last-antecedent canon to read "under State law" to modify only "appropriate State motor vehicle authority" rather than the entire noun phrase "application (including any renewal application) submitted to the appropriate State motor vehicle authority." *Id.* at PageID#1808. That reading is wrong. For one thing, the last-antecedent rule (and its conceptual cousin, the nearest-reasonable-referent canon, *see ECB USA, Inc. v. Chubb Ins. Co. of N.J.*, 113 F.4th 1312, 1321–23 (11th Cir. 2024)) is hardly absolute. It is context-dependent and readily yields to "other indicia of meaning." *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003). For instance, when "the modifier directly follows a concise

and integrated clause" the rule has no force. *Cyan Inc. v. Beaver Cnty. Emps. Ret. Fund*, 583 U.S. 416, 440 (2018) (quotation omitted).

Here, "under State law" follows "a concise" and "integrated" clause, so the modifying language tracks "back to the beginning of the preceding clause." *Id.* Section 5(a)'s noun clause—"application (including any renewal application) submitted to the appropriate State motor vehicle authority," 52 U.S.C. §20504(a)(1)—"hangs together as a unified whole" with no conjunction or punctuation setting off different parts. *Cyan*, 583 U.S. at 440. It refers to a "single thing"—a driver's-license application. *Id.* And because the clause acts as one, the last-antecedent rule "falls away," and the modifying language applies to the entire prior phrase—not a siloed portion. *Dakota Girls, LLC v. Philadelphia Indem. Ins. Co.*, 17 F.4th 645, 650 (6th Cir. 2021). Thus, "under State law" refers to the application that is "submitted," and the last-antecedent rule does not suggest otherwise. And under Ohio law, prospective applicants cannot submit their applications until they present all required documents. That conclusion fits comfortably with the substantive backdrop that States, not Congress, regulate and license driving.

The district court also ignored the statutory context. Through the NVRA, Congress sought to consolidate voter registration with States' practices for driver's licensing, not to change how States went about that licensing. *Above* at 35–36. The

district court's reading rewrites the States' authority to define "submission," but that authority is key to processing driver's-license applications in an orderly fashion. The district court's approach hands that authority to each individual applicant by saying even *attempts* to complete an application, however far from reality, trigger an obligation on the BMV to offer voter registration. Taken to its logical end, the reading is untenable.

Consider some scenarios. If someone shows up after hours and tapes his application to the BMV's locked door, the district court's reading of §5(a) could require the BMV to offer that person voter registration—even though he did not follow the submission rules. If someone cut the line and thrust his application at a deputy registrar, he too may have submitted a driver's license application under the district court's interpretation, and the BMV would have to offer him voter registration. The same goes for someone who refuses to pay the application fee—as long as he attempts to submit an application, the BMV could have to offer voter registration.

Section 5(a) does not extend so far. The NVRA does not tie States' hands when it comes to running orderly, functional driver's-license application systems. Nor did it require the BMV to offer voter registration to Dutcher and Fazio when they showed up without all the documents they needed to apply for a driver's license.

Nothing about Ohio's process violates the NVRA.

## III. The equities weigh against a preliminary injunction.

The Associations' jurisdictional and merits problems resolve this case, so little needs to be said about the equities. But those factors, as the stay panel rightly found, are further nails in the coffin.

All of the equities here cut against the Associations, even without any pressing election-timing issues this time around. The injunction entered below threatens to confuse voters as well as the BMV's frontline workers. Encouraging people to go to the BMV with insufficient paperwork helps no one when they can easily register to vote by several means. *Cf. League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 13 (D.C. Cir. 2016). After all, the district court's order would allow an individual to show up at the BMV with *no* documents—or desire—to obtain a driver's license but still register to vote. Pressuring BMV staff to offer voter registration to those without any documents threatens a repeat of when a BMV employee inadvertently encouraged a non-citizen to register, and she illegally voted. Jake Zuckerman, *Ohio Woman Accused of Illegally Voting as a Noncitizen Found Not Guilty*, Columbus Dispatch (May 20, 2026), https://perma.cc/T2H9-3N6N. And having more potentially ineligible voters in the BMV pool burdens elections officials to catch more on the back end. *Lee*, 105 F.4th at 900.

