No. 26-3813

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

RED WINE & BLUE;
OHIO ALLIANCE FOR RETIRED AMERICANS,

Plaintiffs-Appellees

v.

FRANK LAROSE, in his official capacity as Ohio Secretary of State;
CHARLES L. NORMAN, in his official capacity as
Ohio's Registrar of Motor Vehicles,

Defendants-Appellants

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO AT CLEVELAND

# BRIEF FOR THE UNITED STATES AS AMICUS CURIAE IN SUPPORT OF DEFENDANTS-APPELLANTS AND URGING REVERSAL

*(See inside cover for continuation of counsel)*

*(Continuation of cover)*


CRAIG W. TRAINOR
Acting Assistant Attorney General

ERIC A. SELL
Deputy Assistant Attorney General

ANDREW G. BRANIFF
MICHAEL T. HAYES
JONATHON P. HAUENSCHILD
JOHN R. CASALI
RAYMOND YANG
Attorneys
Department of Justice
Civil Rights Division
Appellate Section
Ben Franklin Station
P.O. Box 14403
Washington, D.C. 20044-4403
(202) 532-3803

## TABLE OF CONTENTS

**PAGE**

INTEREST OF THE UNITED STATES .................................................. 1

STATEMENT OF THE ISSUE .................................................. 2

STATEMENT OF THE CASE .................................................. 3

A. Statutory Background .................................................. 3

B. Ohio's Driver's License Requirements .................................................. 4

C. House Bill 54 .................................................. 6

D. Procedural History .................................................. 7

SUMMARY OF ARGUMENT .................................................. 9

ARGUMENT .................................................. 12

I. A driver's license application is "submitted" under Section 5(a)(1) of the NVRA only when the applicant has fulfilled all state-law submission requirements. .......... 12

A. Section 5(a)(1)'s text leaves to state law when a driver's license application has been submitted. .......... 12

B. Section 5's structure confirms that state law governs submission. .......... 18

C. The district court's contrary reasoning is unpersuasive. .......... 20

II. House Bill 54 does not violate Section 5 of the NVRA. .......... 27

CONCLUSION .................................................. 31

**TABLE OF CONTENTS (continued):**

CERTIFICATE OF COMPLIANCE

ADDENDUM

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

## TABLE OF AUTHORITIES

**PAGE**

**CASES:**

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
570 U.S. 1 (2013) .................................................... 12, 19, 29

*Artuz v. Bennett*, 531 U.S. 4 (2000) ..................................... 13, 15, 24

*Associated Indus. of Okla. v. Oklahoma Tax Comm'n*,
55 P.2d 79 (Okla. 1936) .................................................. 24

*Barnhart v. Thomas*, 540 U.S. 20 (2003) ................................ 21, 23

*Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*,
583 U.S. 416 (2018) ...................................................... 21

*Duncan v. Walker*, 533 U.S. 167 (2001) ..................................... 23

*Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021) ............................ 21

*Feliciano v. Department of Transp.*, 605 U.S. 38 (2025)..................... 14

*Jama v. Immigration & Customs Enf't,*
543 U.S. 335 (2005) ...................................................... 21

*League of Women Voters v. Utah State Legislature*,
559 P.3d 11 (Utah 2024)................................................... 24

*Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026),
*cert. pending*, No. 25-1415.................................................. 14

*Marcellus v. Borough of Garfield*, 58 A. 1099 (N.J. 1904).................... 24

*Pace v. DiGuglielmo*, 544 U.S. 408 (2005) ................................... 25

**CASES (continued):** **PAGE**

*Pereira v. Sessions*, 585 U.S. 198 (2018) .......... 22

*Red Wine & Blue v. LaRose*, No. 1:25-cv-1760, 2026 WL 2480676 (N.D. Ohio Aug. 25, 2026) .......... 7

*TRW Inc. v. Andrews*, 534 U.S. 19 (2001) .......... 23

*United States v. Green*, 167 F.4th 832 (6th Cir. 2026) .......... 14

*United States v. Hayes*, 555 U.S. 415 (2009) .......... 21, 23-24

*Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765 (2000) .......... 1

*Young v. Fordice*, 520 U.S. 273 (1997) .......... 10

**STATUTES:**

National Voter Registration Act of 1993 (NVRA)

52 U.S.C. 20501 *et seq.* .......... 1
52 U.S.C. 20501(b)(1) .......... 30
52 U.S.C. 20502 .......... 13
52 U.S.C. 20502(3) .......... 19
52 U.S.C. 20502(5) .......... 21
52 U.S.C. 20504 .......... 1
52 U.S.C. 20504(a) .......... 24
52 U.S.C. 20504(a)(1) .......... *passim*
52 U.S.C. 20504(c) .......... 7
52 U.S.C. 20504(c)(1) .......... 4, 19
52 U.S.C. 20504(c)(2) .......... 9, 27
52 U.S.C. 20504(c)(2)(A) .......... 4, 25
52 U.S.C. 20504(c)(2)(B) .......... 4
52 U.S.C. 20504(c)(2)(B)(ii) .......... 30
52 U.S.C. 20504(c)(2)(C) .......... 4, 30
52 U.S.C. 20504(e) .......... 18
52 U.S.C. 20504(e)(1) .......... 20