That is not all. The injunction requires BMV clerks to affirmatively facilitate voter registration, which will consume BMV resources in retraining clerks. The BMV must promote and streamline voter registration for *anyone* entering the BMV—even with no documents. The "onus," the district court said, must be "on the BMV to proactively offer" registration—not simply provide paper applications. Stay Op., R.63, PageID#1900. That requires wholesale retraining and restructuring of the BMV application process. Even without the extra pressure of a looming registration deadline, that retraining takes resources. And the training must be done right, as improperly trained clerks might inadvertently encourage non-citizens to vote illegally.

And ultimately the injunction may require the BMV to bundle an incomplete driver's-license application and a paper form. *Id.* at PageID#1900–01 n.2. That would mean revamping BMV computer software, imposing "immense" financial burdens on the BMV through reprogramming its computers and training staff. King Decl., R.35-1, PageID#1134, ¶10. A BMV official estimated that doing this correctly would take eight to eighteen months and $1,000,000. *Id.* at PageID#1135–36, ¶¶18–19.

While those burdens harm the State and the public together, whose interests merge, no countervailing harms arise to anyone from reversing and vacating the

injunction. The named members are already registered. For anyone else, voter registration is simple. Anyone can register online, on a phone, or on paper.

For all these reasons, no preliminary injunction was or is needed, so the Court should reverse.

## CONCLUSION

The Court should reverse the district court's order granting a preliminary injunction.

Respectfully submitted,

D. ANDREW WILSON
Attorney General of Ohio

*/s/ Mathura J. Sridharan*
MATHURA J. SRIDHARAN
Ohio Solicitor General
**Counsel of Record*
JOHN F. KERKHOFF
Chief Deputy Solicitor General
STEPHEN P. CARNEY
Senior Deputy Solicitor General
AARON A. KRUK
Deputy Solicitor General
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
614.466.8980
Mathura.Sridharan@OhioAGO.gov

*Counsel for Appellants Frank LaRose, et al.*

## CERTIFICATE OF COMPLIANCE

I hereby certify, in accordance with Rule 32(g) of the Federal Rules of Appellate Procedure, this brief complies with the type-volume requirements for a principal brief and contains 9,173 words. *See* Fed. R. App. P. 32(a)(7)(B)(i).

I further certify that this brief complies with the typeface requirements of Federal Rule 32(a)(5) and the type-style requirements of Federal Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Equity font.

*/s/ Mathura J. Sridharan*
MATHURA J. SRIDHARAN

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2026, this brief was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Mathura J. Sridharan*
MATHURA J. SRIDHARAN

## DESIGNATION OF DISTRICT COURT RECORD

Appellants, pursuant to Sixth Circuit Rule 30(g), designate the following filings from the District Court's electronic records:

***Red Wine & Blue, et al. v. LaRose, et al.*, 1:25-cv-1760**

| Date Filed | R. No.; PageID# | Document Description |
|---|---|---|
| 8/22/2025 | R. 1; 4–10, 30 | Complaint |
| 4/28/2026 | R. 29-1; 360–76 | Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction |
| 6/4/2026 | R. 35-1; 1133–44 | Exhibits to Opposition to Motion for Preliminary Injunction |
| 6/11/2026 | R. 49; 1523–26 | Plaintiffs' Reply in Support of Motion for Preliminary Injunction |
| 6/11/2026 | R. 49-1; 1535–38 | Declaration of Peggy Dutcher |
| 6/11/2026 | R. 49-2; 1540–41 | Declaration of Gianina Fazio |
| 7/9/2026 | R. 55; 1649–52 | Transcript of Proceedings |
| 8/25/2026 | R. 57; 1789, 1805–42 | Order granting Plaintiff's Motion for Preliminary Injunction |
| 9/3/2026 | R. 60; 1867 | Opposition to Motion to Stay Pending Appeal |
| 9/8/2026 | R. 62; 1889 | Notice of Appeal |
| 9/9/2026 | R. 63; 1893–1902 | Order Denying Stay Pending Appeal |