**STATUTES (continued): PAGE**

52 U.S.C. 20505(a)(1) .......... 26
52 U.S.C. 20507(a)(1)(A) .......... 18
52 U.S.C. 20508(b) .......... 21
52 U.S.C. 20510(a) .......... 1

18 U.S.C. 611 .......... 30

18 U.S.C. 1015(f) .......... 30

Ohio Rev. Code
§ 3503.01 .......... 29
§ 3503.07 .......... 29
§ 3503.11(A)(1) (HB 54) .......... 6
§ 3503.11(C)(1) .......... 6, 26
§ 4501.02(A)(1) .......... 5
§ 4507.06 .......... 4
§ 4507.06(A)(1) .......... 4
§ 4507.06(A)(1)-(2) .......... 4-5
§ 4507.11(A)(1)-(2) .......... 12
§ 4507.11(A)(5) .......... 12
1989 Ohio Laws File 54, 118th Ohio General Assembly (June 30, 1989) .......... 4

**CONSTITUTION:**

Ohio Const. Art. V, § 1 .......... 29

**REGULATIONS:**

Ohio Admin. Code
§ 4501:1-1-21(A) .......... 16
§ 4501:1-1-21(C) .......... 5, 16
§ 4501:1-1-21(D) .......... 5

2009 Ohio Reg. 9280206 (Sept. 28, 2009) .......... 5

**LEGISLATIVE HISTORY:** **PAGE**

H.R. Rep. No. 9, 103d Cong., 1st Sess. (1993) ........................................ 19

S. Rep. No. 6, 103d Cong., 1st Sess. (1993)........................... 10, 16, 19, 27

**RULE:**

Fed. R. App. P. 29(a)(2) ........................................................................ 2

**MISCELLANEOUS:**

Dictionary.com, https://dictionary.com/browse/...................................... 17

*Merriam-Webster's Collegiate Dictionary* (10th ed. 1997)................. 14-15

*Oxford American Dictionary* (1980) .................................................. 14-15

The Federalist No. 60 (A. Hamilton) ..................................................... 29

*The Oxford American Dictionary and Language Guide* (1999)......... 14-15

## INTEREST OF THE UNITED STATES

The United States has a direct and substantial interest in the proper interpretation of the National Voter Registration Act of 1993 (NVRA), 52 U.S.C. 20501 *et seq.*; *see also Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000) (recognizing that the United States may suffer "injury to its sovereignty arising from violation of its laws"). The Attorney General is charged with enforcing the NVRA and may bring a civil action for "such declaratory or injunctive relief as is necessary to carry out" the Act. 52 U.S.C. 20510(a). This case presents the important question whether Section 5 of the NVRA, 52 U.S.C. 20504, the Act's "motor voter" provision, displaces a State's authority to set the requirements for submitting a driver's license application.

The district court held that a driver's license application is "submitted" under Section 5(a)(1) once the applicant hands the form to a deputy registrar, whether or not the applicant has satisfied the driver's license requirements provided by Ohio law. It then ordered Ohio to offer voter registration even to applicants whose driver's license applications fail for lack of the documents Ohio law requires. In so doing, the district

court transformed Ohio's longstanding requirement that applicants for driver's licenses submit proof of citizenship or lawful resident status into a documentary-proof-of-citizenship requirement for voter registration, which it is not. The United States, which enforces Section 5 nationwide, has a strong interest in ensuring that the provision is not read to transform state licensing requirements into federal voter-registration requirements.

The United States files this brief under Federal Rule of Appellate Procedure 29(a)(2).

## STATEMENT OF THE ISSUE

Section 5 of the NVRA provides that a state motor vehicle driver's license application "submitted to the appropriate State motor vehicle authority under State law shall serve as an application for voter registration." 52 U.S.C. 20504(a)(1). Ohio requires driver's license applicants to document their citizenship or lawful presence, and its Bureau of Motor Vehicles (BMV) offers electronic voter registration once an applicant has submitted the application and supporting documents that Ohio law requires. The United States addresses the following

question and takes no position on any other issue presented in this appeal:

Whether plaintiffs are likely to succeed on the merits of their claim that Ohio violates the federal motor-voter law by offering voter registration at the BMV only to those who provide proof of citizenship as part of their driver's license application pursuant to Ohio law.

## STATEMENT OF THE CASE

### A. Statutory Background

Section 5(a) of the NVRA states, in relevant part, that "[e]ach State motor vehicle driver's license ***application*** (including any renewal application) ***submitted*** to the appropriate State motor vehicle authority ***under State law*** shall serve as an application for voter registration with respect to elections for Federal office unless the applicant fails to sign the voter registration application." 52 U.S.C. 20504(a)(1) (emphasis added).

With respect to the form States may use, Congress required them to "include a voter registration application form for elections for Federal office as part of an application for a State motor vehicle driver's license" and further clarified that the "voter registration application portion . . . may not require any information that duplicates information required in

the driver's license portion of the form." 52 U.S.C. 20504(c)(1) and (2)(A). That portion "may require only the minimum amount of information necessary to" prevent duplicate registrations and "enable State election officials to assess the eligibility of the applicant," and it must include a statement of each eligibility requirement "(including citizenship)" and an attestation, signed under penalty of perjury, that the applicant meets each one. 52 U.S.C. 20504(c)(2)(B) and (C).

**B. Ohio's Driver's License Requirements**

Since 1989, Ohio law has required applicants for driver's licenses, as a condition for completing the application submission process, to state, at a minimum, "[t]he applicant's name, date of birth, social security number if such has been assigned, sex, general description, . . . residence address, . . . duration of residence in this state, *and country of citizenship*." Ohio Revised Code (Ohio Rev. Code) § 4507.06(A)(1) (emphasis added); *see also* 1989 Ohio Laws File 54, 118th Ohio General Assembly (June 30, 1989), codified at Ohio Rev. Code § 4507.06. That same law requires applicants to do so "upon the approved form furnished by the registrar of motor vehicles" and to provide "any additional information that the registrar requires." Ohio Rev. Code § 4507.06(A)(1)-

(2). Ohio law delegates to the registrar of motor vehicles, who heads the BMV, the authority to "[a]dopt such forms and rules as are necessary to carry out all laws the registrar is required to administer." *Id.* § 4501.02(A)(1).

Acting upon that delegated authority, the BMV has required, since 2009, individuals applying "for first issuance" of driver's licenses to provide certain information, which includes documentation "sufficient to establish the person's . . . [s]tatus as a citizen, permanent resident, or temporary resident of the United States." Ohio Admin. Code § 4501:1-1-21(C); *see* 2009 Ohio Reg. 9280206 (Sept. 28, 2009). Without those documents, the BMV may not issue a license, Ohio Admin. Code § 4501:1-1-21(D), and an applicant who lacks them "cannot complete an application for a credential." King Decl. ¶ 15, R. 35-1, PageID# 1135.[1] The incomplete application is neither saved nor submitted. *Ibid.*; PI Op., R. 57, PageID# 1814. Only when an application is complete does the

---

[1] Pursuant to Sixth Circuit Local Rule 28(a), and as noted in the Addendum at the end of this brief, "R. _, PageID# _" refers to the docket entry and page number of documents filed on the district court's docket. "Ohio Br._" refers to the internal pagination of defendants-appellants' opening brief.

system advance to the voter registration prompts, and that step asks for no proof of citizenship. King Decl. ¶¶ 21-22, R. 35-1, PageID# 1136. Paper voter registration forms, which require only an attestation of eligibility, are available to every customer at every BMV office. Ohio Rev. Code § 3503.11(C)(1); King Decl. ¶ 25, R. 35-1, PageID# 1136.

### C. House Bill 54

In 2025, Ohio amended Ohio Rev. Code § 3503.11(A)(1) through House Bill 54 (HB 54). As amended, the statute provides that when a driver's license applicant "presents proof of United States citizenship . . . or has previously presented proof of United States citizenship," the registrar or deputy registrar "shall offer the applicant the opportunity to register to vote or to update the applicant's voter registration by electronic means in conjunction with the person's transaction with the registrar or deputy registrar, in a manner prescribed by the secretary of state." Ohio Rev. Code § 3503.11(A)(1).

HB 54 does not change what an applicant must present to submit a driver's license application. Those requirements come from Ohio's licensing laws, which have required documentation of citizenship or lawful status since 2009.

### D. Procedural History

In August 2025, two associations, Red Wine & Blue and the Ohio Alliance for Retired Americans (the Associations), sued Ohio officials, claiming that Section 5(c) of the NVRA, 52 U.S.C. 20504(c), preempts HB 54. Compl., R. 1, PageID# 4, 27. They identified two members who intended to update their voter registrations at the BMV but did not want to present proof of citizenship. *Id.* at PageID# 9; *see* C.A. Stay Order, Doc. 23, at 4 (Sept. 23, 2026).

Eight months after filing the complaint, on April 28, 2026, the Associations moved for a preliminary injunction. PI Mot., R. 29, PageID# 351. In reply, they advanced a new theory: that Ohio's electronic process violates Section 5(a)(1) because applicants whose driver's license applications are incomplete are not offered voter registration through that process. PI Reply, R. 49, PageID# 1523-1526; *see* C.A. Doc. 23, at 5. The district court held a hearing on June 25, 2026, and seven weeks later granted the injunction. *Red Wine & Blue v. LaRose*, No. 1:25-cv-1760, 2026 WL 2480676 (N.D. Ohio Aug. 25, 2026) (PI Op., R. 57, PageID# 1789-1842).

The court held that Ohio's motor-voter process violates the NVRA in two respects. First, it concluded that a driver's license application is "submitted" under Section 5(a)(1) when the applicant hands the form to the deputy registrar, "regardless of the application's success or failure." PI Op., R. 57, PageID# 1810-1811, 1815. Second, it found that HB 54 imposes a "documentary proof of citizenship requirement" (*id.* at PageID# 1824-1825) that exceeds the "minimum amount of information necessary" under Section 5(c)(2)(B) (*id.* at PageID# 1830-1834). The injunction bars Ohio from relying on HB 54 to require proof of citizenship "before offering the opportunity to register to vote," including to "driver's license applicants who are ultimately unsuccessful in obtaining a driver's license for lack of sufficient documents under Ohio's licensing requirements." *Id.* at PageID# 1842.

On September 9, 2026, the district court denied a stay. Order Denying Stay, R. 63, PageID# 1893-1902. This Court then granted a stay pending appeal. C.A. Doc. 23, at 14. The panel majority recognized that States "possess the constitutional authority to set qualifications for voting in federal elections," while the NVRA sets "voter-registration requirements that states must follow." *Id.* at 1. The majority rested on

standing, mootness, and the equities, and it did not reach "the merits of the district court's NVRA analysis." *Id.* at 7. It observed, however, that Ohio "didn't offer voter registration because it didn't treat the relevant driver's-license applications as submitted," so that the Associations' theory "would thus require that Ohio adopt different driver's-license application-submission rules, not an injunction of H.B. 54." *Id.* at 9. Judge Ritz dissented. *Id.* at 14-21.

## SUMMARY OF ARGUMENT

Section 5(a) of the NVRA requires motor vehicle driver's license applications to simultaneously serve as voter registration applications when the former are submitted to the appropriate state authority. 52 U.S.C. 20504(a)(1). The voter registration portion of a driver's license application (the "motor voter application") may not require duplicative information already provided in the driver's license application, nor may it require more than the "minimum amount of information necessary" for state officials to assess the applicant's voting eligibility. 52 U.S.C. 20504(c)(2).

When Congress passed the NVRA, it enhanced voting opportunities by creating "simplified systems" of voter registration in federal elections.

*See Young v. Fordice*, 520 U.S. 273, 275 (1997). By integrating voter registration applications within routine interactions between a citizen and a State, the NVRA removes potentially duplicative barriers otherwise-eligible voters might face preventing them from participating in federal elections. *See* S. Rep. No. 6, 103d Cong., 1st Sess. 3, 5 (1993).

Ohio requires applicants to produce documentation related to citizenship or lawful-resident status before they can submit driver's license applications. The Associations argued, and the district court agreed, that this system violates Section 5(a) of the NVRA, which requires that a submitted driver's license application also be considered as a voter registration application.

But Section 5(a) only requires a State to treat a driver's license application as a voter registration application if a driver's license application has, in fact, been submitted. When no such application has been submitted to the appropriate state authority, there is no underlying process through which a voter registration application can be simultaneously submitted.

Whether and when a driver's license application has been submitted is a question of state law. State law distinguishes between

what an applicant must do to submit an application and what the applicant must show to obtain a license. Once an applicant has met the first set of requirements, Section 5 requires the State to offer voter registration, whether or not the license is later granted. An applicant who has not met them has not submitted an application, and Section 5 is not triggered.

The district court's holding that HB 54 violates Section 5(c)(2)(B) rests on the same error. That provision limits only what "[t]he voter registration application portion" of a driver's license application may require. 52 U.S.C. 20504(c)(2). Ohio's voter registration portion asks for no documentary proof of citizenship. The documentation the district court focused on is required by the driver's license portion of the transaction, which Section 5 leaves to state law.

Nor does HB 54 conflict with Section 5 in any other way. Every applicant who submits a driver's license application in Ohio has already documented either United States citizenship or lawful noncitizen status. HB 54 directs that the first group be offered voter registration. As for the second group, the NVRA does not require a State to offer registration to

applicants whom its own records show to be ineligible. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 15 (2013).

## ARGUMENT

### I. A driver's license application is "submitted" under Section 5(a)(1) of the NVRA only when the applicant has fulfilled all state-law submission requirements.

#### A. Section 5(a)(1)'s text leaves to state law when a driver's license application has been submitted.

State law determines when a driver's license application has been submitted, and that question is distinct from whether the application will be granted. State law prescribes what an applicant must present to submit an application: the form, the required information, and the supporting documents. It separately prescribes what the applicant must show to obtain a license, such as passing examinations of knowledge, physical fitness, and driving ability. Ohio Rev. Code § 4507.11(A)(1)-(2). The deputy registrar then forwards "the records of the examinations, together with the application," to the registrar, who decides whether "the applicant is qualified." *Id.* § 4507.11(A)(5). An applicant who meets the submission requirements has submitted an application, and Section 5 requires the State to offer voter registration even if the license is later

denied. An applicant who does not meet them has not submitted an application at all.

In Ohio, documentary proof of citizenship or lawful status is a submission requirement. An applicant who lacks it "cannot complete an application," and nothing is saved. King Decl. ¶ 15, R. 35-1, PageID# 1135; *see also* Hr'g Tr., R. 55, PageID# 1644-1645. The Supreme Court has drawn the same line between "a condition to filing" and "a condition to obtaining relief." *Artuz v. Bennett*, 531 U.S. 4, 11 (2000). Here, submitting an application is conditioned upon meeting the *application* requirements; it is a separate issue as to whether the application successfully results in a driver's license. Section 5(a)(1) ties the voter registration application to a driver's license application "submitted to the appropriate State motor vehicle authority under State law." 52 U.S.C. 20504(a)(1). It does not require a State to treat an attempt that falls short of state law's submission requirements as a submitted application. The district court's contrary reading disregards the statute's text, structure, and design.

Congress did not define "application" or "submitted" in the NVRA. *See* 52 U.S.C. 20502. When Congress does not imbue a word or phrase "in

a specialized way or employ a term of art with long-encrusted connotations in a given field," courts "must give the words their ordinary, contemporary, common meaning." *Lopez-Campos v. Raycraft*, 175 F.4th 713, 722 (6th Cir. 2026) (quoting *Feliciano v. Department of Transp.*, 605 U.S. 38, 45 (2025), and *United States v. Green*, 167 F.4th 832, 851-852 (6th Cir. 2026)), *cert. pending*, No. 25-1415 (filed June 22, 2026).

An application is "a formal request, usu[ally] in writing, for employment, membership, etc." *The Oxford American Dictionary and Language Guide* 43 (1999). Other dictionaries have similar definitions, indicating that an application is "making a formal request, the request itself," *Oxford American Dictionary* 29 (1980), or "a request [or] petition; a form used in making a request," *Merriam-Webster's Collegiate Dictionary* 56-57 (10th ed. 1997).

Distilling "application" to its root of "apply," when an individual "applies" to something, he "make[s] an appeal or request, esp. in the form of a written application." *Merriam-Webster's Collegiate Dictionary* 57 (10th ed. 1997). Other dictionaries add the word "formal" before appeal or request. *See The Oxford American Dictionary and Language Guide* 43 (1999); *Oxford American Dictionary* 29 (1980).

Finally, when someone "submits" an application, he "present[s] or propose[s] to another for review, consideration, or decision." *Merriam-Webster's Collegiate Dictionary* 1173 *(*10th ed. 1997); *see also The Oxford American Dictionary and Language Guide* 1005 (1999) (similar); *Oxford American Dictionary* 683 (1980) (similar).

The definitions make clear that a submitted application must contain information sufficient to allow an evaluation of some kind by the party to whom the application is submitted. The Supreme Court reads the parallel term "filed" the same way. An application is "filed" when "it is delivered to, and accepted by, the appropriate court officer," and it is properly filed "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz*, 531 U.S. at 8. Those rules "usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." *Ibid.* (footnote omitted). In the case of a driver's license application, that information will naturally be determined by state law. In Ohio, the BMV's rule specifies the identification documents "to be submitted along with an application" for a driver's license, including documents establishing citizenship or lawful

status. Ohio Admin. Code § 4501:1-1-21(A) and (C). An individual who does not provide them has not submitted an application under state law. *See* King Decl. ¶ 15, R. 35-1, PageID# 1135.

The NVRA allows "voter registrars to *piggy-back* on the identification techniques developed to assure accuracy in the licensing process" because "[a] procedure for licensing motor vehicle drivers is in place in every State." S. Rep. No. 6, 103d Cong., 1st Sess. 5 (1993) (emphasis added). The NVRA thus leaves to state law the rules governing how and when a driver's license application is "submitted to the appropriate State motor vehicle authority." 52 U.S.C. 20504(a)(1). If a motor vehicle authority only accepts a driver's license application in person, for example, an individual has not "submitted"—in Section 5's sense—an application if that individual instead emails the document to the motor vehicle authority. Or, to imagine a more extreme example, suppose a driver's license applicant submits a blank application form with no documentation and demands to apply for voter registration, arguing that the blank form is a "submitted" driver's license "application." 52 U.S.C. 20504(a)(1). The blank form would not be a submitted application that enabled any sort of evaluation of the applicant

under state law, and therefore Section 5 of the NVRA would not come into play. In short, the NVRA does not supplant state laws governing how to submit a driver's license application; rather, it merely states that when an applicant has met state law's submission requirements, it shall also serve as a voter registration application. The district court erred, therefore, when it determined that an application has been submitted merely if it is "presented, sent, or handed in," regardless of whether the application is complete under Ohio's laws. PI Op., R. 57, PageID# 1810 (quoting *Submitted*, Dictionary.com, https://dictionary.com/browse/submitted). The court's conclusion is inconsistent with Section 5's application as a piggy-back provision.[2]

[2] Ohio's argument does not "add[] the word 'complete' ahead of 'driver's license application' in § 20504(a)(1)," as asserted by the district court (PI Op., R. 57, PageID# 1807), because "under State law," 52 U.S.C. 20504(a)(1), provides an answer as to when a driver's license application is complete before it is considered submitted. Under Ohio law, an application is deemed submitted only when all necessary actions on the part of the applicant have been performed—regardless of whether the application will be granted or denied. *See* King Decl. ¶¶ 15-17, R. 35-1, PageID# 1135.

### B. Section 5's structure confirms that state law governs submission.

The phrase "completed voter registration portion of an application" in Section 5(e) of the NVRA, 52 U.S.C. 20504(e), is a cue that Congress did not intend to dictate how States regulate driver's license applications, including any requirements regarding personal identification documents. The NVRA does not define the content of a driver's license application. Rather, limiting itself to the domain of voter registration, the NVRA mandated motor vehicle authorities transmit only *completed* voter registration portions of the application—not *all* voter registration portions—because incomplete portions are unhelpful for state election officials to verify the eligibility of individuals to vote or to register individuals as voters. *See, e.g.*, 52 U.S.C. 20507(a)(1)(A) (speaking of "valid voter registration form[s]"). It follows that the NVRA was concerned with the sufficiency of the voter registration application, not with the sufficiency of the underlying driver's license application.

Congress did not set a floor on how state motor vehicle authorities registered individuals to operate motor vehicles or how they issued personal identification documents. It instead saw that "[t]he driver's license procedure appears to be ideally suited to the purpose of

registering voters[,]" S. Rep. No. 6, at 5; *see also* H.R. Rep. No. 9, 103d Cong., 1st Sess. 4-5 (1993), and acted to bootstrap voter registration on top of those state procedures as part of "a complex superstructure of federal regulation," *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 5 (2013) (*ITCA*). The Associations and the district court would have it otherwise, setting a federally mandated floor on what qualifies as a completed application for a driver's license or personal identification documents. *See* 52 U.S.C. 20502(3) (defining "motor vehicle driver's license" to include "any personal identification document issued by a State motor vehicle authority").

Section 5's title—"Simultaneous Application For Voter Registration And Application For Motor Vehicle Driver's License"—does not cut against this reading. Section 5 makes the voter registration form "part of an application for a State motor vehicle driver's license." 52 U.S.C. 20504(c)(1). Because the two applications are made together, the voter registration application is submitted when the driver's license application is submitted under state law. If the driver's license application is not submitted (*e.g.*, for lack of proper documentation), then no "simultaneous" application for voter registration is submitted either.

### C. The district court's contrary reasoning is unpersuasive.

The district court failed to properly interpret and apply the NVRA. First, the district court observed that the NVRA speaks of "completed voter registration portion[s]," 52 U.S.C. 20504(e)(1), but not of "completed motor vehicle driver's license applications." PI Op., R. 57, PageID# 1807-1808. From that observation, the court reasoned that driver's license applications do not need to be complete to be "submitted" under Section 5, 52 U.S.C. 20504(a)(1). PI Op., R. 57, PageID# 1808. But that interpretation would mean that a blank application form could qualify as a submitted driver's license application, a result Congress could not have intended. The requirement that the voter registration portion of the application be "completed" merely clarifies that if the driver's license applicant decides not to fill out the voter registration portion, then nothing needs to be transmitted to state election officials.

Second, the district court erred in its invocation of the rule of the last antecedent. In the district court's view, "under State law" modifies only "the appropriate State motor vehicle authority" and not "application . . . submitted." PI Op., R. 57, PageID# 1808. From this

assertion, the district court concluded that state law does not govern when a driver's license application is submitted. *Ibid.*

The rule of the last antecedent states that "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003). But this rule "is context dependent," *Facebook, Inc. v. Duguid*, 592 U.S. 395, 404 (2021), and "can assuredly be overcome by other indicia of meaning," *Barnhart*, 540 U.S. at 26. For example, the rule should not be applied in a manner that would create unlikely premises. *See United States v. Hayes*, 555 U.S. 415, 425 (2009). Importantly, a limiting clause should be applied to everything preceding it if the preceding clause "hangs together as a unified whole, referring to a single thing," *Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*, 583 U.S. 416, 440 (2018), or if it is "concise and 'integrated,'" *ibid.* (quoting *Jama v. Immigration & Customs Enf't,* 543 U.S. 335, 344 n.4 (2005)).

However one reads "under State law,"[3] state law governs whether an application has been submitted. As Ohio explains, the relevant

[3] Based on how the term is used in other parts of the NVRA, *see, e.g.*, 52 U.S.C. 20502(5), 20508(b), "under" has a limiting meaning in

antecedent in Section 5(a)(1) is not "the appropriate State motor vehicle authority" but the entire preceding clause: "Each State motor vehicle driver's license application (including any renewal application) submitted to the appropriate State motor vehicle authority." 52 U.S.C. 20504(a)(1); *see* Ohio Br. 39-40. On that reading, "under State law" answers not only to whom an application is submitted, but also what must be submitted and how, all of which "shall serve as an application for voter registration." 52 U.S.C. 20504(a)(1).

The district court's reading also would render the phrase surplusage. If "under State law" modified only "the appropriate State motor vehicle authority," it would add nothing. The authority Section 5(a)(1) describes is already a "*State* motor vehicle authority," 52 U.S.C. 20504(a)(1) (emphasis added), and no state motor vehicle authority, appropriate or otherwise, exists apart from state law. The district court's reading thus runs counter to the "cardinal principle of statutory construction" that a statute should be construed so that "no clause,

---

Section 5(a)(1). *Cf. Pereira v. Sessions*, 585 U.S. 198, 214-215 (2018) (interpreting "notice to appear under section 1229(a)" to mean that the notice must satisfy "the substantive time-and-place requirements set forth in § 1229(a)").

sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)) (internal quotation marks omitted). That is the kind of "other indicia of meaning" that overcomes the rule of the last antecedent. *Barnhart*, 540 U.S. at 26.

Whether a form is an application must also be determined by state law because a driver's license application is something created by the State. *See* Ohio Br. 33-35. It makes sense, then, that state law must determine when an application has been submitted. And even if "under State law" modified only "the appropriate State motor vehicle authority," the result would be the same. The application must still be a "State motor vehicle driver's license application," and it must be "submitted to" a state authority that accepts applications only on the terms state law prescribes. 52 U.S.C. 20504(a)(1). Nothing in Section 5 supplies a federal rule for when such an application has been submitted.

The district court's reading would also require the Court to accept an unlikely premise: that Congress, in a statute designed to piggy-back on existing state licensing procedures, silently federalized the question of when a state driver's license application has been submitted. *Cf. Hayes*,

555 U.S. at 425 (declining to apply the rule of the last antecedent where doing so "would require us to accept two unlikely premises").

Like the word "under," the word "submitted" as used in Section 5(a), 52 U.S.C. 20504(a), as discussed above, should be afforded a narrow meaning, and is governed by state law. *See, e.g.*, *League of Women Voters v. Utah State Legislature*, 559 P.3d 11, 27, 29-30 (Utah 2024) (concluding that a proposed amendment is deemed "not submitted to the voters" if "the ballot title would mislead a reasonable voter as to what they are voting for or against"); *Associated Indus. of Okla. v. Oklahoma Tax Comm'n*, 55 P.2d 79, 88 (Okla. 1936) (nullifying invalid measure as "not legally submitted to the people for approval or rejection as required by law"); *Marcellus v. Borough of Garfield*, 58 A. 1099, 1100 (N.J. 1904) (nullifying election results because the proposition submitted to the voters was not the one approved to be submitted; therefore, a proposition was never submitted). Courts read similar terms the same way. A state post-conviction application is "properly filed" only when its "delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz*, 531 U.S. at 8. An application that state law

rejects as untimely therefore was never properly filed. *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005).

Third, the district court failed to consistently apply the ordinary meaning of the words in Section 5(a)(1). According to the ordinary meaning of the word "submitted," an application has not been "submitted" until the applicant has presented what is required to submit it. In ordinary parlance, a person who is turned away because he lacks the required materials has not submitted an application. A person cannot submit an application to an agency when the agency is closed and therefore not accepting it.

Lastly, Section 5(c)(2)(A) of the NVRA undermines the district court's decision. It provides: "The voter registration application portion of an application . . . may not require any information that duplicates information required in the driver's license portion." 52 U.S.C. 20504(c)(2)(A). Consistent with this provision, Ohio does *not* require documentary proof of citizenship for the "voter registration application portion," because it makes documentary proof of citizenship (or legal status) part of the "driver's license portion" of the application. *Ibid.*

Congress intended to legislate regarding voter registration; it did not intend to encroach upon state licensing procedures.

That Ohio's driver's license requirements are more demanding than its voter-registration requirements does not mean that the whole purpose of the NVRA is "almost obliterate[d]." PI Op., R. 57, PageID# 1811. It does mean that the NVRA's motor-voter provision will have less impact in Ohio than it would in a State that imposes less stringent driver's license standards, but that is consistent with the purposes of the NVRA. Congress, cognizant of the myriad ways States administer their elections, implemented Federal Form registration, under which States "shall accept and use" the eponymous, standardized voter registration Federal Form to register voters who register by mail. 52 U.S.C. 20505(a)(1). In *ITCA*, the Court held that Section 6's "accept and use" mandate precludes a State from requiring Federal Form applicants to submit documentary proof of citizenship beyond what the Federal Form requires. 570 U.S. at 15, 20. And in Ohio, paper registration forms requiring only an attestation are available at every BMV office. Ohio Rev. Code § 3503.11(C)(1); C.A. Doc. 23, at 2. Every eligible Ohioan thus retains a simple means of registering, which is what the NVRA guarantees.

Properly construed, Section 5 "permit[s] each State some discretion as to how to administer [the motor-voter registration] process and how to integrate it with its drivers license process." S. Rep. No. 6, at 5-6. To that end, the law operates to create a voter registration application whenever a driver's license application has been submitted. But it leaves the question—and answer—as to when there has been a duly submitted driver's license application to state law.

## II. House Bill 54 does not violate Section 5 of the NVRA.

The district court also held that HB 54 conflicts with Section 5(c)(2)(B) because documentary proof of citizenship is more than "the minimum amount of information necessary" to assess eligibility. PI Op., R. 57, PageID# 1830-1834. That holding rests on the same mistaken premise. Section 5(c)(2)(B) limits only what "[t]he voter registration application portion of an application for a State motor vehicle driver's license" may require. 52 U.S.C. 20504(c)(2). In Ohio, that portion requires no documents at all. Once a driver's license application is submitted, the BMV's system prompts the clerk to offer voter registration, and the applicant need only answer and affirm eligibility under penalty of election falsification. King Decl. ¶¶ 21-22, R. 35-1, PageID# 1136; PI Op.,

R. 57, PageID# 1814. The documentation the district court focused on is required by the driver's license portion of the transaction, which Section 5 leaves to state law.

For that reason, Ohio's acknowledgment below that a signed attestation is the minimum information necessary to register to vote (*see* PI Op., R. 57, PageID# 1833) does not help the Associations. Nothing in Section 5(c)(2)(B) converts a State's licensing requirements into voter-registration requirements.

HB 54 is consistent with the NVRA. It does not limit who may register to vote. By its terms, it directs BMV officials *when* to offer voter registration to those who have submitted driver's license applications under state law. Put simply, driver's license applicants in Ohio fall into two categories: (1) those who submit applications with proof of citizenship and (2) those who submit applications with proof of lawful resident status. HB 54 simply states that the first category—those who present proof of citizenship—should be given an opportunity to apply for voter registration. The second category has no reason to be given that opportunity, and the NVRA does not require otherwise. The Act does not preclude a State from "deny[ing] registration based on information in

their possession establishing the applicant's ineligibility." *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 15 (2013) (*ITCA*) (citation omitted).

As explained, Ohio law limits driver's licenses to United States citizens and lawful residents who are not citizens. When applying for driver's licenses, individuals must provide proof that they fall into one of those categories. Importantly, the NVRA requires Ohio to consider applications for driver's licenses as applications to register to vote, but it does not—nor can it—preempt state voter qualification standards. *ITCA*, 570 U.S. at 17 ("Prescribing voting qualifications, therefore, 'forms no part of the power to be conferred upon the national government' by the Elections Clause" (quoting The Federalist No. 60, at 371 (A. Hamilton))).

The Ohio Constitution and related statutory provisions limit the voting franchise to "[o]nly a citizen of the United States." Ohio Const. Art. V, § 1; *see also* Ohio Rev. Code §§ 3503.01, 3503.07. This, in turn, is consistent both with the NVRA and federal criminal law. Congress explained that the NVRA's purpose was to establish "procedures that will increase the number of *eligible citizens* who register to vote," and when a voter is registering through state motor vehicle agencies, it permits the

voter registration portion to require only the "minimum amount of information necessary to . . . enable State election officials to assess the eligibility of the applicant," while requiring an attestation that the applicant meets each eligibility requirement, including citizenship. 52 U.S.C. 20501(b)(1) (emphasis added); 52 U.S.C. 20504(c)(2)(B)(ii) and (C). Similarly, federal criminal law prohibits noncitizens from participating in elections for federal office. 18 U.S.C. 611, 1015(f).

Thus, Ohio, first, limits voter registration only to United States citizens. Second, it limits driver's licenses to citizens *and* noncitizens who have lawful resident status. Before HB 54, Ohio law "could be read to require BMV workers to 'offer . . . the opportunity' for voter registration even when a person's driver's-license application demonstrated that he was a noncitizen ineligible to vote." C.A. Doc. 23, at 3; *see* Ohio Br. 31-33. HB 54 clarified for the benefit of BMV clerks their responsibility to follow state law regarding citizen-only voter registration. Because HB 54 only clarifies when Ohio BMV officials must offer voter registration and those limits are consistent with the NVRA, HB 54 is consistent with federal law.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's order granting a preliminary injunction.

Respectfully submitted,

CRAIG W. TRAINOR
Acting Assistant Attorney General

ERIC A. SELL
Deputy Assistant Attorney General

s/ Andrew G. Braniff
ANDREW G. BRANIFF
MICHAEL T. HAYES
JONATHON P. HAUENSCHILD
JOHN R. CASALI
RAYMOND YANG
Attorneys
Department of Justice
Civil Rights Division
Appellate Section
Ben Franklin Station
P.O. Box 14403
Washington, D.C. 20044-4403
(202) 532-3803

Date: November 24, 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B)(i) because it contains 5842 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Sixth Circuit Rule 32(b)(1). This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it was prepared in Century Schoolbook 14-point font using Microsoft Word for Microsoft 365.

s/ Andrew G. Braniff
ANDREW G. BRANIFF
Attorney

Date: November 24, 2026

## ADDENDUM

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| Record Entry Number | Document Description | PageID# Range |
|---|---|---|
| 1 | Complaint | 4, 9, 27 |
| 29 | Motion for Preliminary Injunction | 351 |
| 35-1 | Declaration of Sydney King | 1135-1136 |
| 49 | Reply in Support of Motion for Preliminary Injunction | 1523-1526 |
| 55 | Transcript of Preliminary Injunction Hearing | 1644-1645 |
| 57 | Opinion and Order Granting Preliminary Injunction | 1789-1842 |
| 62 | Notice of Appeal | 1889-1890 |
| 63 | Order Denying Stay Pending Appeal | 1891-1906 |